UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

NIKI ROBINSON AND
PATRICK TOMLINSON,

    *Plaintiffs,*

    *v.*

CITY OF MILWAUKEE, LYNDON EVANS,
CHRISTIAN GARRIDO, BRADLEY ORLANDO,
NICOLE PLEVAK, JOHN KOHLER,
JACOB WASECHEK, FIDAH MUSTAFA,
NATHANIEL PETERSEN, SEAN CARLETON,        Case No: 2:24-cv-264
AND PAUL VENTO,

    *Defendants.*

---

## FIRST AMENDED COMPLAINT

---

    Plaintiffs Niki Robinson and Patrick Tomlinson, by their attorneys, Strang Bradley, LLC, for their complaint against Defendants, state:

## INTRODUCTION

1.    Niki Robinson and Patrick Tomlinson are the targets of a vicious campaign of domestic terrorism, carried out at the hands of a group of bullies who hide behind the anonymity of the internet.

2.    The bullies' main weapon of choice is something called "swatting," which is when someone who wants to endanger the life and safety of another calls 911 and lies to provoke a dangerous police response to the victim's home.

3.     The goal is to either harm or terrorize an innocent person at the hands of the police, who the caller is hoping will barge into their victim's home and, in the chaos, injure or kill them.

4.     "Swatting" has become a widespread and well-known method of harassment, with several states and the federal government adopting harsh criminal penalties to deter would-be swatters.

5.     Normally the police are unwitting tools of these bad actors who have no choice but to take these false calls at face value.

6.     But Niki and Patrick's situation is different because the Milwaukee Police Department has responded to swatting calls to their home *at least 45 times* in the past two years.

7.     Any rational police force would have recognized at some point that any calls involving the Robinson-Tomlinson home were clearly false and should not be taken seriously.

8.     Any rational police force would have implemented some sort of policy to avoid becoming a tool of terror against the very citizens they are sworn to protect.

9.     But time and time again, the Milwaukee police have ignored reality, resulting in multiple illegal searches of Niki and Patrick's home and illegal seizures of their persons.

10.     This insanity has drawn local, national, and international media attention.

11.     Niki and Patrick have tried to work with the City of Milwaukee to stop this, but the City of Milwaukee failed to adopt a policy or train its officers on how to prevent Niki and Patrick's stalkers from using the police department as a tool of terror.

12.     And while many of the police officers who have responded to Patrick and Niki's home have been kind, understanding, and compassionate, others have not.

13.     The worst offender is Sergeant Lyndon Evans.

14.     On three occasions, Sergeant Evans responded to a swatting call with abuse and violence.

15.     Sergeant Evans told Niki and Patrick that he was "well aware" of the situation, but still demanded to be let inside their home, going so far as to threaten to break down the front door if he was not allowed inside.

16.     Niki and Patrick live in a constant state of fear, worried that the next encounter they have with the police will be their last.

17.     Every knock on the door or police car that drives by leaves them terrified that they are about to be staring down an officer's gun or that they will be paraded outside in handcuffs to their further humiliation.

18.     This lawsuit seeks to end the madness and vindicate the violation of Plaintiffs' constitutional rights. It seeks to effect change through punitive damages by punishing the Defendants for their egregious conduct with the hope that the punishment is significant enough to prevent this from happening again in the future.

## JURISDICTION AND VENUE

19.     This action is brought under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

20.     This Court has jurisdiction over federal claims under 28 U.S.C. § 1331 and the state law claim for indemnification under 28 U.S.C. § 1367.

21.     Venue is proper under 28 U.S.C. § 1391(b). Defendant City of Milwaukee is a political subdivision of the state of Wisconsin located within this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

## PARTIES

22.     Plaintiff Niki Robinson is a resident of the State of Wisconsin and the County of Milwaukee.

23.     Plaintiff Patrick Tomlinson is a resident of the State of Wisconsin and the County of Milwaukee.

24.     Defendant City of Milwaukee is a political subdivision of the state of Wisconsin.

25.     Defendant City of Milwaukee is or was the employer of Defendant Evans and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment.

26.     Defendant Lyndon Evans was, at the time of this occurrence, employed as a sergeant in the City of Milwaukee's Police Department.

27. Defendant Evans engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

28. Defendant Evans engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

29. Defendant Christian Garrido was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

30. Defendant Garrido engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

31. Defendant Garrido engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

32. Defendant Bradley Orlando was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

33. Defendant Orlando engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

34. Defendant Orlando engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

35. Defendant John Kohler was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

36. Defendant Kohler engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

37. Defendant Kohler engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

38.     Defendant Jacob Wasechek was, at the time of this occurrence, employed as a sergeant in the City of Milwaukee's Police Department.

39.     Defendant Wasechek engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

40.     Defendant Wasechek engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

41.     Defendant Fidah Mustafa was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

42.     Defendant Mustafa engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

43.     Defendant Mustafa engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

44.     Defendant Sean Carleton was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

45.     Defendant Carleton engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

46.     Defendant Carleton engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

47.     Defendant Nathaniel Petersen was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

48.     Defendant Petersen engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

49.     Defendant Petersen engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

50.     Defendant Paul Vento was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

51.     Defendant Vento engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

52.     Defendant Vento engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

53.     Defendant Nicole Plevak was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

54.     Defendant Plevak engaged in the conduct complained of while she was on duty, acting under color of state law, ordinance, and or regulation.

55.     Defendant Plevak engaged in the conduct complained of in the course and scope of her employment with the City of Milwaukee. She is sued in her individual capacity.

## FACTS

56.     Niki and Patrick informed their local police, Milwaukee Police Department District 1, that they were the victims of a targeted harassment and stalking campaign in 2022.

7

57. Patrick spoke to officers at his local district, a dispatcher, and a desk Sergeant, to inform them that the group of online bullies who were stalking him and his wife Niki were threatening to swat them through harassing text messages.

58. Niki called the FBI as well, telling them the same thing.

59. They believed that the Milwaukee Police were going to do the right thing and put something in place that would keep the officers from becoming tools in their stalkers' harassment campaign.

60. But Niki and Patrick realized this wasn't the case on July 25, 2022, when police officers appeared on their front porch holding guns at one in the morning.

61. Members of the Milwaukee police were there on a call by one of Niki and Patrick's stalkers that there was a murder/hostage situation inside their home.

62. From the police reports of that incident, it appears no one informed the officers who responded of the repeated swatting threats and previous attempts.

63. Because they were not informed of the repeated swatting attempts, the officers responded as thought this were a true hostage situation.

64. Patrick was home alone, and without even time to get dressed, was ordered out of the home at gunpoint and left completely naked in handcuffs outside while the officers entered his home to search it.

65. It was only after the seizure of Patrick and the search of his home that, according to the officer's reports, "further investigation revealed that the Milwaukee Police Department has responded to other similar complaints at the location."

66.     A follow up police report, from July 27, 2022, confirms that after police listened to the "original 911 call" it was determined that Patrick was "NOT the 911 caller."

67.     On the next swatting, on August 11, 2022, Niki was home alone.

68.     According to the police report, this time authored by Officer Nicole Plevak, the officers who responded were aware that "there had been previous calls to the residence eliciting multiple squad responses."

69.     According to the police report, Niki told the police everyone in the house was fine and told the officers *again* that they "have been having ongoing issues of individuals falsifying 911 calls."

70.     Despite this, officers ordered Niki out of the home and searched the house without a warrant.

71.     For a moment, Niki and Patrick thought the madness would end.

72.     On September 22, 2022, officers arrived at their home, but politely told them they knew the report was false and left right away after telling the couple they didn't need to come inside.

73.     But their hopes gave way to renewed terror on October 1, 2022, when Niki was ordered out of the house by heavily armed officers stacked up behind a ballistic shield.

74.     According to the police report authored by Officer John Kohler, he and other members of the Milwaukee Tactical Enforcement Unit responded to the home on a report that Niki had been murdered.

75.     Among the other officers were Jacob Wasechek and Fidah Mustafa.

76.     However, the dispatch made it clear to the officers that they were responding to a "KNOWN SWATTING LOCATION."

77.     Niki, the person whose murder the officers were allegedly there to discover, came to the door and told the assembled SWAT team that she was fine.

78.     Despite this, officers pointed guns in her face, ordered her out of the home, and then searched her house.

79.     The officers aimed rifles at her and then proceeded to search the Robinson-Tomlinson home without a warrant.

80.     On November 4 and 30, police officers responded to the home based on false reports but simply knocked on the door and had a polite conversation with them about their situation.

81.     On each of these occasions, the dispatcher made it clear the officers were responding to a "KNOWN SWATTING LOCATION."

82.     But on March 20, 2023, Sergeant Lyndon Evans was one of the officers who was called to what was the 18th false 911 call (so far) made by Niki and Patrick's stalkers.

83.     Sergeant Evans, along with officers Christian Garrido and Bradley Orlando, were called out to the home on a false call that someone in the home had been murdered.

84.     According to the police report, the officers who responded knew that "the address is known for swatting calls."

85.     The dispatch made it clear to the officers that there was a "SWATTING RISK AT THIS LOCATION."

86.     Niki appeared at the front door and told the officers everyone was fine.

87. Sergeant Evans told her that he was "well aware" of their situation but was still demanding to enter the home.

88. Niki got Patrick on the phone who spoke to Officer Garrido and told him, according to the police report, that "these swatting calls are frustrating and…that he is upset that the Milwaukee Police Department does not have a solution for these swatting calls" and told Garrido that the officers "would need a warrant to enter his property."

89. This would be the first time that Sergeant Evans violated Niki and Patrick's Constitutional rights, but not the last.

90. According to Sergeant Evans's police report, he was told by dispatch that the call was made from a "virtual private network" and that there was a "swatting risk at this location."

91. Sergeant Evans's police report says that he was "aware of the location's history with swatting" and when he approached the front door he could see a set of "handwritten instructions for first responders…to call a phone number."

92. Sergeant Evans knocked, and Niki opened the front door and told him that she was fine, that this was another act of swatting, "and offered information about several past swatting incidents that centered around their…being victimized."

93. Despite this, Sergeant Evans "insisted that [he needed to] check the interior of the location" even though Niki told him she did not consent for him to come inside because she was busy working at home.

94. Niki told Sergeant Evans that he should call another police Sergeant, Carrie Pocernich, which Sergeant Evans did.

95.     According to his police report, Sergeant Evans spoke to Sergeant Pocernich, who told him that "she was not aware of an agreement between [Niki and Patrick] and personnel from the District One Station."

96.     This is a fabrication.

97.     Patrick has spoken to Sergeant Pocernich, who confirmed that during the phone call she had with Sergeant Evans, she told him that she *would not* search their home.

98.     Despite all this, according to his police report, Sergeant Evans "insisted entry to her home" and then "proceeded to check the residence."

99.     Evans accomplished this by putting his foot in the doorway and then forcing entry over Niki's objections.

100.    Officer Garrido and Officer Orlando did not intervene to stop this illegal search and seizure.

101.    Of course, Sergeant Evans found "no other person present or injured."

102.    On April 11, 2023, there were *four separate* swatting attempts.

103.    Three of them ended peacefully with a simple conversation.

104.    But on the last one, late at night, six armed police officers came to the Tomlinson-Robinson home and again detained Niki and Patrick and searched their home.

105.    Again, the dispatch made it clear that there was a "SWATTING RISK AT THIS LOCATION."

106.    This time the call wasn't made over 911, but through a "VPN CHAT SERVICE."

107.    One of the officers, Sean Carleton, wrote the police report.

108.    Officer Carleton wrote that it was important to "be noted" that Niki and Patrick's home "is listed as a swatting risk, meaning that there have been numerous false reports made at this home but not by the occupants of the home."

109.    Officer Carleton continued, writing that he was aware that Niki and Patrick are "disliked by an unknown community and it seems that are determined to continually call false reports on him."

110.    Patrick, who saw the whole thing on their doorbell camera application, rushed home to be with his wife.

111.    He told the officers to leave, but they refused.

112.    Officers ordered Niki to come to the front door and open it so they could visually inspect her.

113.    Patrick was illegally detained by the officers who threatened to place him in handcuffs for trying to go inside his own home.

114.    The *very next day,* April 12, 2023, Sergeant Evans responded to yet another swatting attempt at Niki and Patrick's home.

115.    The call was for a shooting at the residence, and the dispatcher advised officers they were to "BE ADVISED SWATTING RELATED CALL."

116.    As usual, the dispatch informed the officers that there was a "SWATTING RISK AT THIS LOCATION."

117.    Upon arriving, officers spoke with someone standing around who told them they "had not heard any gunshots."

118.    This time Officer Nathaniel Petersen wrote the report.

13

119.     According to that report, Petersen arrived with Sergeant Evans, and they were aware "this [was] a known swatting address that is located in the City and County of Milwaukee."

120.     The officers walked onto the porch of Niki and Patrick's home, and Patrick told the officers that "he and his wife were fine and that no one was shot and injured."

121.     But Sergeant Evans told Patrick that, if Niki did not come downstairs and open the door, he would "force enter and kick down his door."

122.     Sergeant Evans then ordered Officer Petersen to kick down their front door, which he proceeded to attempt but failed.

123.     Rather than have their door kicked down by Sergeant Evans, Niki came downstairs and allowed Sergeant Evans to see her through the door.

124.     Officer Petersen did not intervene to stop this illegal search and seizure.

125.     Then, *again*, on April 17, 2023, Sergeant Evans responded to *another* false 911 call at Niki and Patrick's home.

126.     This time he was accompanied by Officer Paul Vento, who wrote the police report.

127.     According to that report, Officer Vento and Sergeant Evans were aware that "this address is the victim of daily swatting calls."

128.     Once again, the dispatch informed Officer Vento and Sergeant Evans that there was a "SWATTING RISK AT THIS LOCATION."

129.     But once again, Sergeant Evans stood on Niki and Patrick's porch and refused to leave even after they told him they were ok.

130.    Again, he threatened to kick down their door unless they came downstairs and allowed him to visually inspect them.

131.    Rather than have their door kicked down by Sergeant Evans, Niki and Patrick agreed.

132.    Officer Vento did not intervene to stop this illegal seizure.

133.    Since then, although the Milwaukee police have received at least fifteen additional swatting calls, they have thankfully not invaded Niki and Patrick's home again.

134.    As a direct and proximate result of the acts of Defendants, as detailed above, Plaintiffs have suffered, *inter alia*, physical pain, mental distress, humiliation, loss of liberty, and incurred expenses.

## COUNT I:
### July 25, 2022, Swatting: Unlawful Search and Seizure
### (*Monell* Claim against City of Milwaukee)

135.    Plaintiffs reallege the above paragraphs.

136.    On July 25, 2022, members of the Milwaukee Police Department conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons.

137.    Had the officers been aware of Niki and Patrick's reports to Milwaukee about the swatting campaign, any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

138.    Any reasonable officer would have known there was not an exigency.

139.    Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

140.     Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting an illegal search of Plaintiffs' home and seizure of their persons.

141.     The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki Robinson and Patrick Tomlinson.

142.     The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to prevent Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment rights.

143.     The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiffs demand actual or compensatory damages against Defendants; and because they acted maliciously, wantonly, or oppressively, punitive damages; the costs of this action, attorneys' fees; and such other and further relief that the Court deems just and equitable.

**COUNT II:**
**August 11, 2022, Swatting: Unlawful Search and Seizure/Failure to Intervene**
**(*Monell* Claim against City of Milwaukee)**
**(Individual Claim against Nicole Plevak)**

144.     Plaintiffs reallege the above paragraphs.

145.     On August 11, 2022, members of the Milwaukee Police Department conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons.

146.     Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

147.     Any reasonable officer would have known there was not an exigency.

148.     Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

149.     Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' home and seizure of their persons.

150.     The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

151.     The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment rights.

152.     Defendant Plevak was personally aware that Patrick and Niki were the victims of a swatting campaign, so she had no reason to believe she had probable cause or exigent circumstances justifying a seizure or search of the home.

153.     Defendant Plevak had a duty to intervene to stop an illegal search or seizure.

154. Defendant Plevak did not intervene but instead participated in the illegal search and seizure.

155. The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiffs demand actual or compensatory damages against Defendants; and because they acted maliciously, wantonly, or oppressively, punitive damages; the costs of this action, attorneys' fees; and such other and further relief that the Court deems just and equitable.

**COUNT III:**
**October 1, 2022, Swatting: Unlawful Search and Seizure/Failure to Intervene.**
**(*Monell* Claim against City of Milwaukee)**
**(Individual Claim against John Kohler, Jacob Wasechek, and Fidah Mustafa)**

156. Plaintiffs reallege the above paragraphs.

157. On October 1, 2022, members of the Milwaukee Police Department, including Defendants Kohler, Wasechek, and Mustafa, conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons.

158. Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

159. Any reasonable officer would have known there was not an exigency.

160. Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

161. Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy,

practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' home and seizure of their persons.

162. The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

163. The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment rights.

164. Defendants Kohler, Wasechek, and Mustafa were personally aware that Patrick and Niki were the victims of a swatting campaign, so they had no reason to believe they had probable cause or exigent circumstances justifying a seizure or search of the home.

165. Defendants Kohler, Wasechek, and Mustafa had a duty to intervene to stop an illegal search or seizure.

166. Defendants Kohler, Wasechek, and Mustafa did not intervene but instead participated in the illegal search and seizure.

167. The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiffs demand actual or compensatory damages against Defendants; and because they acted maliciously, wantonly, or oppressively, punitive damages; the costs of this action, attorneys' fees; and such other and further relief that the Court deems just and equitable.

**COUNT IV:**
**March 20, 2023, Swatting: Unlawful Search and Seizure/Failure to Intervene**
**(*Monell* Claim against City of Milwaukee)**
**(Individual Claim against Lyndon Evans, Christian Garrido, and Bradley Orlando)**

168.    Plaintiffs reallege the above paragraphs.

169.    On March 20, 2023, members of the Milwaukee Police Department, including Defendants Evans, Garrido, and Orlando, conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons without exigency.

170.    Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

171.    Any reasonable officer would have known there was not an exigency.

172.    Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

173.    Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' home and seizure of their persons.

174.    The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

175.    The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment Rights.

176.     Defendants Evans, Garrido, and Orlando were personally aware that Patrick and Niki were the victims of a swatting campaign, so they had no reason to believe they had probable cause or exigent circumstances justifying a seizure or search of the home.

177.     Defendants Evans, Garrido, and Orlando had a duty to intervene to stop an illegal search or seizure.

178.     Defendants Evans, Garrido, and Orlando did not intervene but instead participated in the illegal search and seizure.

179.     The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

180.     The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiffs demand actual or compensatory damages against Defendants; and because they acted maliciously, wantonly, or oppressively, punitive damages; the costs of this action, attorneys' fees; and such other and further relief that the Court deems just and equitable.

### COUNT V:
### April 11, 2023, Swatting: Unlawful Search and Seizure/Failure to Intervene
### (*Monell* Claim against City of Milwaukee)
### (Individual Claim against Sean Carleton)

181.     Plaintiffs reallege the above paragraphs.

182.     On April 11, 2023, members of the Milwaukee Police Department, including Defendant Carleton, conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons without exigency.

183.     Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

184.     Any reasonable officer would have known there was not an exigency.

185.     Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

186.     Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' home and seizure of their persons.

187.     The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

188.     The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment rights.

189.     Defendant Carleton was personally aware that Patrick and Niki were the victims of a swatting campaign, so he had no reason to believe he had probable cause or exigent circumstances justifying a seizure or search of the home.

22

190. Defendant Carleton had a duty to intervene to stop an illegal search or seizure.

191. Defendant Carleton did not intervene but instead participated in the illegal search and seizure.

192. The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiffs demand actual or compensatory damages against Defendants; and because they acted maliciously, wantonly, or oppressively, punitive damages; the costs of this action, attorneys' fees; and such other and further relief that the Court deems just and equitable.

**COUNT VI:**
**April 12, 2023, Swatting: Unlawful Search and Seizure/Failure to Intervene**
**(*Monell* Claim against City of Milwaukee)**
**(Individual Claim against Nathaniel Petersen and Lyndon Evans)**

193. Plaintiffs reallege the above paragraphs.

194. On April 12, 2023, members of the Milwaukee Police Department, including Defendants Petersen and Evans, conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons without exigency.

195. Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

196. Any reasonable officer would have known there was not an exigency.

197. Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

198. Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' curtilage.

199. The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

200. The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment rights.

201. Defendants Evans and Petersen were personally aware that Patrick and Niki were the victims of a swatting campaign, so they had no reason to believe they had probable cause or exigent circumstances justifying a search of their home or seizure of their persons.

202. Defendants Evans and Petersen did so anyway.

203. The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiffs demand actual or compensatory damages against Defendants; and because they acted maliciously, wantonly, or oppressively, punitive damages; the costs of this action, attorneys' fees; and such other and further relief that the Court deems just and equitable.

**COUNT VII:**
**April 17, 2023, Swatting: Unlawful Search and Seizure/Failure to Intervene**
**(*Monell* Claim against City of Milwaukee)**
**(Individual Claim against Paul Vento and Lyndon Evans)**

204.    Plaintiffs reallege the above paragraphs.

205.    On April 12, 2023, members of the Milwaukee Police Department, including Defendants Evans and Vento, conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons without exigency.

206.    Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

207.    Any reasonable officer would have known there was not an exigency.

208.    Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

209.    Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' home and seizure of their persons.

210.    The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

211.    The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment rights.

212. Defendants Evans and Vento were personally aware that Patrick and Niki were the victims of a swatting campaign, so they had no reason to believe they had probable cause or exigent circumstances justifying a seizure or search of the home.

213. Defendants Evans and Vento had a duty to intervene to stop an illegal search or seizure.

214. Defendants Evans and Vento did not intervene but instead participated in the illegal search and seizure.

215. The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiffs demand actual or compensatory damages against Defendants; and because they acted maliciously, wantonly, or oppressively, punitive damages; the costs of this action, attorneys' fees; and such other and further relief that the Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury, pursuant to FED. R. CIV. PRO. 38(b), on all issues so triable.

Respectfully submitted,

Dated: 1 May 2024,

/s/ James Odell
John H. Bradley
  Wisconsin Bar No. 1053124
James Odell
  Wisconsin Bar No. 1131587
William E. Grau

Wisconsin Bar No. 1117724
STRANG BRADLEY, LLC
613 Williamson St., Suite 204
Madison, Wisconsin 53703
(608) 535-1550
John@StrangBradley.com
James@StrangBradley.com
William@StrangBradley.com

Attorneys for Plaintiff