## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
_____

NIKI ROBINSON and PATRICK TOMLINSON,

        Plaintiffs,

v.                                        Case No. 24-CV-00264

CITY OF MILWAUKEE, LYNDON EVANS,
CHRISTIAN GARRIDO, BRADLEY ORLANDO,
NICOLE PLEVAK, JOHN KOHLER,
JACOB WASECHEK, FIDAH MUSTAFA,
NATHANIEL PETERSEN, SEAN CARLETON,
and PAUL VENTO,

        Defendants.

_____

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
## TO PLAINTIFFS' FIRST AMENDED COMPLAINT
_____

NOW COME the Defendants, by their attorneys, Evan C. Goyke, City Attorney, represented by William Hotchkiss, Assistant City Attorney, and Maria Mesoloras, Assistant City Attorney, and as and for their answer to the Plaintiffs' first amended complaint, admit, deny, allege, and state as follows:

### INTRODUCTION

1.    Niki Robinson and Patrick Tomlinson are the targets of a vicious campaign of domestic terrorism, carried out at the hands of a group of bullies who hide behind the anonymity of the internet.

**RESPONSE:** Defendants lack information as to whether the acts qualify as "domestic terrorism" and lack knowledge and/or information about who is carrying out the alleged "campaign of domestic terrorism."

2.      The bullies' main weapon of choice is something called "swatting," which is when someone who wants to endanger the life and safety of another calls 911 and lies to provoke a dangerous police response to the victim's home.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about who is committing the "swatting" and whether this is the "main weapon of choice" but further admit the general definition of swatting.

3.      The goal is to either harm or terrorize an innocent person at the hands of the police, who the caller is hoping will barge into their victim's home and, in the chaos, injure or kill them.

**RESPONSE:** Defendants lack knowledge and information sufficient to form a belief about the goals of the person(s) engaging in the swattings, and any response to this paragraph would require speculation.

4.      "Swatting" has become a widespread and well-known method of harassment, with several states and the federal government adopting harsh criminal penalties to deter would-be swatters.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore deny.

5.      Normally the police are unwitting tools of these bad actors who have no choice but to take these false calls at face value.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore deny.

6.      But Niki and Patrick's situation is different because the Milwaukee Police Department has responded to swatting calls to their home *at least 45 times* in the past two years.

**RESPONSE:** Admit.

7.      Any rational police force would have recognized at some point that any calls involving the Robinson-Tomlinson home were clearly false and should not be taken seriously.

**RESPONSE:** Defendants lack information sufficient to form a belief as to what plaintiffs mean by "taken seriously" and therefore deny.

2

8.     Any rational police force would have implemented some sort of policy to avoid becoming a tool of terror against the very citizens they are sworn to protect.

**RESPONSE:** Defendants deny that there were no policies implemented and deny the police force has become a tool of terror.

9.     But time and time again, the Milwaukee police have ignored reality, resulting in multiple illegal searches of Niki and Patrick's home and illegal seizures of their persons.

**RESPONSE:** Deny.

10.     This insanity has drawn local, national, and international media attention.

**RESPONSE:** Defendants disagree with the characterization of the police response as "insanity," and further state that they lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore deny.

11.     Niki and Patrick have tried to work with the City of Milwaukee to stop this, but the City of Milwaukee failed to adopt a policy or train its officers on how to prevent Niki and Patrick's stalkers from using the police department as a tool of terror.

**RESPONSE:** Deny.

12.     And while many of the police officers who have responded to Patrick and Niki's home have been kind, understanding, and compassionate, others have not.

**RESPONSE:** Deny.

13.     The worst offender is Sergeant Lyndon Evans.

**RESPONSE:** Deny.

14.     On the three occasions, Sergeant Evans responded to a swatting call with abuse and violence.

**RESPONSE:** Deny.

15.     Sergeant Evans told Niki and Patrick that he was "well aware" of the situation, but still demanded to be let inside their home, going so far as to threaten to break down the front door if he was not allowed inside.

**RESPONSE:** Defendants lack information and knowledge sufficient to support a belief as to the truth of the matters alleged, specifically because there is no date listed in this paragraph, and therefore deny.

16.     Niki and Patrick live in a constant state of fear, worried that the next encounter they have with the police will be their last.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, and note that this paragraph calls for speculation about Plaintiffs' thoughts and feelings, and therefore deny.

17.     Every knock on the door or police car that drives by leaves them terrified that they are about to be staring down an officer's gun or that they will paraded outside in handcuffs to their further humiliation.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore deny.

18.     This lawsuit seeks to end the madness and vindicate the violation of Plaintiffs' constitutional rights. It seeks to effect change through punitive damages by punishing the Defendants for their egregious conduct with the hope that the punishment is significant enough to prevent this from happening again in the future.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to what the Plaintiffs seek through this lawsuit, Defendants disagree with Plaintiffs' characterization of the police response as "madness," and Defendants further deny that their conduct was egregious or that punitive damages are appropriate.

## JURISDICTION AND VENUE

19.     This action is brought under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

**RESPONSE:** Admit.

20.     This court has jurisdiction over federal claims under 28 U.S.C. § 1331 and the state law claim for indemnification under 28 U.S.C. § 1367.

4

**RESPONSE:** Admit.

21.     Venue is proper under 28 U.S.C. § 1391(b). Defendant City of Milwaukee is a political subdivision of the state of Wisconsin located within this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

**RESPONSE:** Admit.

## PARTIES

22.     Plaintiff Niki Robinson is a resident of the State of Wisconsin and the County of Milwaukee.

**RESPONSE:** Defendants lack sufficient knowledge or information to form a belief about this,

but based on Plaintiffs' representations, admit.

23.     Plaintiff Patrick Tomlinson is a resident of the State of Wisconsin and the County of Milwaukee.

**RESPONSE:** Defendants lack sufficient knowledge or information to form a belief about this,

but based on Plaintiffs' representations, admit.

24.     Defendant City of Milwaukee is a political subdivision of the state of Wisconsin.

**RESPONSE:** Admit.

25.     Defendant City of Milwaukee is or was the employer of Defendant Evans and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment.

**RESPONSE:** Admit.

26.     Defendant Lyndon Evans was, at the time of this occurrence, employed as a sergeant in the City of Milwaukee's Police Department.

**RESPONSE:** Admit.

27.     Defendant Evans engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Deny that the defendant engaged in the conduct complained of, but admit that the

Defendant was on duty, acting under color of state law, ordinance, or regulation.

5

28.     Defendant Evans engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of in the complaint, but admit that the Defendant was acting in the course and scope of his employment.

29.     Defendant Christian Garrido was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

**RESPONSE:** Admit.

30.     Defendant Garrido engaged in the conduct complained of while he was on duty, acting under color of state law ordinance, and or regulation.

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of, but admit that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

31.     Defendant Garrido engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:** Deny that the defendant engaged in the conduct complained of in the complaint, but admit that the defendant was acting in the course and scope of his employment.

32.     Defendant Bradley Orlando was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

**RESPONSE:** Admit.

33.     Defendant Orlando engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of, but admit that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

34.     Defendant Orlando engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of in the complaint, but admit that the Defendant was acting in the course and scope of his employment.

6

35.     Defendant John Kohler was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

**RESPONSE:** Admit.

36.     Defendant Kohler engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of, but admit that the

Defendant was on duty, acting under color of state law, ordinance, or regulation.

37.     Defendant Kohler engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of in the complaint,

but admit that the Defendant was acting in the course and scope of his employment.

38.     Defendant Jacob Wasechek was, at the time of this occurrence, employed as a sergeant in the City of Milwaukee's Police Department.

**RESPONSE:** Admit.

39.     Defendant Wasechek engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of, but admit that the

Defendant was on duty, acting under color of state law, ordinance, or regulation.

40.     Defendant Wasechek engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of in the complaint,

but admit that the Defendant was acting in the course and scope of his employment.

41.     Defendant Fidah Mustafa was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

**RESPONSE:** Admit.

42.     Defendant Mustafa engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

7

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of, but admit that the

Defendant was on duty, acting under color of state law, ordinance, or regulation.

43.     Defendant Mustafa engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of in the complaint,

but admit that the Defendant was acting in the course and scope of his employment.

44.     Defendant Sean Carleton was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

**RESPONSE:** Admit.

45.     Defendant Carleton engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of, but admit that the

Defendant was on duty, acting under color of state law, ordinance, or regulation.

46.     Defendant Carleton engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:** Deny that the defendant engaged in the conduct complained of in the complaint,

but admit that the defendant was acting in the course and scope of his employment.

47.     Defendant Nathaniel Petersen was, at the time this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

**RESPONSE:** Admit.

48.     Defendant Petersen engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of, but admit that the

Defendant was on duty, acting under color of state law, ordinance, or regulation.

49.     Defendant Petersen engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

8

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of in the complaint, but admit that the Defendant was acting in the course and scope of his employment.

50.     Defendant Paul Vento was, at the time of this occurrence employed as police officer in the City of Milwaukee's Police Department.

**RESPONSE:** Admit.

51.     Defendant Vento engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Deny that the defendant engaged in the conduct complained of, but admit that the defendant was on duty, acting under color of state law, ordinance, or regulation.

52.     Defendant Vento engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of in the complaint, but admit that the Defendant was acting in the course and scope of his employment.

53.     Defendant Nicole Plevak was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

**RESPONSE:** Admit.

54.     Defendant Plevak engaged in the conduct complained of while she was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of, but admit that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

55.     Defendant Plevak engaged in the conduct complained of in the course and scope of her employment with the City of Milwaukee. She is sued in her individual capacity.

**RESPONSE:** Deny that the Defendant engaged in the conduct complained of in the complaint, but admit that the Defendant was acting in the course and scope of her employment.

## FACTS

56.    Niki and Patrick informed their local police, Milwaukee Police Department District 1, that they were the victims of a targeted harassment and stalking campaign in 2022.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore deny.

57.    Patrick spoke to officers at his local district, a dispatcher, and a desk Sergeant, to inform them that the group of online bullies who were stalking him and his wife Niki were threatening to swat them through harassing text messages.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore deny.

58.    Niki called the FBI as well, telling them the same thing.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore deny.

59.    They believed that the Milwaukee Police were going to do the right thing, and put something in place that would keep the officers from becoming tools in their stalkers' harassment campaign.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, object to Plaintiffs' characterization of the police response being tantamount to "becoming tools in their stalkers' harassment campaign," and therefore deny.

60.    But Niki and Patrick realized this wasn't the case on July 25, 2022 when police officers appeared on their front porch holding guns at one in the morning.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to what Niki and Patrick realized, further note that such a response would call for speculation into Plaintiffs' thoughts and feelings, object to this alleged police response being characterized as not "do[ing] the right thing," and therefore deny.

10

61.     Members of the Milwaukee police were there on a call by one of Niki and Patrick's stalkers that there was a murder/hostage situation inside their home

**RESPONSE:** Defendants lack information as to who placed the call, but further admit the general content of the call.

62.     From the police reports of that incident, it appears no one informed the officers who responded of the repeated swatting threats and previous attempts.

**RESPONSE:** Admit.

63.     Because they were not informed of the repeated swatting attempts, the officers responded as thought [sic] this were a true hostage situation.

**RESPONSE:** Admit.

64.     Patrick was home alone, and without even time to get dressed, was ordered out of the home at gunpoint and left completely naked in handcuffs outside while the officers entered his home to search it.

**RESPONSE:** Admit.

65.     It was only after the seizure of Patrick and the search of his home that, according to the officer's reports, "further investigation revealed that the Milwaukee Police Department has responded to other similar complaints at the location."

**RESPONSE:** Admit.

66.     A follow up police report, from July 27, 2022, confirms that after police listened to the "original 911 call" it was determined that Patrick was "NOT the 911 caller."

**RESPONSE:** Admit.

67.     On the next swatting, on August 11, 2022, Niki was home alone.

**RESPONSE:** Admit.

68.     According to the police report, this time authored by Officer Nicole Plevak, the officers who responded were aware that "there had been previous calls to the residence eliciting multiple squad responses."

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore deny.

69.     According to the police report, Niki told the police everyone in the house was fine and told the officers *again* that they "have been having ongoing issues of individuals falsifying 911 calls."

**RESPONSE:** Admit.

70.     Despite this, officers ordered Niki out of the home and searched the house without a warrant.

**RESPONSE:** Defendants deny and object to the phrase "ordered," admit that there was no warrant, but further allege that Niki gave them consent to enter the home to confirm that there was not a shooting.

71.     For a moment, Niki and Patrick thought the madness would end.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to what Niki and Patrick thought, and therefore deny.

72.     On September 22, 2022, officers arrived at their home, but politely told them they knew the report was false and left right away after telling the couple they didn't need to come inside.

**RESPONSE:** Admit.

73.     But their hopes gave way to renewed terror on October 1, 2022, when Niki was ordered out of the house by heavily armed officers stacked up behind a ballistic shield.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to whether or not "their hopes gave way to renewed terror" on October 1, 2022, but further admit.

74.     According to the police report authored by Officer John Kohler, he and other members of the Milwaukee Tactical Enforcement Unit responded to the home on a report that Niki had been murdered.

**RESPONSE:** Admit that Officer Kohler was there but deny that he was a member of the Milwaukee Tactical Enforcement Unit.

75.     Among the other officers were Jacob Wasechek and Fidah Mustafa.

**RESPONSE:** Admit that those officers were there but again deny that they were members of the Milwaukee Tactical Enforcement Unit.

76.     However, the dispatch made it clear to the officers that they were responding to a "KNOWN SWATTING LOCATION."

**RESPONSE:** Defendants admit that the CAD states this, but deny any implication as to the timing of when the dispatch was entered and whether that entry was timely communicated to officers.

77.     Niki, the person whose murder the officers were allegedly there to discover, came to the door and told the assembled SWAT team that she was fine

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to what Niki and Patrick thought, and therefore deny.

78.     Despite this, officers pointed guns in her face, ordered her out of the home, and then searched her house.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to what Niki and Patrick thought, and therefore deny.

79.     The officers aimed rifles at her and then proceeded to search the Robinson-Tomlinson home without a warrant.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to what Niki and Patrick thought, and therefore deny.

80.     On November 4 and 30, police officers responded to the home based on false reports but simply knocked on the door and had a polite conversation with them about their situation.

**RESPONSE:** Defendants deny Plaintiffs' implication that the officers knew the reports were false at the time they responded, but otherwise admit the remainder of this paragraph.

81.     On each of these occasions, the dispatcher made it clear the officers were responding to a "KNOWN SWATTING LOCATION."

**RESPONSE:** Defendants admit that the CAD states this, but deny any implication that the individually named officers received or saw that communication prior to arriving on-scene.

82.     But on March 20, 2023, Sergeant Lyndon Evans was one of the officers who was called to what was the 18th false 911 call (so far) made by Niki and Patrick's stalkers.

**RESPONSE:** Admit that Sgt. Evans was one of the officers who was called, but lack information as to the number of 911 call and whether or not it was made by one of their "stalkers."

83.     Sergeant Evans, along with officers Christian Garrido and Bradley Orlando, were called out to the home on a false call that someone in the home had been murdered.

**RESPONSE:** Admit, but further deny any implication as to the officers' knowledge at the time of the response.

84.     According to the police report, the officers who responded knew that "the address is known for swatting calls."

**RESPONSE:** Defendants admit that the police report states this, but deny any implication as to the timing of when the report was created and whether that entry was timely communicated to officers.

85.     The dispatch made it clear to the officers that there was a "SWATTING RISK AT THIS LOCATION."

**RESPONSE:** Defendants admit that the CAD states this, but deny any implication as to the timing of when the dispatch was entered and whether that entry was timely communicated to officers.

86.     Niki appeared at the front door and told the officers everyone was fine.

**RESPONSE:** Admit.

87.     Sergeant Evans told her that he was "well aware" of their situation but was still demanding to enter the home

**RESPONSE:** Defendants lack knowledge and information sufficient to form a belief as to whether Sergeant Evans used the phrase "well aware," but further admit that Sergeant Evans did enter the home.

88.     Niki got Patrick on the phone who spoke to Officer Garrido and told him, according to the police report, that "these swatting calls are frustrating and… that he is upset that the Milwaukee Police Department does not have a solution for these swatting calls" and told Garrido that the officers "would need a warrant to enter his property."

**RESPONSE:** Admit.

89.     This would be the first time that Sergeant Evans violated Niki and Patrick's Constitutional rights, but not the last.

**RESPONSE:** Deny that any constitutional violation occurred.

90.     According to Sergeant Evans' police report, he was told by dispatch that the call was made from a "virtual private network" and that there was a "swatting risk at this location."

**RESPONSE:** Deny that Sgt. Evans was "told" by dispatch, but admit that Sgt. Evans' report indicates a review of the CAD that states that.

91.     Sergeant Evans' police report says that he was "aware of the location's history with swatting" and when he approached the front door he could see a set of "handwritten instructions for first responders…to call a phone number."

**RESPONSE:** Admit.

92.     Sergeant Evans knocked, and Niki opened the front door and told him that she was fine, that this was another act of swatting, "and offered information about several past swatting incidents that centered around their…being victimized."

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to whether Niki said she was fine, but further admit.

93.     Despite this, Sergeant Evans "insisted that [he needed to] check the interior of the location" even though Niki told him she did not consent for him to come inside because she was busy working at home.

**RESPONSE:** Admit.

94.     Niki told Sergeant Evans that he should call another police Sergeant, Carrie Pocernich, which Sergeant Evans did.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to whether Niki told Sgt. Evans to call another police Sergeant and whether or not Niki said to specifically call Carrie Pocernich.

95.     According to his police report, Sergeant Evans spoke to Sergeant Pocernich, who told him that "she was not aware of an agreement between [Niki and Patrick] and personnel from the District One Station."

**RESPONSE:** Admit.

96.     This is a fabrication.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore deny.

97.     Patrick has spoken to Sergeant Pocernich, who confirmed that during the phone call she had with Sergeant Evans, she told him that she *would not* search their home.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore deny.

98.     Despite all this, according to his police report, Sergeant Evans "insisted entry to her home" and then "proceeded to check the residence."

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to what specifically "Despite all this' is referring to, but further admit that Sgt. Evans entered the home and checked the residence.

99.     Evans accomplished this by putting his foot in the doorway and then forcing entry over Niki's objections.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore deny.

100.    Officer Garrido and Officer Orlando did not intervene to stop this illegal search and seizure.

**RESPONSE:** Deny that an illegal search or seizure occurred.

101.    Of course, Sergeant Evans found "no other person present or injured."

**RESPONSE:** Admit, but disagree with the implications suggested by Plaintiffs' preface to the sentence with the words "of course."

102.    On April 11, 2023, there were *four separate* swatting attempts.

**RESPONSE:** Admit.

103.    Three of them ended peacefully with a simple conversation.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to what Plaintiffs mean by "ended peacefully with a simple conversation."

104.    But on the last one, late at night, six armed police officers came to the Tomlinson-Robinson home and again detained Niki and Patrick and searched their home.

**RESPONSE:** Admit that officers came to their home, but further deny.

105.    Again, the dispatch made it clear that there was a "SWATTING RISK AT THIS LOCATION."

**RESPONSE:** Defendants admit that the CAD states this, but deny any implication as to the timing of when the dispatch was entered and whether that entry was timely communicated to officers.

106.    This time the call wasn't made over 911, but through a "VPN CHAT SERVICE."

**RESPONSE:** Admit.

107.    One of the officers, Sean Carleton, wrote the police report.

**RESPONSE:** Admit.

108.    Officer Carleton wrote that it was important to "be noted" that Niki and Patrick's home "is listed as a swatting risk, meaning that there have been numerous false reports made at this home but not by the occupants of the home."

17

**RESPONSE:** Admit, but deny any implication as to the timing of that knowledge.

109. Officer Carleton continued, writing that he was aware that Niki and Patrick are "disliked by an unknown community and it seems that are determined to continually call false reports on him."

**RESPONSE:** Admit.

110. Patrick, who saw the whole thing on their doorbell camera application, rushed home to be with his wife.

**RESPONSE:** Defendants lack knowledge and information sufficient to form a belief as to the truth of the matter alleged, and therefore deny.

111. He told the officers to leave, but they refused.

**RESPONSE:** Admit, but further, Defendants affirmatively allege that Patrick was unreasonably loud, boisterous, appeared to be intoxicated, and was otherwise disorderly while hurling insults at officers.

112. Officers ordered Niki to come to the front door and open it so they could visually inspect her.

**RESPONSE:** Admit.

113. Patrick was illegally detained by the officers who threatened to place him in handcuffs for trying to go inside his own home.

**RESPONSE:** Deny.

114. The *very next day,* April 12, 2023, Sergeant Evans responded to yet another swatting attempt at Niki and Patrick's home.

**RESPONSE:** Admit.

115. The call was for a shooting at the residence, and the dispatcher advised officers they were to be "BE ADVISED SWATTING RELATED CALL."

18

**RESPONSE:** Defendants admit that the CAD states this, but deny any implication as to the timing of when the dispatch was entered and whether that entry was timely communicated to officers.

116. As usual, the dispatch informed the officers that there was a "SWATTING RISK AT THIS LOCATION."

**RESPONSE:** Defendants admit that the CAD states this, but deny any implication as to the timing of when the dispatch was entered and whether that entry was timely communicated to officers.

117. Upon arriving, officers spoke with someone standing around who told them they "had not heard any gunshots."

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore deny.

118. This time Officer Nathaniel Petersen wrote the report.

**RESPONSE:** Admit.

119. According to that report, Petersen arrived with Sergeant Evans, and they were aware "this [was] a known swatting address that is located in the City and County of Milwaukee."

**RESPONSE:** Admit.

120. The officers walked onto the porch of Niki and Patrick's home, and Patrick told the officers that "he and his wife were fine and that no one was shot and injured."

**RESPONSE:** Admit.

121. But Sergeant Evans told Patrick that, if Niki did not come downstairs and open the door, he would "force enter and kick down his door."

**RESPONSE:** Admit.

122. Sergeant Evans then ordered Officer Petersen to kick down their front door, which he proceeded to attempt but failed.

19

**RESPONSE:** Admit that Sgt. Evans directed Officer Petersen to kick the door and Officer Petersen kicked the door.

123. Rather than have their door kicked down by Sergeant Evans, Niki came downstairs and allowed Sergeant Evans to see her through the door.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to Niki's thought process.

124. Officer Petersen did not intervene to stop this illegal search and seizure.

**RESPONSE:** Deny that an illegal search or seizure occurred.

125. Then, *again,* on April 17, 2023, Sergeant Evans responded to *another* false 911 call at Niki and Patrick's home.

**RESPONSE:** Admit.

126. This time he was accompanied by Officer Paul Vento, who wrote the police report.

**RESPONSE:** Admit.

127. According to that report, Officer Vento and Sergeant Evans were aware that "this address is the victim of daily swatting calls."

**RESPONSE:** Admit.

128. Once again, the dispatch informed Officer Vento and Sergeant Evans that there was a "SWATTING RISK AT THIS LOCATION."

**RESPONSE:** Defendants admit that the CAD states this, but deny any implication as to the timing of when the dispatch was entered and whether that entry was timely communicated to officers.

129. But once again, Sergeant Evans stood on Niki and Patrick's porch and refused to leave even after they told him they were ok.

**RESPONSE:** Deny.

130. Again, he threatened to kick down their door unless they came downstairs and allowed him to visually inspect them.

20

**RESPONSE:** Deny.

131.     Rather than have their door kicked down by Sergeant Evans, Niki and Patrick agreed.

**RESPONSE:** Defendants lack knowledge and information sufficient to form a belief as to Niki and Patrick's motivations, thoughts or feelings.

132.     Officer Vento did not intervene to stop this illegal seizure.

**RESPONSE:** Deny that an illegal seizure occurred.

133.     Since then, although the Milwaukee police have received at least fifteen additional swatting calls, they have thankfully not invaded Niki and Patrick's home again.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore deny. Defendants further disagree with Plaintiffs' characterization of them as "invad[ing]" Plaintiffs' home.

134.     As a direct and proximate result of the acts of Defendants, as detailed above, Plaintiffs have suffered, *inter alia,* physical pain, mental distress, humiliation, loss of liberty, and incurred expenses.

**RESPONSE:** Defendants lack information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore deny.

### COUNT I:
### July 25, 2022, Swatting: Unlawful Search and Seizure
### (*Monell* Claim against City of Milwaukee)

135.     Plaintiffs reallege the above paragraphs.

**RESPONSE:** Defendants reallege their above answers.

136.     On July 25, 2022, members of the Milwaukee Police Department conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons.

**RESPONSE:** Count 1 was dismissed pursuant to a previous court order so Defendants do not believe an answer is required to this paragraph.

21

137. Had the officers been aware of Niki and Patrick's reports to Milwaukee about the swatting campaign, any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

**RESPONSE:** Count 1 was dismissed pursuant to a previous court order so Defendants do not believe an answer is required to this paragraph.

138. Any reasonable officer would have known there was not an exigency.

**RESPONSE:** Count 1 was dismissed pursuant to a previous court order so Defendants do not believe an answer is required to this paragraph.

139. Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

**RESPONSE:** Count 1 was dismissed pursuant to a previous court order so Defendants do not believe an answer is required to this paragraph.

140. Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting an illegal search of Plaintiffs' home and seizure of their persons.

**RESPONSE:** Count 1 was dismissed pursuant to a previous court order so Defendants do not believe an answer is required to this paragraph.

141. The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki Robinson and Patrick Tomlinson.

**RESPONSE:** Count 1 was dismissed pursuant to a previous court order so Defendants do not believe an answer is required to this paragraph.

142. The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to prevent Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment rights.

**RESPONSE:** Count 1 was dismissed pursuant to a previous court order so Defendants do not believe an answer is required to this paragraph.

143.   The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

**RESPONSE:** Count 1 was dismissed pursuant to a previous court order so Defendants do not believe an answer is required to this paragraph.

**COUNT II:**
**August 11, 2022, Swatting: Unlawful Search and Seizure/Failure to Intervene**
**(*Monell* Claim against City of Milwaukee)**
**(Individual Claim against Nicole Plevak)**

144.   Plaintiffs reallege the above paragraphs.

**RESPONSE:** Defendants reallege their above answers.

145.   On August 11, 2022, members of the Milwaukee Police Department conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons.

**RESPONSE:** Deny that a warrantless seizure occurred, admit that Officers entered their home without a warrant, but affirmatively allege that they were given permission to enter and deny that exigent circumstances did not exist.

146.   Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

**RESPONSE:** Deny.

147.   Any reasonable officer would have known there was not an exigency.

**RESPONSE:** Deny.

148.   Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

**RESPONSE:** Deny.

149.   Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' home and seizure of their persons.

**RESPONSE:** Deny.

150.     The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

**RESPONSE:** Deny.

151.     The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment rights.

**RESPONSE:** Deny.

152.     Defendant Plevak was personally aware that Patrick and Niki were the victims of a swatting campaign, so she had no reason to believe she had probable cause or exigent circumstances justifying a seizure or search of the home

**RESPONSE:** Deny.

153.     Defendant Plevak had a duty to intervene to stop an illegal search or seizure.

**RESPONSE:** Deny that an illegal search or seizure occurred.

154.     Defendant Plevak did not intervene but instead participated in the illegal search and seizure.

**RESPONSE:** Deny that an illegal search or seizure occurred.

155.     The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

**RESPONSE:** Deny.

### COUNT III:
**October 1, 2022, Swatting: Unlawful Search and Seizure/Failure to Intervene**
**(*Monell* Claim against City of Milwaukee)**
**(Individual Claim against John Kohler, Jacob Wasechek, and Fidah Mustafa)**

156.     Plaintiffs reallege the above paragraphs.

**RESPONSE:** Defendants reallege their above answers.

157.     On October 1, 2022, members of the Milwaukee Police Department, including Defendants Kohler, Wasechek, and Mustafa, conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons.

24

**RESPONSE:** Deny.

158.    Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

**RESPONSE:** Deny.

159.    Any reasonable officer would have known there was not an exigency.

**RESPONSE:** Deny.

160.    Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

**RESPONSE:** Deny.

161.    Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officer from conducting the illegal search of Plaintiffs' home and seizure of their persons.

**RESPONSE:** Deny.

162.    The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

**RESPONSE:** Deny.

163.    The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment rights.

**RESPONSE:** Deny.

164.    Defendants Kohler, Wasechek, and Mustafa were personally aware that Patrick and Niki were the victims of a swatting campaign, so they had no reason to believe they had probable cause or exigent circumstances justifying a seizure or search of the home.

**RESPONSE:** Deny.

165.    Defendants Kohler, Wasechek, and Mustafa had a duty to intervene to stop an illegal search or seizure.

**RESPONSE:** Deny that an illegal search or seizure occurred and that Defendants failed to intervene.

166. Defendants Kohler, Wasechek, and Mustafa did not intervene but instead participated in the illegal search and seizure.

**RESPONSE:** Deny.

167. The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

**RESPONSE:** Deny.

**COUNT IV:**
**March 20, 2023, Swatting: Unlawful Search and Seizure/Failure to Intervene**
(***Monell*** **Claim against City of Milwaukee)**
**(Individual Claim against Lyndon Evans Christian Garrido, and Bradley Orlando)**

168. Plaintiffs reallege the above paragraphs.

**RESPONSE:** Defendants reallege their above answers.

169. On March 20, 2023, members of the Milwaukee Police Department, including Defendants Evans, Garrido, and Orlando, conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons without exigency.

**RESPONSE:** Deny.

170. Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

**RESPONSE:** Deny.

171. Any reasonable officer would have known there was not an exigency.

**RESPONSE:** Deny.

172. Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

**RESPONSE:** Deny.

173. Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or

procedure to stop officers from conducting the illegal search of Plaintiffs' home and seizure of their persons.

**RESPONSE:** Deny.

174. The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

**RESPONSE:** Deny.

175. The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment Rights.

**RESPONSE:** Deny.

176. Defendants Evans, Garrido, and Orlando were personally aware that Patrick and Niki were the victims of a swatting campaign, so they had no reason to believe they had probable cause or exigent circumstances justifying a seizure or search of the home.

**RESPONSE:** Deny.

177. Defendants Evans, Garrido, and Orlando had a duty to intervene to stop an illegal search or seizure.

**RESPONSE:** Deny that an illegal search or seizure occurred.

178. Defendants Evans, Garrido, and Orlando did not intervene but instead participated in the illegal search and seizure.

**RESPONSE:** Deny that an illegal search or seizure occurred.

179. The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

**RESPONSE:** Deny that any constitutional violations occurred.

180. The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

**RESPONSE:** Deny that any constitutional violations occurred.

**COUNT V:**
**April 11, 2023, Swatting: Unlawful Search and Seizure/Failure to Intervene**
(***Monell*** **Claim against City of Milwaukee)**
**(Individual Claim against Sean Carleton)**

181.     Plaintiffs reallege the above paragraphs.

**RESPONSE:** Defendants reallege their above answers.

182.     On April 11, 2023, members of the Milwaukee Police Department, including Defendant Carleton, conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons without exigency.

**RESPONSE:** Deny.

183.     Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

**RESPONSE:** Deny.

184.     Any reasonable officer would have known there was not an exigency.

**RESPONSE:** Deny.

185.     Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

**RESPONSE:** Deny.

186.     Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' home and seizure of their persons.

**RESPONSE:** Deny.

187.     The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

**RESPONSE:** Deny.

188.     The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment rights.

**RESPONSE:** Deny.

189. Defendant Carleton was personally aware that Patrick and Niki were the victims of a swatting campaign, so he had no reason to believe he had probable cause or exigent circumstances justifying a seizure of the home.

**RESPONSE:** Deny.

190. Defendant Carleton had a duty to intervene to stop an illegal search or seizure.

**RESPONSE:** Deny that an illegal search or seizure occurred.

191. Defendant Carleton did not intervene but instead participated in the illegal search and seizure.

**RESPONSE:** Deny that an illegal search or seizure occurred.

192. The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

**RESPONSE:** Deny that a constitutional violation occurred.

**COUNT VI:**
**April 12, 2023, Swatting: Unlawful Search and Seizure/Failure to Intervene**
**(*Monell* Claim against City of Milwaukee)**
**(Individual Claim against Nathaniel Petersen and Lyndon Evans)**

193. Plaintiffs reallege the above paragraphs.

**RESPONSE:** Defendants reallege their above answers.

194. On April 12, 2023, members of the Milwaukee Police Department, including Defendants Petersen and Evans, conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons without exigency.

**RESPONSE:** Deny.

195. Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

**RESPONSE:** Deny.

196. Any reasonable officer would have known there was not an exigency.

**RESPONSE:** Deny.

197.    Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

**RESPONSE:** Deny.

198.    Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' curtilage.

**RESPONSE:** Deny.

199.    The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

**RESPONSE:** Deny.

200.    The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violations of Plaintiffs' Fourth Amendment rights.

**RESPONSE:** Deny.

201.    Defendants Evans and Petersen were personally aware that Patrick and Niki were the victims of a swatting campaign, so they had no reason to believe they had probable cause or exigent circumstances justifying a search of their home or seizure of their persons.

**RESPONSE:** Deny.

202.    Defendants Evans and Petersen did so anyway.

**RESPONSE:** Deny.

203.    The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

**RESPONSE:** Deny that constitutional violations occurred.

## COUNT VII:
### April 17, 2023, Swatting: Unlawful Search and Seizure/Failure to Intervene
### (*Monell* Claim against City of Milwaukee)
### (Individual Claim against Paul Vento and Lyndon Evans)

204.    Plaintiffs reallege the above paragraphs.

**RESPONSE:** Defendants reallege their above answers.

205.   On April 12, 2023, members of the Milwaukee Police Department, including Defendants Evans and Vento, conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons without exigency.

**RESPONSE:** Deny.

206.   Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

**RESPONSE:** Deny.

207.   Any reasonable officer would have known there was not an exigency.

**RESPONSE:** Deny.

208.   Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

**RESPONSE:** Deny.

209.   Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' home and seizure of their persons.

**RESPONSE:** Deny.

210.   The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

**RESPONSE:** Deny.

211.   The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment rights.

**RESPONSE:** Deny.

212.   Defendants Evans and Vento were personally aware that Patrick and Niki were the victims of a swatting campaign, so they had no reason to believe they had probable cause or exigent circumstances justifying a seizure or search of the home.

31

**RESPONSE:** Deny.

213.    Defendants Evans and Vento had a duty to intervene to stop an illegal search or seizure.

**RESPONSE:** Deny.

214.    Defendants Evans and Vento did not intervene but instead participated in the illegal search and seizure.

**RESPONSE:** Deny.

215.    The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

**RESPONSE:** Deny.

**AFFIRMATIVE DEFENSES**

AS AND FOR AFFIRMATIVE DEFENSES, Defendants allege and state to the Court as follows:

1.    Defendants allege each and every affirmative defense contained in Rule 12 of the Federal Rules of Civil Procedure to avoid any claim of waiver in the event that discovery reveals a factual basis for these defenses, and further reserve the right to assert additional affirmative defenses that may become available as a result of future discovery in this lawsuit.

2.    Plaintiffs' claims may be barred or limited by the controlling statute of limitations and/or the provisions of Wis. Stats. §§ 893.54, 893.80, and/or other applicable statutes of limitation.

3.    Defendants may be entitled to immunity and/or qualified immunity against Plaintiffs' claims:

a.      To the extent that Plaintiffs allege any state law claims, they are subject to the exclusions, immunities and limitations on liability set forth in Wis. Stats. §§ 893.80.

b.      Pursuant to Wis. Stat. § 893.80, the City of Milwaukee is entitled to immunity for legislative, quasi-legislative, judicial and quasi-judicial acts and it is further immune from liability for the discretionary acts of its employees.

c.      Pursuant to Wis. Stat. § 893.80, employees and/or agents of the City of Milwaukee are immune from liability regarding any state law claims for acts done in the exercise of their legislative, quasi-legislative, judicial, or quasi-judicial functions.

d.      To the extent that the responding Defendants acted within the scope of their authority as public officials, they did so within their discretion and in response to the circumstances and/or exigent circumstances, and are therefore entitled to immunity from claims.

e.      Defendants' actions were objectively reasonable, and they are entitled to immunity and/or qualified immunity from claims, as well as limitations on actions and damages, as provided by Wisconsin statutes, by federal regulations, and by operation of state and federal common law.

4.      The Defendants are not liable under 42 USC § 1983 because their actions were constitutional under the circumstances or exigent circumstances and did not compromise or deprive Plaintiffs or any rights.

5.     All of the acts of the responding Defendants were undertaken in a good faith belief that the actions were lawful and were not in violation of any federal or state constitutional right, and Defendants' conduct was not motivated by malice or intent to harm.

6.     The injuries and damages, if any, sustained by the Plaintiffs were caused in whole or in part by the acts or omission of the Plaintiffs.

7.     If the Plaintiffs suffered any losses and such losses were not caused by their own negligence, acts, or omissions then such losses were caused by third parties or other factors, including superseding and intervening causes, and are not the responsibility of the Defendants.

8.     Plaintiffs may have failed to mitigate their damages.

WHEREFORE, Defendants demand judgment as follows:

1.     dismissing the complaint of the Plaintiffs as against them on its merits, together with costs and disbursements; and

2.     for such other and further relief as the Court may deem just and equitable.

**JURY DEMAND**

Defendants demand a trial by jury of all issues so triable.

Dated and signed at Milwaukee, Wisconsin this 15th day of November, 2024.

EVAN C. GOYKE
City Attorney

**P.O. ADDRESS:**
200 East Wells Street
City Hall 800
Milwaukee, WI 53202
414-286-2601 – Telephone
414-286-8550 – Facsimile
Email: whotch@milwaukee.gov

1032-2024-394:294856

s/*William Hotchkiss*
WILLIAM HOTCHKISS
Assistant City Attorney
State Bar No. 1112878

s/*Maria Mesoloras*
MARIA MESOLORAS
Assistant City Attorney
State Bar No. 1098921

*Attorneys for Defendants*

34
