# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

NIKI ROBINSON and PATRICK TOMLINSON,

        Plaintiffs,

v.                                 Case No. 24-CV-00264

CITY OF MILWAUKEE, et al.,

        Defendants.

## DEFENDANT, KELTON MCCOWAN'S ANSWER AND
## AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT

NOW COMES the Defendant, Kelton McCowan, by his attorney, Evan C. Goyke, City Attorney, represented by William K. Hotchkiss, Assistant City Attorney, and as and for his answer to the Plaintiffs' Second Amended Complaint, admits, denies, alleges, and states as follows:

## INTRODUCTION

1.     Niki Robinson and Patrick Tomlinson, a married couple, are the targets of a vicious campaign of domestic terrorism carried out at the hands of a group of bullies who hide behind the anonymity of the internet.

**RESPONSE:** Defendant lacks information as to whether the acts qualify as "domestic terrorism" and lacks knowledge and/or information about who is carrying out the alleged "campaign of domestic terrorism."

2.     The bullies' main weapon of choice is something called "swatting," which is when someone who wants to endanger the life and safety of another calls 911 and lies to provoke a dangerous police response to the victim's home.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about who is committing the "swatting" and whether this is the "main weapon of choice" but further admits the general definition of swatting.

3.     The goal is to either harm or terrorize an innocent person at the hands of the police, who the caller is hoping will barge into their victim's home and, in the chaos, injure or kill them

**RESPONSE:** Defendant lacks knowledge and information sufficient to form a belief about the goals of the person(s) engaging in the swattings, and any response to this paragraph would require speculation.

4.     "Swatting" has become a widespread and well-known method of harassment, with several states and the federal government adopting harsh criminal penalties to deter would-be swatters.

**RESPONSE:** Defendant lacks information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore denies.

5.     Normally the police are unwitting tools of these bad actors who have no choice but to take these false calls at face value.

**RESPONSE:** Defendant lacks information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore denies.

6.     But Niki and Patrick's situation is different because the Milwaukee Police Department has responded to swatting calls to their home *at least 45 times* in the past two years.

**RESPONSE:**  Denies any implication implied, but admits that the Milwaukee Police Department has had some sort of response at least 45 times in the past two years.

7.     Any rational police force would have recognized at some point that any calls involving the Robinson-Tomlinson home were clearly false and should not be taken seriously.

**RESPONSE:** Defendant lacks information sufficient to form a belief as to what Plaintiffs mean by "taken seriously" and therefore denies.

8.     Any rational police force would have implemented some sort of policy to avoid becoming a tool of terror against the very citizens they are sworn to protect.

2

**RESPONSE:** Defendant denies that there were no policies implemented and denies the police force has become a tool of terror.

9. But time and time again, the Milwaukee police have ignored reality, resulting in multiple illegal searches of Niki and Patrick's home and illegal seizures of their persons.

**RESPONSE:** Denies.

10. This insanity has drawn local, national, and international media attention.

**RESPONSE:** Defendant disagrees with the characterization of the police response as "insanity," but further admits there has been media attention.

11. Niki and Patrick have tried to work with the City of Milwaukee to stop this, but the City of Milwaukee failed to adopt a policy or train its officers on how to prevent Niki and Patrick's stalkers from using the police department as a tool of terror.

**RESPONSE:** Denies.

12. And while many of the police officers who have responded to Patrick and Niki's home have been kind, understanding, and compassionate, others have not.

**RESPONSE:** Denies.

13. The worst offender is Sergeant Lyndon Evans.

**RESPONSE:** Denies.

14. On three occasions, Sergeant Evans responded to a swatting call with abuse and violence.

**RESPONSE:** Denies.

15. Sergeant Evans told Niki and Patrick that he was "well aware" of the situation but still demanded to be let inside their home, going so far as to threaten to break down the front door if he was not allowed inside.

**RESPONSE:** Admits, but further alleges that this paragraph is devoid of context.

16. Niki and Patrick live in a constant state of fear, worried that the next encounter they have with the police will be their last.

3

**RESPONSE:** Defendant lacks information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore denies.

17.     Every knock on the door or police car that drives by leaves them terrified that they are about to be starting down an officer's gun or that they will be paraded outside in handcuffs to their further humiliation.

**RESPONSE:** Defendant lacks information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore denies.

18.     This lawsuit seeks to end the madness and vindicate the violation of Plaintiffs' constitutional rights. It seeks to effect change through punitive damages by punishing the Defendants for their egregious conduct with the hope that the punishment is significant enough to prevent this from happening again in the future.

**RESPONSE:** Defendant lacks information and knowledge sufficient to form a belief as to what the Plaintiffs seek through this lawsuit, Defendant disagrees with Plaintiffs' characterization of the police response as "madness," and Defendant further denies that their conduct was egregious or that punitive damages are appropriate.

## JURISDICTION AND VENUE

19.     This action is brought under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

**RESPONSE:** Admits.

20.     This Court has jurisdiction over federal claims under 28 U.S.C. §1331 and the state law claim for indemnification under 28 U.S.C. § 1367.

**RESPONSE:** Admits.

21.     Venue is proper under 28 U.S.C. § 1391(b). Defendant City of Milwaukee is a political subdivision of the state of Wisconsin located within this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

**RESPONSE:** Admits.

## PARTIES

22.     Plaintiff Niki Robinson is a resident of the State of Wisconsin and the County of Milwaukee.

4

**RESPONSE:** Admits.

23. Plaintiff Patrick Tomlinson is a resident of the State of Wisconsin and the County of Milwaukee.

**RESPONSE:** Admist.

24. Defendant City of Milwaukee is a political subdivision of the state of Wisconsin.

**RESPONSE:** Admits.

25. Defendant City of Milwaukee is or was the employer of the individual defendants and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment.

**RESPONSE:** Admits.

26. Defendant Lyndon Evans was, at the time of this occurrence, employed as a sergeant in the City of Milwaukee's Police Department.

**RESPONSE:** Admits.

27. Defendant Evans engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Admits.

28. Defendant Evans engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the Defendant was acting in the course and scope of his employment.

29. Defendant Joseph Scheuring was, at the time of this occurrence, employed as a sergeant in the City of Milwaukee's Police Department.

**RESPONSE:** Admits.

30. Defendant Scheuring engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of, but admits that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

5

31.     Defendant Scheuring engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:**   Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the Defendant was acting in the course and scope of his employment.

32.     Defendant Patrick Tivnan was, at the time of this occurrence, employed as an officer in the City of Milwaukee's Police Department.

**RESPONSE:**  Admits.

33.     Defendant Tivnan engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:**   Denies that the Defendant engaged in the conduct complained of, but admits that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

34.     Defendant Tivnan engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:**   Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the Defendant was acting in the course and scope of his employment.

35.     Defendant Dexter Lee was, at the time of this occurrence, employed as an officer in the City of Milwaukee's Police Department.

**RESPONSE:**  Admits.

36.     Defendant Lee engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:**  Denies that the Defendant engaged in the conduct complained of, but admits that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

37.     Defendant Lee engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:**   Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the Defendant was acting in the course and scope of his employment.

38.     Defendant Andrew Dudley was, at the time of this occurrence, employed as an officer in the City of Milwaukee's Police Department.

6

**RESPONSE:** Admits.

39.     Defendant Dudley engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of, but admits that

the Defendant was on duty, acting under color of state law, ordinance, or regulation.

40.     Defendant Dudley engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of in the

complaint, but admist that the Defendant was acting in the course and scope of his employment.

41.     Defendant Kelton McCowan was, at the time of this occurrence, employed as an officer in the City of Milwaukee's Police Department.

**RESPONSE:** Admits.

42.     Defendant McCowan engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of, but admits that

the Defendant was on duty, acting under color of state law, ordinance, or regulation.

43.     Defendant McCowan engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of in the

complaint, but admits that the Defendant was acting in the course and scope of his employment.

44.     Defendant Kevin Becker was, at the time of this occurrence, employed as an officer in the City of Milwaukee's Police Department.

**RESPONSE:** Admits.

45.     Defendant Becker engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of, but admits that

the Defendant was on duty, acting under color of state law, ordinance, or regulation.

7

46.     Defendant Becker engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:**   Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the Defendant was acting in the course and scope of his employment.

47.     Defendant Devon Williams was, at the time of this occurrence, employed as an officer in the City of Milwaukee's Police Department.

**RESPONSE:**  Admits.

48.     Defendant Williams engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:**   Denies that the Defendant engaged in the conduct complained of, but admits that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

49.     Defendant Williams engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:**   Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the Defendant was acting in the course and scope of his employment.

50.     Defendant Shawn Switzer was, at the time of this occurrence, employed as an officer in the City of Milwaukee's Police Department.

**RESPONSE:**  Admits.

51.     Defendant Switzer engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:**   Denies that the Defendant engaged in the conduct complained of, but admits that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

52.     Defendant Switzer engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:**   Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the Defendant was acting in the course and scope of his employment.

53.     Defendant Christian Garrido was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

8

**RESPONSE:** Admits.

54.     Defendant Garrido engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of, but admits that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

55.     Defendant Garrido engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the Defendant was acting in the course and scope of his employment.

56.     Defendant Bradley Orlando was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

**RESPONSE:** Admits.

57.     Defendant Orlando engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of, but admits that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

58.     Defendant Orlando engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the Defendant was acting in the course and scope of his employment.

59.     Defendant Matthew Helwer was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

**RESPONSE:** Admits.

60.     Defendant Helwer engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of, but admits that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

9

61.     Defendant Helwer engaged in the conduct of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:**   Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the Defendant was acting in the course and scope of his employment.

62.     Defendant Paul Terriquez was, at the time of this occurrence, employed as an officer in the City of Milwaukee's Police Department.

**RESPONSE:**  Admits.

63.     Defendant Terriquez engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:**  Denies that the Defendant engaged in the conduct complained of, but admits that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

64.     Defendant Terriquez engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:**   Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the Defendant was acting in the course and scope of his employment.

65.     Defendant Fidah Mustafa was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

**RESPONSE:**  Admits.

66.     Defendant Mustafa engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:**  Denies that the Defendant engaged in the conduct complained of, but admits that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

67.     Defendant Mustafa engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:**   Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the defendant was acting in the course and scope of his employment.

68.     Defendant Sean Carlton was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

**RESPONSE:** Admits.

      69.    Defendant Carleton engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of, but admits that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

      70.    Defendant Carleton engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the defendant was acting in the course and scope of his employment.

      71.    Defendant Nathaniel Petersen was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

**RESPONSE:** Admits.

      72.    Defendant Petersen engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of, but admits that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

      73.    Defendant Petersen engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee He is sued in his individual capacity.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the defendant was acting in the course and scope of his employment.

      74.    Defendant Gregory Rupnik was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

**RESPONSE:** Admits.

      75.    Defendant Rupnik engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of, but admits that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

76.     Defendant Rupnik engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:**   Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the Defendant was acting in the course and scope of his employment.

77.     Defendant Nicole Plevak was, at the time of this occurrence, employed as a police officer in the City of Milwaukee's Police Department.

**RESPONSE:**  Admits.

78.     Defendant Plevak engaged in the conduct complained of while she was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:**  Denies that the Defendant engaged in the conduct complained of, but admits that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

79.     Defendant Plevak engaged in the conduct complained of in the course and scope of her employment with the City of Milwaukee. She is sued in her individual capacity.

**RESPONSE:**   Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the Defendant was acting in the course and scope of his employment.

80.     Defendant Lorenzo Hernandez was, at the time of this occurrence, employed as an officer in the City of Milwaukee's Police Department.

**RESPONSE:**  Admits.

81.     Defendant Hernandez engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:**  Denies that the Defendant engaged in the conduct complained of, but admits that the Defendant was on duty, acting under color of state law, ordinance, or regulation.

82.     Defendant Hernandez engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:**   Denies that the Defendant engaged in the conduct complained of in the complaint, but admits that the Defendant was acting in the course and scope of his employment.

83.     Defendant Jason Warwick was, at the time of this occurrence, employed as an officer in the City of Milwaukee's Police Department.

12

**RESPONSE:** Admits.

84.     Defendant Warwick engaged in the conduct complained of while he was on duty, acting under color of state law, ordinance, and or regulation.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of, but admits that

the Defendant was on duty, acting under color of state law, ordinance, or regulation.

85.     Defendant Warwick engaged in the conduct complained of in the course and scope of his employment with the City of Milwaukee. He is sued in his individual capacity.

**RESPONSE:** Denies that the Defendant engaged in the conduct complained of in the

complaint, but admits that the Defendant was acting in the course and scope of his employment.

## FACTS

86.     Niki and Patrick informed their local police, Milwaukee Police Department District 1, that they were the victims of a targeted harassment and stalking campaign in 2019.

**RESPONSE:** Defendant lacks information and knowledge sufficient to form a belief as to the

truth of the matters alleged, and therefore denies.

87.     The City of Milwaukee Police Department divides the cities into districts.

**RESPONSE:** Admits.

88.     Niki and Patrick's home is in District One.

**RESPONSE:** Admits.

89.     Patrick spoke to officers at his local district, a dispatcher, and a desk Sergeant, to inform them that the group of online bullies who were stalking him and his wife Niki were threatening to swat them through harassing text messages.

**RESPONSE:** Defendant lacks information as to whether Plaintiff is referring to 2019 or 2022 in

this paragraph and therefore denies.

90.     Niki called the FBI as well, telling them the same thing.

**RESPONSE:** Defendant lacks information as to whether Plaintiff is referring to 2019 or 2022 in

this paragraph, and therefore denies.

13

91.     They believed that the police officers were going to do the right thing and put something in place that would keep the officers from becoming tools in their stalkers' harassment campaign.

**RESPONSE:** Defendant lacks information and knowledge sufficient to form a belief as to the

truth of the matters alleged, and therefore denies.

92.     But Niki and Patrick realized this wasn't the case on July 25, 2022, when police officers appeared on their front porch holding guns at one in the morning.

**RESPONSE:** Defendant lacks information and knowledge sufficient to form a belief as to the

truth of the matters alleged, and therefore denies.

93.     Members of the Milwaukee police were there on a call by one of Niki and Patrick's stalkers that there was a murder/hostage situation inside their home.

**RESPONSE:** Admits.

94.     From the police reports of that incident, it appears no one informed the officers who responded of the repeated swatting threats and previous attempts.

**RESPONSE:** Admits.

95.     Because they were not informed of the repeated swatting attempts, the officers responded as though this were a true hostage situation.

**RESPONSE:** Admits.

96.     Patrick was home alone and, without even time to get dressed, was ordered out of the home at gunpoint and left in a state of undress in handcuffs outside while the officers entered his home to search it.

**RESPONSE:** Admits.

97.     It was only after the seizure of Patrick and the search of his home that, according to the officer's reports, "further investigation revealed that the Milwaukee Police Department has responded to other similar complaints at the location."

**RESPONSE:** Admits.

98.     Sergeant Carrie Pocernich, a District One Officer, wrote a memorandum to Captain James Campbell explaining the situation at Patrick and Niki's home.

**RESPONSE:** Admits.

14

99.     A follow-up police report from July 27, 2022, confirms that after police listened to the "original 911 call," it was determined that Patrick was "NOT the 911 caller."

**RESPONSE:** Admits.

100.    Lieutenant Thiel, who would later become acting Captain and then Captain of District One, wrote an e-mail on August 3, 2022, requesting that a memo be generated to have Patrick and Niki's home flagged as a swatting risk in the dispatch system because "the victim of this swatting has the FBI involved and I don't want to overly aggressively respond to this residence in the future."

**RESPONSE:** Admits.

101.    But the address was not flagged because, according to an e-mail authored by Thiel, City of Milwaukee officials decided they did not want to create "complacency" in any officers who were responding to Patrick and Niki's home.

**RESPONSE:** Admits.

102.    By early August of 2022, the issue of the repeated bogus calls and swatting attempts at the Robinson-Tomlinson house was known to all District One officers.

**RESPONSE:** Denies.

103.    Police officers in Milwaukee start their shifts with a "roll call" meeting, in which their supervising sergeants update them on important issues, happenings in the district, and new policies.

**RESPONSE:** Denies that this is an official statement of the purpose of roll call meetings.

104.    District One officers were told repeatedly at their daily roll call meetings that Patrick and Niki were the victims of a harassment and swatting campaign.

**RESPONSE:** Defendant lacks knowledge and information as to what timeframe this paragraph is referring to, and therefore denies.

105.    But officers were not given instructions on how to change their response to calls for service at Patrick and Niki's home.

**RESPONSE:** Defendant lacks knowledge and information as to what timeframe this paragraph is referring to, and therefore denies.

106.    The Milwaukee Police Department, the 25th largest police department in the United States, has no formal policy or guideline on the issue of swatting or responding to false emergency calls.

**RESPONSE:** Defendant lacks knowledge and information as to what Plaintiffs mean when they say "formal," and therefore denies.

107. Any members of the Milwaukee Police Department have received no training on swatting.

**RESPONSE:** Defendant lacks information and knowledge sufficient to form a belief as to the truth of the matters alleged, and therefore denies.

108. The only familiarity officers had with the concept came from this case and what they heard on television or read in the news.

**RESPONSE:** Defendant lacks knowledge and information as to what timeframe this paragraph is referring to, and therefore denies.

109. And so, unprotected by any formal action or policy by the City of Milwaukee, Patrick and Niki were swatted again on August 11, 2022.

**RESPONSE:** Defendant lacks knowledge and information as the definition of swatting as used in this paragraph, and therefore denies.

110. According to the police report, this time authored by District One Officer Nicole Plevak, the officers who responded were aware that "there had been previous calls to the residence eliciting multiple squad responses."

**RESPONSE:** Admits that the police report states the above quotation.

111. Nevertheless, Defendants Plevak, Hernandez, Switzer, McCowan, Tivnan, and Dudley, all District One officers, responded to the home pursuant to another bogus call.

**RESPONSE:** Admits.

112. According to the August 11, 2022, police report, Niki told the police everyone in the house was fine and told the officers *again* that they "have been having ongoing issues of individuals falsifying 911 calls."

**RESPONSE:** Admits.

113. Switzer told Niki that he knew about the history of swatting ("we're aware"), but he wasn't sure whether Niki would've been aware of the swatting history.

**RESPONSE:** Admits.

114. Despite this, officers ordered Niki out of the home.

**RESPONSE:** Admits.

115. The body camera footage shows that the officers clearly didn't think they were dealing with an emergency.

**RESPONSE:** This paragraph calls for some sort of conclusion or opinion that Defendant is unable to answer, and therefore denies.

116. The officers had a casual conversation with Niki on her porch, asking her about who might have made the bogus call and taking notes.

**RESPONSE:** Defendant lacks knowledge and information as to what qualifies as "casual" to Plaintiffs are therefore denies.

117. The officers had their weapons holstered and clearly did not believe there was an emergency at the home.

**RESPONSE:** Admits that the officers had their weapons holstered, but further lack information as to how Plaintiffs define "clearly did not believe there was an emergency at home," and therefore denies.

118. Niki told the officers that Patrick had been handcuffed during a previous swatting.

**RESPONSE:** Admits.

119. Plevak aware of the incident, told Niki, "Officers weren't aware at that time because I know it happened on late shift."

**RESPONSE:** Admits that Officer Plevak stated this, denies the implied amount of knowledge Plaintiffs may or may not imply.

120. Niki asked the officers if, when they responded to a call, they could lead with the fact that they know about the swatting history so she didn't have to worry about being hurt.

**RESPONSE:** Admits.

121. Swtizer told her that was something they would take into consideration.

**RESPONSE:** Admits.

122.    Despite the officers knowing it was a bogus call and speaking to Niki about it for over five minutes, one of the officers present approached Niki and told her that they "have to" walk through her home.

**RESPONSE:**  Denies that this was all that was said, and further alleged that Niki gave consent for officers to enter her home.

123.    Plevak, Tivnan, Switzer, McCowan, and Kohler were all in earshot of this conversation.

**RESPONSE:**  Defendant lacks information as to Plaintiff's definition of "earshot" and further denies that Kohler was there.

124.    Yet none of them made an effort to stop the illegal search that happened after Niki acquiesced to this assertion of authority.

**RESPONSE:**  Denies that an illegal search occurred.

125.    Defendants Switzer and Plevak entered and searched Niki's home.

**RESPONSE:**  Admits.

126.    While Plevak, Tivnan, Switzer, McCowan, and Kohler were in the front of the house, Defendants Dudley and Hernandez were in the backyard, having their own conversation.

**RESPONSE:**  Admits.

127.    Their body cameras captured them discussing how dangerous fake calls like this can be for themselves and the residents of the home.

**RESPONSE:**  Admits.

128.    After Dudley discussed that he knew the call was fake and that the fake calls were dangerous, he illegally searched the Robinson-Tomlinson residence by opening their cellar door and peering inside.

**RESPONSE:**  Denies that opening the cellar door is an illegal search.

129.    Hernandez watched the Dudley open and look in the cellar door and didn't stop him.

**RESPONSE:**  Admits, but again denies that opening the cellar door is an illegal search.

130. For a moment, Niki and Patrick thought the madness would end, as after this illegal search and seizure, they received an e-mail from an FBI agent telling them that their home had finally been flagged in the system as a swatting risk.

**RESPONSE:** Defendant lacks information as to Niki and Patrick's feelings and therefore, denies.

131. On September 22, 2022, officers arrived at their home but politely told them they knew the report was false and left right away after telling the couple they didn't need to come inside.

**RESPONSE:** Admits.

132. But on October 1, 2022, Niki was ordered out of the house by heavily armed officers stacked up behind a ballistic shield responding to another false call.

**RESPONSE:** Admits.

133. These officers were not members of District One but were instead assigned to the Milwaukee Tactical Enforcement Unit ("TEU"), which is what Milwaukee calls its SWAT team.

**RESPONSE:** Admits.

134. And while members of District One had been briefed on the swatting situation at Niki and Patrick's home, no one at the City of Milwaukee thought it would be prudent to pass this information on to the Milwaukee Police Department's SWAT team prior to October 1, 2022.

**RESPONSE:** Defendant lacks information as to Plaintiffs' definition of "prudent" or "pass this information on," and therefore denies.

135. However, the information was provided over the radio to the TEU officers who responded to the call.

**RESPONSE:** Denies.

136. Helwer, Terriquez, Warwick, and Rupnik all heard a fellow officer come over the radio and tell them they should "be aware there are multiple calls, a history of calls for shooting at that residence" and that the Robinson-Tomlinson household was a "known swatting address."

**RESPONSE:** Denies.

137. Also on scene was Defendant Mustafa, who had been briefed on the situation and heard the same announcement over the radio.

**RESPONSE:** Denies.

138.    Defendant Helwer can be heard commenting on the drive to the home that the call sounded "fake" directly after hearing the warning over the radio to be aware of the house's history.

**RESPONSE:**  Denies.

139.    Niki, the person whose murder the officers were allegedly there to discover, came to the door and told the assembled SWAT team that she was fine.

**RESPONSE:**  Admits that Niki stated this, but deny that the SWAT team would have known

that Niki was the person they were there for.

140.    Despite this, officers pointed guns in her face, ordered her out of the home, and then searched her house.

**RESPONSE:**  Defendant lacks information as to whether the gun was pointed in her face, but

admits that she was ordered out of her home and the home was searched.

141.    The officers aimed rifled at her and then proceeded to search the Robinson-Tomlinson home without a warrant.

**RESPONSE:**  Defendant lacks information as to whether the officers aimed a rifle at her.

142.    Two days later, a sergeant from District One forwarded to a TEU officer an email from District One Captain Campbell explaining that the Robinson-Tomlinson home is the victim of multiple swattings and calls to the house are likely hoaxes. The TEU officer forwarded the email to his sergeants.

**RESPONSE:**  Admits.

143.    On November 4 and 30, 2022, police officers responded to the Robinson-Tomlinson home based on false reports but simply knocked on the door and had a polite conversation with them about their situation.

**RESPONSE:**  Admits.

144.    On each of these occasions, the dispatcher made it clear the officer were responding to a "KNOWN SWATTING LOCATION."

**RESPONSE:**  Admits.

145.    However, there was still no formal policy, practice, or training to give guidance to how District One officers were supposed to respond to calls at the home.

**RESPONSE:** Defendant lacks information as to how Plaintiff defines "formal" in this paragraph and therefore denies.

146. And so, on March 20, 2023, Nike and Patrick had their constitutional rights violated once again.

**RESPONSE:** Denies.

147. Sergeant Lyndon Evans was one of the officers who was called to what was the 18th false 911 call (so far) made by Niki and Patrick's stalkers.

**RESPONSE:** Admits.

148. By this time, Sergeant Evans had been copied on multiple e-mails informing him of the situation at the Robinson-Tomlinson home.

**RESPONSE:** Admits.

149. Sergeant Evans had been charged with bringing up this issue with the officers under his command at their daily roll-call meetings.

**RESPONSE:** Defendant lacks information as to Plaintiff's definition of "charged with bringing up this issue," and therefore denies.

150. One of those e-mails, authored by Evans's direct supervisor, then-Lieutenant Thiel, instructed him and his fellow supervisors to "not breach the building unless we know for sure there is some legitimacy to the call."

**RESPONSE:** Admits.

151. Sergeant Evans, along with District One Officers Christian Garrido and Bradley Orlando, were called out to the home on a false call that a male had murdered his parents.

**RESPONSE:** Admits.

152. According to the police report, the officers who responded knew that "the address is known for swatting calls."

**RESPONSE:** Admits.

153. The dispatch made it clear to the officers that there was a "SWATTING RISK AT THIS LOCATION."

**RESPONSE:** Admits.

154.     Niki appeared at the front door and told the officers everyone was fine.

**RESPONSE:**  Admits.

155.     Sergeant Evans told her that he was "well aware" of their situation but was still demanding to enter the home.

**RESPONSE:**  Admits.

156.     Niki got Patrick on the phone who spoke to Officer Garrido and told him, according to the police report, that "theses swatting calls are frustrating and…that he is upset that the Milwaukee Police Department does not have a solution for these swatting calls" and told Garrido that the officers "would need a warrant to enter his property."

**RESPONSE:**  Admits.

157.     According to Sergeant Evans's police report, he was told by dispatch that the call was made from a "virtual private network" and that there was a "swatting risk at this location."

**RESPONSE:**  Admits, but denies implication of a particular timing of when he was told this.

158.     Sergeant Evans's police report says that he was "aware of the location's history with swatting" and when he approached the front door he could see a set of "handwritten instructions for first responders…to call a phone number."

**RESPONSE:**  Admits.

159.     Despite this, Sergeant Evans "insisted that [he needed to] check the interior of the location" even though Niki told him she did not consent for him to come inside because she was busy working at home.

**RESPONSE:**  Admits.

160.     Niki told Sergeant Evans that he could call another police Sergeant, Carrie Pocernich, which Sergeant Evans did.

**RESPONSE:**  Admits.

161.     According to his police report, Sergeant Evans spoke to Sergeant Pocernich, who told him that "she was not aware of an agreement between [Niki and Patrick] and personnel from the District One Station."

**RESPONSE:**  Admits.

162.     Sergeant Pocernich testified in her deposition that she explicitly told Evans that he should *not* enter the home because of the history of fake calls at that location.

**RESPONSE:** Admits.

     163.    Specifically, Pocernich testified,

> And I told him it was swatting address, and I advised him not to go
> in, and to call. And he told me he didn't feel comfortable with that
> because of the circumstances.

**RESPONSE:** Admits.

     164.    Despite all this, Sergeant Evans forced his way into the house.

**RESPONSE:** Defendant lacks information as to how Plaintiff defines "force" and denies that

Sgt. Evans used physical force and therefore denies.

     165.    Officer Garrido and Officer Orlando did not intervene to stop this illegal search
and seizure.

**RESPONSE:** Denies that an illegal search and seizure occurred.

     166.    On April 11, 2023, there were *four* separate swatting attempts.

**RESPONSE:** Admits.

     167.    Three of them ended peacefully with a simple conversation.

**RESPONSE:** Defendant lacks information and knowledge sufficient to form a belief as to what

Plaintiffs mean by "ended peacefully with a simple conversation," and therefore denies.

     168.    But on the last one, late at night, six members of District One came to the
Robinson-Tomlinson home and again detained Niki and Patrick.

**RESPONSE:** Admits that officers responded to their home, and that Patrick was detained, but

further denies that Niki was detained.

     169.    Again, the dispatch made it clear that there was a "SWATTING RISK AT THIS
LOCATION."

**RESPONSE:** Admits.

     170.    This time the call wasn't made over 911, but through a "VPN CHAT SERVICE."

23

**RESPONSE:** Defendant admits that the CAD states this, but denies any implication as to the timing of when the dispatch was entered and whether that entry was timely communicated to officers.

171. One of the officers, Sean Carleton, wrote the police report.

**RESPONSE:** Admits.

172. Officer Carleton wrote that it was important to "be noted" that Niki and Patrick's home "is listed as a swatting risk, meaning that there have been numerous false reports made at this home but not by the occupants of the home."

**RESPONSE:** Admits, but denies any implication as to the timing of that knowledge.

173. Officer Carleton continued, writing that he was aware that Niki and Patrick are "disliked by an unknown community and it seems that are determined to continually call false reports on him."

**RESPONSE:** Admits.

174. Patrick, who saw the whole thing on their doorbell camera application, tried to speak to the officers over the camera.

**RESPONSE:** Admits.

175. He told the officers to leave, but they refused.

**RESPONSE:** Admits.

176. Officers ordered Niki to come to the front door and open it so they could visually inspect her.

**RESPONSE:** Admits.

177. Officers are seen on body camera standing on Patrick and Niki's lawn holding assault rifles.

**RESPONSE:** Admits.

178. And yet when Patrick asks them to lower their weapons, Officer Carleton can be heard on his body-worn camera telling Patrick that there are no guns on scene.

**RESPONSE:** Denies that Officer Carleton says "on scene."

179.  After the officers informed Niki that they would not leave unless she presented herself to them, Niki came down with her hands raised above her head.

**RESPONSE:**  Admits.

180.  Officer Carleton can be heard complaining on his body camera by sarcastically commenting, "Are you kidding me?" at the idea that Niki would feel the need to show her hands as she walked outside to talk to the officers equipped with automatic weaponry who were refusing to leave her house without seeing her.

**RESPONSE:**  Denies Plaintiffs' characterization of the event, and only admits that Officer

Carleton states, "Are you kidding me?".

181.  Patrick, who returned home to demand the officers leave his property, was then detained by the officers, who threatened to place him in handcuffs for trying to go inside his own home.

**RESPONSE:**  Denies, and further alleges that Patrick was loud, boisterous, disorderly, and

threatening to officers.

182.  Defendant Officers Lee, Garrido, Carleton, Becker, and Williams and Defendant Sergeant Joseph Scheuring were all on scene.

**RESPONSE:**  Admits.

183.  All of them had been briefed on the situation at the home and were well aware of the history of false calls.

**RESPONSE:**  Defendant lacks information as to Plaintiffs' definition of "well aware," and

therefore denies.

184.  Although Defendant Lee was not usually assigned to District One, that day, he was working with Defendant Garrido, who explained the swatting history to him.

**RESPONSE:**  Admits.

185.  It stands to reason that at least some of them had heard about the three previous swatting attempts that very day.

**RESPONSE:**  Denies.

186.  In particular, as District One supervisor, Sergeant Scheuring had been a named recipient on multiple e-mails discussing the situation.

**RESPONSE:**  Admits.

187.     Scheuring was tasked, by an e-mail sent by his supervisor, Lieutenant Zieger, on March 25, 2023, to "please discuss this location and proper response at roll calls with our shift officers so they are either initially informed or memory refreshed so they are aware if they get dispatched."

**RESPONSE:**  Admits.

188.     And yet neither Scheuring nor anyone else stopped the seizures of Niki and Patrick, instead choosing to berate them for what they labeled as uncooperative behavior.

**RESPONSE:**  Denies.

189.     The *very next day,* April 12, 2023, Sergeant Evans again responded to yet another swatting attempt at Niki and Patrick's home.

**RESPONSE:**  Admits.

190.     The call was for a shooting at the residence, and the dispatcher advised officers they were to "BE ADVISED SWATTING RELATED CALL."

**RESPONSE:**  Admits.

191.     As usual, the dispatch informed the officers that there was a "SWATTING RISK AT THIS LOCATION."

**RESPONSE:**  Admits.

192.     Upon arrival, officers spoke with someone standing around who told them they "had not heard any gunshots."

**RESPONSE:**  Admits.

193.     This time Officer Nathaniel Petersen wrote the report.

**RESPONSE:**  Admits.

194.     Peterson had been dispatched to the house the previous day for a swatting call. He made contact with Patrick through a Ring camera on the porch, left a card in their mailbox, and left without issue.

**RESPONSE:**  Admits.

195.     But on April 12, even though Petersen had been briefed repeatedly in roll calls, had just been there the day before, and would write in his report that the Robinson-Tomlinson house was "a known swatting address," he nevertheless activated the emergency lights on his

26

squad car and sped through downtown Milwaukee, driving through red lights and stop signs, overtaking a school bus (it was about 8:30 A.M.), for over five minutes to arrive at the Robinson-Tomlinson house.

**RESPONSE:** Admits.

196. Petersen arrived on the porch and began writing on another card to leave at the house like he had the day before.

**RESPONSE:** Admits.

197. Patrick then started talking to Petersen through the camera on his porch. Petersen told Patrick he was sorry to bother him, but there was another call. Patrick replied that he and Niki were fine and no one was hurt.

**RESPONSE:** Admits.

198. As Petersen was talking to Patrick, Evans arrived and joined Petersen on the porch.

**RESPONSE:** Admits.

199. Evans told Petersen to tell Patrick that Niki had to come downstairs and show themselves.

**RESPONSE:** Admits.

200. Petersen asked Patrick, "Is she able to come down?"

**RESPONSE:** Admits.

201. And Evans interrupted, saying, "Not able. She needs to come down."

**RESPONSE:** Admits.

202. Niki responded over the phone that she was fine.

**RESPONSE:** Admits.

203. Patrick and Niki declined to come down.

**RESPONSE:** Admits.

204. Evans told them that they would kick in the door if Niki didn't come down.

**RESPONSE:** Admits.

205. Patrick told the officers that Niki would not be coming down.

**RESPONSE:** Admits.

206. Evans again threatened to kick in the door.

**RESPONSE:** Admits.

207. Petersen then, too, threatened to kick in the door.

**RESPONSE:** Admits.

208. Patrick told Evans to "go away."

**RESPONSE:** Admits.

209. Evans responded, "No."

**RESPONSE:** Admits.

210. Sergeant Evans then ordered Officer Petersen to kick down their front door, and Petersen kicked at the door but failed to knock it down.

**RESPONSE:** Admits.

211. Evans told Patrick, "You don't need to talk to me. But I do need to come in."

**RESPONSE:** Admits.

212. Rather than have their door kicked down by Sergeant Evans, Niki walked down toward the door so the officers could see her.

**RESPONSE:** Defendant lacks information as to Niki's reasoning, but admits that Niki walked toward the door.

213. But the officers still refused to leave.

**RESPONSE:** Denies.

214. After arguing with Patrick and Niki more, Petersen and Evans finally left.

**RESPONSE:** Denies that Petersen or Evans initiated any sort of argument, but further admits that officers left.

215. Then, *again,* five days later, on April 17, 2023, Sergeant Evans responded to *another* false 911 call at Niki and Patrick's home.

**RESPONSE:** Admits.

216.    This time he was accompanied by Officer Paul Vento, who wrote the police report.

**RESPONSE:** Admits.

217.    According to that report, Officer Vento and Sergeant Evans were aware that "this address is the victim of daily swatting calls."

**RESPONSE:** Admits.

218.    Once again, the dispatch informed Officer Vento and Sergeant Evans that there was a "SWATTING RISK AT THIS LOCATION."

**RESPONSE:** Admits.

219.    As Vento and Evans approached the house, Vento commented, while laughing that it was his first time there. He added, "I've heard it like 50 times."

**RESPONSE:** Admits.

220.    On the porch, Vento started to call the number on the door and asked who Niki Robinson was. Evans explained that Niki is Patrick's wife.

**RESPONSE:** Admits.

221.    As Vento was dialing, Sgt. Pocernich, who had previously told Evans not to go into the house, called Vento.

**RESPONSE:** Admits.

222.    Pocernich told Vento that it was "the same thing, same m.o., same thing they always say." Vento told Pocernich he would call the number on the door and thanked Pocernich.

**RESPONSE:** Admits.

223.    Vento left Niki a voicemail.

**RESPONSE:** Admits.

224.    Evans then began pounding on the front door.

**RESPONSE:**  Defendant lacks information and knowledge as to whether it was pounding or knocking.

225.    Patrick then came to the door but didn't open it.

**RESPONSE:** Admits.

226.    Evans told Patrick that he had to see Niki.

**RESPONSE:**  Admits.

227.    Patrick told Evans to go away.

**RESPONSE:**  Admits.

228.    Evans said he didn't care and he needed to see Niki.

**RESPONSE:**  Admits.

229.    Evans threatened to kick the door down.

**RESPONSE:**  Admits.

230.    Niki came down and showed herself.

**RESPONSE:**  Defendant lacks knowledge and information as to whether Niki "came down" and

Defendant further alleges that it is unclear whether Niki came down on her own or in response to

Sgt. Evans' statements.

231.    The officers finally left. As they were walking away, Vento said, "This will be a C9 as usual. And everyone's okay." C9 means the call was unfounded.

**RESPONSE:**  Admits.

232.    Since then, although the Milwaukee police have received at least fifteen additional swatting calls, they have thankfully not invaded Niki and Patrick's home again.

**RESPONSE:**  Denies that Milwaukee Police ever "invaded" Niki and Patrick's home.

233.    As a direct and proximate result of the acts of Defendants, as detailed above, Plaintiffs have suffered, *inter alia,* physical pain, mental distress, humiliation, loss of liberty, and incurred expenses.

**RESPONSE:**  Denies.

**COUNT A:**
**August 11, 2022, Swatting: Unlawful Search and Seizure/Failure to Intervene**
**(*Monell* Claim against City of Milwaukee)**
**(Individual Claims against Nicole Plevak, Lorenzo Hernandez, Andrew Switzer,**
**Kelton McCowan, Patrick Tivnan, and Andrew Dudley)**

234.    Plaintiffs reallege the above paragraphs.

**RESPONSE:** Defendant realleges the above answers.

235. On August 11, 2022, members of the Milwaukee Police Department conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons.

**RESPONSE:** Denies that a warrantless seizure occurred, deny that Patrick was seized, admits that Officers entered their home without a warrant, but affirmatively alleges that they were given permission to enter and denies that exigent circumstances did not exist.

236. Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

**RESPONSE:** Denies.

237. Any reasonable officer would have known there was not an exigency.

**RESPONSE:** Denies.

238. Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

**RESPONSE:** Denies.

239. Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' home and seizure of their persons.

**RESPONSE:** Denies.

240. The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Nike and Patrick.

**RESPONSE:** Denies.

241. The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violations of Plaintiffs' Fourth Amendment rights.

**RESPONSE:** Denies.

242. Defendants Plevak, Hernandez, Switzer, McCowan, Tivnan, and Dudley were personally aware that Patrick and Niki were the victims of a swatting campaign, and so had no

reason to believe she had probable cause or exigent circumstances justifying a seizure or search of the home.

**RESPONSE:** Denies.

243. Defendants Plevak, Hernandez, Switzer, McCowan, Tivnan, and Dudley had a duty to intervene to stop an illegal search or seizure.

**RESPONSE:** Denies that an illegal search or seizure occurred.

244. Defendants Plevak, Hernandez, Switzer, McCowan, Tivnan, and Dudley did not intervene but instead participated in the illegal search and seizure.

**RESPONSE:** Denies that an illegal search or seizure occurred.

245. The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

**RESPONSE:** Denies.

**COUNT B:**
**October 1, 2022, Swatting: Unlawful Search and Seizure/Failure to Intervene**
**(*Monell* Claim against City of Milwaukee)**
**(Individual Claim against Matthew Helwer, Paul Terriquez, Jason Warwick,**
**Gregory Rupnik, and Fidah Mustafa)**

246. Plaintiffs reallege the above paragraphs.

**RESPONSE:** Defendant realleges the above answers.

247. On October 1, 2022, members of the Milwaukee Police Department, including Defendants Helwer, Terriquez, Warwick, Rupnik, and Mustafa, conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons.

**RESPONSE:** Denies that Officer Mustafa conducted a warrantless search, denies that a warrantless seizure occurred, but admits that a warrantless search of Niki and Patrick's home occurred.

248. Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

**RESPONSE:** Denies.

249. Any reasonable officer would have known there was not an exigency.

**RESPONSE:** Denies.

250. Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

**RESPONSE:** Denies.

251. Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' home and seizure of their persons.

**RESPONSE:** Denies.

252. The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

**RESPONSE:** Denies.

253. The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violations of Plaintiffs' Fourth Amendment rights.

**RESPONSE:** Denies.

254. Defendants Helwer, Terriquez, Warwick, Rupnik, and Mustafa were personally aware that Patrick and Niki were the victims of a swatting campaign, so they had no reason to believe they had probable cause or exigent circumstances justifying a seizure or search of the home.

**RESPONSE:** Denies.

255. Defendants Helwer, Terriquez, Warwick, Rupnik, and Mustafa had a duty to intervene to stop an illegal search or seizure.

**RESPONSE:** Denies that an illegal search or seizure occurred.

256. Defendants Helwer, Terriquez, Warwick, Rupnik, and Mustafa did not intervene to stop the illegal search or seizure.

**RESPONSE:** Denies that an illegal search or seizure occurred.

257. The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

**RESPONSE:** Denies.

**COUNT C:**
**March 20, 2023, Swatting: Unlawful Search and Seizure/Failure to Intervene**
(*Monell* **Claim against City of Milwaukee**)
(**Individual Claim against Lyndon Evans, Christian Garrido, and Bradley Orlando**)

258.    Plaintiffs reallege the above paragraphs.

**RESPONSE:**  Defendant realleges the above answers.

259.    On March 20, 2023, members of the Milwaukee Police Department, including Defendants Evans, Garrido, and Orlando, conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons without exigency.

**RESPONSE:**  Denies.

260.    Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

**RESPONSE:**  Denies.

261.    Any reasonable officer would have known there was not an exigency.

**RESPONSE:**  Denies.

262.    Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

**RESPONSE:**  Denies.

263.    Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' home and seizure of their persons.

**RESPONSE:**  Denies.

264.    The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

**RESPONSE:**  Denies.

265.    The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment Rights.

**RESPONSE:**  Denies.

34

266.    Defendants Evans, Garrido, and Orlando were personally aware that Patrick and Niki were the victims of a swatting campaign, so they had no reason to believe they had probable cause or exigent circumstances justifying a seizure or search of the home.

**RESPONSE:**  Denies.

267.    Defendants Evans, Garrido, and Orlando had a duty to intervene to stop an illegal search or seizure.

**RESPONSE:**  Denies that an illegal search or seizure occurred.

268.    Defendants Evans, Garrido, and Orlando did not intervene but instead participated in the illegal search and seizure.

**RESPONSE:**  Denies that an illegal search or seizure occurred.

269.    The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

**RESPONSE:**  Denies.

270.     The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

**RESPONSE:** Denies.

## COUNT D:

### April 11, 2023, Swatting: Unlawful Search and Seizure/Failure to Intervene (*Monell* Claim against City of Milwaukee) (Individual Claim against Sean Carleton, Dexter Lee, Christian Garrido, Kevin Becker, Devon Williams, and Joseph Scheuring)

271.    Plaintiffs reallege the above paragraphs.

**RESPONSE:**  Defendant realleges the above answers.

272.    On April 11, 2023, Defendants Carleton, Lee, Garrido, Becker, Williams, and Scheuring conducted a warrantless seizure of their persons without exigency.

**RESPONSE:**  Denies.

273.    Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

**RESPONSE:** Denies.

274. Any reasonable officer would have known there was not an exigency.

**RESPONSE:** Denies.

275. Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

**RESPONSE:** Denies.

276. Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' home and seizure of their persons.

**RESPONSE:** Denies.

277. The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

**RESPONSE:** Denies.

278. The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment rights.

**RESPONSE:** Denies.

279. Defendants Lee, Garrido, Carleton, Becker, Williams, and Scheuring were personally aware that Patrick and Niki were the victims of a swatting campaign, so they had no reason to believe he had probable cause or exigent circumstances justifying a seizure or search of the home.

**RESPONSE:** Denies.

280. Defendants Lee, Garrido, Carleton, Becker, Williams, and Scheuring had a duty to stop an illegal search or seizure.

**RESPONSE:** Denies that an illegal search or seizure occurred.

281. Defendants Lee, Garrido, Carleton, Becker, Williams, and Scheuring did not intervene but instead participated in the illegal search and seizure.

**RESPONSE:** Denies that an illegal search or seizure occurred.

36

282. The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

**RESPONSE:** Denies.

### COUNT E:
### April 12, 2023, Swatting: Unlawful Search and Seizure/Failure to Intervene
### (*Monell* Claim against City of Milwaukee)
### (Individual Claim against Nathaniel Petersen and Lyndon Evans)

283. Plaintiffs reallege the above paragraphs.

**RESPONSE:** Defendant realleges the above answers.

284. On April 12, 2023, members of the Milwaukee Police Department, including Defendants Petersen and Evans, conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons without exigency.

**RESPONSE:** Denies.

285. Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

**RESPONSE:** Denies.

286. Any reasonable officer would have known there was not an exigency.

**RESPONSE:** Denies.

287. Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

**RESPONSE:** Denies.

288. Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' curtilage.

**RESPONSE:** Denies.

289. The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

**RESPONSE:** Denies.

290.     The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violations of Plaintiffs' Fourth Amendment rights.

**RESPONSE:**  Denies.

291.     Defendants Evans and Petersen were personally aware that Patrick and Niki were the victims of a swatting campaign, so they had no reason to believe they had probable cause or exigent circumstances justifying a search of their home or seizure of their persons.

**RESPONSE:**  Denies.

292.     Defendants Evans and Petersen did so anyway.

**RESPONSE:**  Denies.

293.     The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

**RESPONSE:**  Denies.

**COUNT F:**
**April 17, 2023, Swatting: Unlawful Search and Seizure/Failure to Intervene**
**(*Monell* Claim against City of Milwaukee)**
**(Individual Claim against Lyndon Evans)**

294.     Plaintiffs reallege the above paragraphs.

**RESPONSE:**  Defendant realleges the above answers.

295.     On April 12, 2023, Defendants [sic] Evans, conducted a warrantless search of Niki and Patrick's home and warrantless seizure of their persons without exigency.

**RESPONSE:**  Denies.

296.     Any reasonable officer would have known there was not probable cause to believe a crime was committed or someone was in danger.

**RESPONSE:**  Denies.

297.     Any reasonable officer would have known there was not an exigency.

**RESPONSE:**  Denies.

298.     Any reasonable officer would have known they were being used as an implement of harassment by Niki and Patrick's stalkers.

**RESPONSE:**  Denies.

299.     Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting the illegal search of Plaintiffs' home and seizure of their persons.

**RESPONSE:**  Denies.

300.     The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick.

**RESPONSE:**  Denies.

301.     The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to protect Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment rights.

**RESPONSE:**  Denies.

302.     Defendant Evans was personally aware that Patrick and Niki were the victims of a swatting campaign, so he had no reason to believe they had probable cause or exigent circumstances justifying a seizure or search of the home.

**RESPONSE:**  Denies.

303.     The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs' injuries and damages set forth above.

**RESPONSE:**  Denies.

## AFFIRMATIVE DEFENSES

AS AND FOR AFFIRMATIVE DEFENSES, Defendant, Kelton McCowan, alleges and states to the Court as follows:

1.     Defendant alleges each and every affirmative defense contained in Rule 12 of the Federal Rules of Civil Procedure to avoid any claim of waiver in the event that discovery reveals

a factual basis for these defenses, and further reserve the right to assert additional affirmative defenses that may become available as a result of future discovery in this lawsuit.

2. Plaintiffs' claims may be barred or limited by the controlling statute of limitations and/or the provisions of Wis. Stats. §§ 893.54, 893.80, and/or other applicable statutes of limitation.

3. Defendant may be entitled to immunity and/or qualified immunity against Plaintiffs' claims:

a. To the extent that Plaintiffs allege any state law claims, they are subject to the exclusions, immunities and limitations on liability set forth in Wis. Stats. §§ 893.80.

b. Pursuant to Wis. Stat. § 893.80, the City of Milwaukee is entitled to immunity for legislative, quasi-legislative, judicial and quasi-judicial acts and it is further immune from liability for the discretionary acts of its employees.

c. Pursuant to Wis. Stat. § 893.80, employees and/or agents of the City of Milwaukee are immune from liability regarding any state law claims for acts done in the exercise of their legislative, quasi-legislative, judicial, or quasi-judicial functions.

d. To the extent that the responding Defendant acted within the scope of his authority as public officials, they did so within their discretion and in response to the circumstances and/or exigent circumstances, and is therefore entitled to immunity from claims.

40

e. Defendant's actions were objectively reasonable, and he is entitled to immunity and/or qualified immunity from claims, as well as limitations on actions and damages, as provided by Wisconsin statutes, by federal regulations, and by operation of state and federal common law.

4. The Defendant is not liable under 42 USC § 1983 because his actions were constitutional under the circumstances or exigent circumstances and did not compromise or deprive Plaintiffs of any rights.

5. All of the acts of the responding Defendant were undertaken in a good faith belief that the actions were lawful and were not in violation of any federal or state constitutional right, and Defendant's conduct was not motivated by malice or intent to harm.

6. The injuries and damages, if any, sustained by the Plaintiffs were caused in whole or in part by the acts or omission of the Plaintiffs.

7. If the Plaintiffs suffered any losses and such losses were not caused by their own negligence, acts, or omissions then such losses were caused by third parties or other factors, including superseding and intervening causes, and are not the responsibility of the Defendant.

8. Plaintiffs may have failed to mitigate their damages.

WHEREFORE, Defendant. Kelton McCowan, demands judgment as follows:

1. dismissing the complaint of the Plaintiffs as against him on its merits, together with costs and disbursements; and

2. for such other and further relief as the Court may deem just and equitable.

## JURY DEMAND

Defendant, Kelton McCowan, demands a trial by jury of all issues so triable.

Dated and signed at Milwaukee, Wisconsin this 30th day of April, 2025.

EVAN C. GOYKE
City Attorney

s/*William K. Hotchkiss*
WILLIAM K. HOTCHKISS
Assistant City Attorney
State Bar No. 1112878
*Attorneys for Defendant Kelton McCowan*

**P.O. ADDRESS:**
200 East Wells Street
City Hall 800
Milwaukee, WI 53202
414-286-2601 – Telephone
414-286-8550 – Facsimile
Email:   whotch@milwaukee.gov

1032-2024-394:297510