UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NIKI ROBINSON AND
PATRICK TOMLINSON,

    *Plaintiffs,*

    *v.*

Case No. 2:24-cv-264

CITY OF MILWAUKEE, *et al.*,

    *Defendants.*

## PLAINTIFFS' BRIEF IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

### I. INTRODUCTION

Niki Robinson and Patrick Tomlinson's lives have been a waking nightmare. But it didn't need to be this bad. The City of Milwaukee Police Department and the Defendants in this case amplified it. The verbal and digital harassment and threats they received from anonymous online stalkers is bad.

But the sticks and stones are worse. The Defendants' actions brought the online threats to real life. The Milwaukee Police Department, for months, refused to step in and help. And the person-defendants, despite having been made aware of what Robinson and Tomlinson were going through, allowed themselves to be the hired guns of the online stalkers.

At the outset of this case, the Defendants moved to dismiss. ECF 27. The Court denied the motion. ECF 34. After discovery, with the aid of hours of video and thousands of pages documents, these claims are ready to be resolved now on liability.

When Defendants Nicole Plevak, Andrew Switzer, and Andrew Dudley responded to the Robinson-Tomlinson home on August 11, 2022, they knew the history of the swatting house. The call that brought them there was not corroborated. But Plevak and Switzer ordered Robinson out of her home and searched the home anyway. Dudley entered their backyard and searched a cellar door.

When Defendants Lyndon Evans, Christian Garrido, and Bradley Orlando responded to the home on March 20, 2023, they knew the swatting history. The call was not corroborated. Evans entered and searched the home anyway.

When Defendants Evans and Nathaniel Petersen responded to the home on April 12, 2023, they knew the history of the home. The call was not corroborated. They were told to leave, but refused to do so and forced Robinson and Tomlinson to answer the door.

When Defendant Evans again responded to the home on April 17, 2023, he knew the history of the home. The call was not corroborated. He was again asked to leave but refused to do so. He forced Robinson to show herself in the door.

As discussed below, these were searches and seizures undertaken without warrants, consent, or exigent circumstances. The Court should grant partial summary judgment on these claims so they can proceed to trial on damages.

The remaining claims against other Defendants, too, should proceed to trial. But those claims involve material factual disputes that a jury will need to resolve. In Count B, officers on the Milwaukee Police Department SWAT team responded to a call and entered the Robinson-Tomlinson home. They had not previously been made aware of the swatting history. Someone announced the history of the radio, but it's disputed whether they heard it. In Count D, the District 1 officers who responded claim they hadn't heard about the home previously. There are also disputes about the bystander claims—whether the bystander Defendants had sufficient opportunity to intervene. And there are disputes about the *Monell* claims, whether City of Milwaukee polices caused (were the "moving force" of) the constitutional violations. *See J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020) (quoted source omitted).

But the claims that are the subject of this motion are ready for resolution on liability. The officers were unreasonable. The only remaining question for them is damages.

## II. STANDARDS

The Court should grant Plaintiffs' motion for partial summary judgment because there are no disputed material facts and the Defendants violated their Fourth Amendment rights.

Summary judgment is only warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit."

3
Case 2:24-cv-00264-JPS    Filed 06/05/25    Page 3 of 16    Document 64

*Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In deciding whether there are any genuine issues of material fact, the court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. *Id*. at 255.

But when there's video, the standard adjusts. *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016), citing *Scott v. Harris*, 550 U.S. 372, 379–80 (2007). When there's video, the Court should "view[] the facts in the light depicted by the videotape." *Scott*, 550 U.S. at 380–81.

Although dependent on facts, the reasonableness of a police officer's conduct is ultimately an issue of law. *Bell v. Irwin*, 321 F.3d 637, 640–41 (7th Cir. 2003), citing *Ornelas v. United States*, 517 U.S. 690, 698–99 (1996) and *Graham v. Connor*, 490 U.S. 386, 397 (1989); *accord Scott*, 550 U.S. at 381 n. 8 (observing that whether an officer's actions were reasonable "is a pure question of law").

Due to the sheer amount of video, police reports, and CAD logs, there are no disputed facts in Plaintiffs' motion. We know what these Defendants did. The deciding issue is legal: Did the officers violate the Plaintiffs' Fourth Amendment rights?

### III. FOURTH AMENDMENT

*A. Overview.* The Defendants violated Plaintiffs' Fourth Amendment rights by seizing them and searching their home without a warrant, without consent, and without probable cause.

There are three different ways the Defendants violated Plaintiffs' Fourth Amendment rights. First, by violating the implied license to approach a door, knock, and seek a consensual encounter. *Florida v. Jardines*, 569 U.S. 1 (2013). Second, by requiring Robinson or Tomlinson to answer their door. *United States v. Jerez*, 108 F.3d 684, 691–92 (7th Cir. 1997). And third, by entering and searching the Robinson-Tomlinson home. *Payton v. New York*, 445 U.S. 573, 587–88 (1980); *Caniglia v. Strom*, 593 U.S. 194, 198 (2021).

In Count A, Defendant Dudley exceeded his implicit license by drifting into the Tomlinson-Robinson home's curtilage (their backyard) and searching a cellar door. Also in Count A, Defendants Plevak and Switzer forced Robinson to exit her home and then entered and searched it.

In Count C, Defendant Evans entered and searched the Robinson-Tomlinson home, and Garrido and Orlando failed to intervene.

In Count E, Defendants Evans and Petersen violated their implicit license by refusing to leave the Tomlinson-Robinson home's curtilage (their porch) after being told to do so. They also forced Robinson to answer her door.

In Count F, Defendant Evans again violated his implicit license by refusing to leave the porch after being told to do so. He also, again, required Robinson to come to the door.

These actions were Fourth Amendment searches and seizures. To be lawful, they needed to be reasonable. They were all undertaken without warrants and without consent. And no exception to the warrant requirement applies because the officers did not have probable cause to believe a crime was being committed and could not have reasonably believed there was an emergency.

### B. Fourth Amendment Principles

When it comes to the Fourth Amendment, "the home is first among equals." *Jardines*, 569 U.S. at 6. The Fourth Amendment protects not just the home, but the area around, legally termed curtilage, which includes a home's porch and its backyard. *Id.*; *Collins v. Virginia*, 584 U.S. 586, 592–93 (2018); *Bleavins v. Bartels*, 422 F.3d 445, 452 (7th Cir. 2005).

*1. Jardines and implicit licenses.* Even without probable cause, a police officer may seek a consensual interaction with a citizen, just as any other person might. An officer may "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Jardines*, 569 U.S. at 8. But they may not go further. This is not a complicated rule. As Justice Scalia explained, "it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters." *Id.* Thus, in *Jardines*, an officer violated the Fourth Amendment by searching Joelis Jardines's porch with a trained police dog because "[t]here is no customary invitation to do *that*." *Id.* at 9 (emphasis in original).

*2. Jerez and forced encounters.* After knocking on a door, if the home's resident declines a consensual encounter, the officer must leave. An officer seizes a person in their home when he requires or orders a person to answer their door. *Jerez*, 108 F.3d at 691–92. In other words, an officer must take no for an answer and cannot "convey[] a message that compliance with their requests [is] required." *Id.* at 692. Thus, in *Jerez*, officers violated the Fourth Amendment by requiring Lenin Jerez to answer his motel door because it was late at night, the officers knocked for three minutes, they commanded him

to open the door, they knocked on a window, and they shined a flashlight through the window. *Id.* at 692–93. After Jerez answered the door, he consented to search of his motel room. *See id.* at 694. The Seventh Circuit concluded that the search was unlawful because his consent to search was tainted by the illegal seizure. *Id.* at 694–95.

*3. Payton and home entries.* With or without making contact with a home's resident, officers cannot enter a home without a warrant or an exception to the warrant requirement. *Payton*, 445 U.S. at 586–87. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable. *Id.* at 586, quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 477–78 (1971). Probable cause alone is not enough. An entry into a home requires probable cause *and a warrant*. Id.* "At the core of the privacy protected by the Fourth Amendment is the right to be let alone in one's home." *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 550 (7th Cir. 2014).

*4. Exigent circumstances.* No Defendant in this case ever secured a warrant. So, because the Defendants exceeded their implicit licenses, because they ordered Tomlinson and Robinson to answer their door, and because they entered and searched the Tomlinson-Robinson home, they needed an exception to the warrant requirement.

The relevant exception to the warrant requirement here is exigent circumstances or the related emergency aid doctrine. *Caniglia v*, 593 U.S. at 198. Under these doctrines, "a warrantless entry into a dwelling may be lawful when there is a pressing need for the police to enter but no time for them to secure a warrant." *Sutterfield*, 751 F.3d at 557. For exigent circumstances to apply, an officer needs probable cause to believe two things: (1)

that a criminal activity is afoot and (2) that there's an exigency. *Reardon v. Wroan*, 811 F.2d 1025, 1028 (7th Cir. 1987).

   *a. Probable cause.* Probable cause is a "flexible, common-sense standard." *Florida v. Harris*, 568 U.S. 237, 240 (2013). "A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Id.* at 243 (cleaned up and quoted sources omitted). An officer must consider "the totality of the circumstances." *Id.* at 244. Thus, an officer "may not close her or his eyes to facts that would help clarify" a situation. *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986); *see McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) (same) (collecting cases).

   When an officer relies on a tip, that tip must be reliable. Anonymous tips are generally unreliable and only rarely establish reasonable suspicion (a lower standard than probable cause). *Florida v. J.L.*, 529 U.S. 266, 270 (2000). To be reliable, the anonymous tip must be "suitably corroborated." *Id.* And in responding to an anonymous tip, "[t]he reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." *Id.* at 271. In contrast, although 911 calls are not *per se* reliable, they are generally reliable because they can be traced. *Navarette v. California*, 572 U.S. 393, 400 (2014).

   *b. Exigency.* The exigent circumstances doctrine is an objective standard. *Sutterfield*, 751 F.3d at 557. It applies when officers reasonably believe "that there was a compelling need to act and no time to obtain a warrant." *Id.* Officers must consider the totality of the circumstances. *See id.* The same is true for the related emergency aid

doctrine, which is essentially a form of exigent circumstances that does not require probable cause of criminal activity. *Id.* at 557–58. "The test for this exception is also objective: the question is whether the police, given the facts confronting them, reasonably believed that it was necessary to enter a home in order to render assistance or prevent harm to persons or property within." *Id.* at 558 (internal marks and source omitted).

*c. The clear rule created by Richardson, Bruce, and Hebron.* The Seventh Circuit has clearly established rules governing the entry of homes in response to tips under the exigent circumstances exception to the warrant requirement.

In *Richardson*, officers entered Clarence Richardson's home in response to a 911 call reporting that a black man had raped and murdered a woman. *United States v. Richardson*, 208 F.3d 626, 627–28 (7th Cir. 2000). The caller had given his name. *Id.* at 628. But there had been a fake call to the same address a week earlier. *Id.* The responding officers did not personally know about the previous fake call. *Id.* at 631. The Seventh Circuit concluded that the home entry was proper under the exigent circumstances doctrine. *Id.* But the Court noted it was a "very close case." *Id.* at 629.

On the other side of the line are *Bruce* and *Hebron*. In those cases, officers responded to emergency calls, but the Seventh Circuit concluded that exigent circumstances did not apply because the officers' investigations revealed the tips were unreliable. *Bruce v. Guernsey*, 777 F.3d 872, 874, 877, 879 (7th Cir. 2015); *Hebron v. Touhy*, 18 F.3d 421, 422–23. In *Bruce*, officers responded to a call that Falyn Bruce was suicidal, but when they arrived, she was "perfectly calm and rational." *Bruce*, 777 F.3d at 877. And in *Hebron*, the officers had prior information that the callers were unreliable because they

held grudges against the target of the call. *Hebron*, 18 F.3d at 423 ("Having received a report of questionable reliability, the police needed to investigate.").

## IV. ANALYSIS

The through-line is clear. An officer may not blindly rely on a tip reporting an emergency. If the caller uses 911, gives their name, or their tip is corroborated, exigent circumstances can apply. But if the tip is not corroborated or an officer has reason to know that the tipster is unreliable, the exigent circumstances doctrine does not apply.

The bogus swatting calls here were far beyond the close case in *Richardson* and comfortably within the range of *Bruce* and *Hebron*. The calls were either not made through 911 or were made anonymously. The callers took active steps to hide their identities, like using a VPN. The details of the calls were not corroborated when officers arrived; in fact, they were disproved. And the Defendants knew about prior bogus calls and had reason to know (or did in fact know) that the calls they were responding to were fake.

Other officers acted reasonably and had no difficulty declining to seize and search without probable cause. PSOF at 4, 6, 7, 9, 11, 18 Plaintiffs are not bringing claims for *every* time they were swatted—the vast majority of the swattings. One time, Defendant Petersen himself managed to simply leave a card. *Id.* at 11. But in the claims below, the officers illegally seized and searched the Plaintiffs.

*Count A.* On August 11, 2022, Defendant Dudley violated the Fourth Amendment by deviating from the Tomlinson-Robinson home's front path into their backyard and searching their cellar door. Parties' Statement of Facts (PSOF) at 5; *Jardines*, 569 U.S. at 8. The backyard is constitutionally protected curtilage, and opening and looking in a door

is a search. *Jardines*, 569 U.S. at 8; *Bleavins*, 422 F.3d at 452 (a backyard is curtilage). And Dudley had reason to know (and did know) the call was bogus. PSOF at 5. Thus, there was no exigency. *Hebron*, 18 F.3d at 423; *see Richardson*, 208 F.3d at 629.

Defendants Plevak and Switzer violated the Fourth Amendment by ordering Robinson out of her home and then entering and searching her home. PSOF at 5–6. Plevak again told Robinson that she knew about the swatting history of the house. *Id.* Robinson then had a conversation with the police before they entered and searched her home. The content of this conversation does not matter to the analysis. Any consent given by Robinson was tainted by the illegal seizure of her person. "Consent obtained after an illegal seizure is invalid unless it can be shown that the consent was in fact sufficiently an act of free will to purge the primary taint of the unlawful seizure." *McGann v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 8 F.3d 1174, 1184 (7th Cir. 1993) (internal quotes removed), quoting *Wong Sun v. United States*, 371 U.S. 471, 486 (1963).

At this moment, Robinson had been ordered to exit her home, and she acquiesced to their "show of authority." *Jerez*, 108 F.3d at 692. She thus had been seized on her property in an area protected by the Fourth Amendment. Although officers may seek consensual interactions with people at their front doors, they cannot "convey[] a message that compliance with their requests was required." *Id.* (alteration accepted), quoting *Florida v. Bostick*, 501 U.S. 429, 435 (1991).

And the conversation did not show an act of free will. Robinson said "yeah, fine" twice, but an officer told her that they had to walk through her home. PSOF at 5. The officer told her, "This is the way it's going to be." *Id.* Again, the question is not whether

that's consent (although it probably isn't), the question is whether that conversation purged the taint of the illegal seizure. Consent obtained immediately after an illegal seizure does not purge the taint. *United States v. Conrad*, 673 F.3d 728, 734 (7th Cir. 2012), quoting *Jerez*, 108 F.3d at 695, 695 n.13 (collecting cases). Thus, any supposed consent was invalid, and Plevak and Switzer's search of the Robinson-Tomlinson search was unreasonable.

And the exigent circumstances doctrine does not apply. Plevak and Switzer had reason to know (or did know) the call was bogus. They both confirmed they were aware of the swatting history at the house. PSOF at 5. And the details of the two calls (one anonymous and one not made through 911) were not corroborated when they arrived. PSOF at 4. The victim was supposedly Tomlinson's girlfriend, but Robinson answered the door and was fine. *Id.* at 5. there was no objective exigency. *Bruce*, 777 F.3d at 877; *Hebron*, 18 F.3d at 423; *see Richardson*, 208 F.3d at 629.

*Count C.* On March 20, 2023, Defendant Evans violated the Fourth Amendment by entering and searching the Tomlinson-Robinson home, and Defendants Garrido and Orlando failed to intervene. The officers lacked consent and lacked a warrant, so they must rely on exigent circumstances. *Payton*, 445 U.S. at 586.

But they should have (or did) know the call was fake. Evans knew about the swatting history of the home—he had heard about it from Officer Robakowski, the roll call board, and Captain Thiel. PSOF at 3, 9. Indeed, Sgt. Pocernich told him, over the phone, while he was on the porch, not to go into the house. *Id.* at 10. Garrido and Orlando had also learned about the swatting history of the house. *Id.* at 9–10.

Moreover, the call did not come through 911 and was made through a Virtual Protected Network.[1] Finally, the details of the call were not corroborated. The victim was supposedly a woman, and a man was threatening to shoot anyone who approached the house, but an uninjured woman answered the door. *Id.* at 9–10.

Garrido and Orlando were on the porch with Evans. They could have stopped him from going into the home (they themselves decided not to search it). Officers must intervene and stop a constitutional violation when they know when is occurring and they have a reasonable opportunity to intervene. *Yang v. Hardin*, 37 F.3d 282, 285–86 (7th Cir. 1994).

***Count E.*** On April 12, 2023, Defendants Petersen and Evans violated the Fourth Amendment by refusing to leave constitutionally protected curtilage and by forcing Tomlinson and Robinson to answer their door. PSOF at 14–15.

First, although Petersen and Evans were allowed to approach the home and seek a consensual encounter, their implicit license to do so terminated when they were told to leave. *Id.* at 15 ("Go away"); *Jardines*, 569 U.S. at 8. Second, they seized Tomlinson and Robinson by refusing to take no for an answer and requiring them to answer the door. *Jerez*, 108 F.3d at 691–92. Threatening to kick a door and attempting to kick a door in conveys a message that compliance is required. *Id.* at 692.

And exigent circumstances does not apply. Evans knew about the swatting history and had been there before. PSOF at 3, 9, 10. Petersen knew about the swatting history and had been there *the day* before (when he did not seize or search). *Id.* at 11, 14. Moreover,

---

[1] The purpose of a VPN is to "facilitate discreet internet browsing by disguising the user's identity." *United States v. Cox*, 54 F.4th 502, 508 (7th Cir. 2022).

dispatch warned the officers that the call was a swatting risk. *Id.* at 14. And although the caller said he was Tomlinson, the call had come from Tampa Bay. *Id.* The call reported that a man had shot his wife, but Petersen and Evans talked to Robinson (who now Evans personally knew) through the porch camera. *Id.* A passerby told Petersen that there were no gunshots. *Id.* Indeed, Petersen admitted he knew there wasn't an emergency. *Id.*

*Count F.* On April 17, 2023, Defendant Evans violated the Fourth Amendment by refusing to leave Robinson and Tomlinson's constitutionally protected curtilage and by forcing Robinson to show herself through the door. PSOF at 17–18.

First, Evans violated his implicit license to seek a consensual interaction by refusing to leave the porch when he was told to do so. PSOF at 17 ("Go the fuck away"); *Jardines*, 569 U.S. at 8. Second, he seized Tomlinson and Robinson by forcing them to answer the door. PSOF at 17–18; *Jerez*, 108 F.3d at 691–92. Evans again had threatened to kick the door down and repeatedly told Tomlinson and Robinson that he wasn't leaving because he needed to see Robinson. PSOF at 17–18.

And exigent circumstances does not apply. In addition to everything Evans knew the last time he was there, he had also been warned by Captain Thiel not to enter the home. PSOF at 16. The other officer who responded with Evans, Officer Paul Vento, knew there wasn't probable cause and testified he would not have kicked the door in if Evans had told him to. *Id.* at 16, 18. Moreover, dispatch again noted the call was a swatting risk (three times). *Id.* at 16.

## V. CONCLUSION

The Court should grant Plaintiffs' motion for partial summary judgment. Entering and searching a home is a Fourth Amendment search. *Payton*, 445 U.S. at 586. Remaining in curtilage without implicit consent or in the face of explicit denial of consent is a Fourth Amendment search or seizure. *Jardines*, 569 U.S. at 8. Forcing a person to answer a door is a Fourth Amendment seizure. *Jerez*, 108 F.3d at 691–92. These are presumptively unreasonable actions. *Payton*, 445 U.S. at 586.

And any reasonable officer would have known that the exigent circumstances doctrine did not apply. If it's a "close case," when there's *one* previous fake call that officers were unaware of, *Richardson*, 208 F.3d at 629, and it's a Fourth Amendment violation when tips are uncorroborated, *Bruce*, 777 F.3d at 877, or there's reason to doubt the veracity of the tip, *Hebron*, 18 F.3d at 423—*then this is not a close case.*

A badge does not give you the right to seize people and search homes *carte blanche.* Plevak, Switzer, Dudley, Evans, Garrido, Orlando, and Petersen are required to use their common sense. *Harris*, 568 U.S. at 240. They are required to consider the totality of the circumstances. *Id.* 244. They are expected to exercise reasonable caution. *Id.* at 243. They are not allowed to close their eyes to facts that would clarify a situation. *Bevier*, 806 F.2d at 128. They should be expected to heed the advice and warnings of their department. PSOF at 3, 9, 10, 14, 16.

But they didn't. They were instead unreasonable. The Court should grant partial summary judgment against Plevak, Switzer, and Dudley on Count A; Evans, Garrido, and Orlando on Count C; Evans and Petersen on Count E; and Evans on Count F. These

15
Case 2:24-cv-00264-JPS   Filed 06/05/25   Page 15 of 16   Document 64

claims should proceed to trial on damages. The remaining claims should proceed to trial on liability and damages.

Dated: 5 June 2025,

        STRANG BRADLEY, LLC

        /s/ R. Rick Resch
        John H. Bradley
          Wisconsin Bar No. 1053124
        R. Rick Resch
          Wisconsin Bar No. 1117722
        William E. Grau
          Wisconsin Bar No. 1117724
        James Odell
          Wisconsin Bar No. 1131587
        STRANG BRADLEY, LLC
        613 Williamson St., Suite 204
        Madison, WI 53703
        (608) 535-1550
        John@StrangBradley.com
        Rick@StrangBradley.com
        William@StrangBradley.com
        James@StrangBradley.com

        *Attorneys for Plaintiffs*