UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

NIKI ROBINSON and PATRICK TOMLINSON,

        Plaintiffs,

v.                                                   Case No. 24-CV-00264

CITY OF MILWAUKEE, et al.,

        Defendants.
_____

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT AND RESPONSE BRIEF
TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
_____

NOW COME the Defendants, City of Milwaukee, Lyndon Evans, Joseph Scheuring, Christian Garrido, Bradley Orlando, Nicole Plevak, Lorenzo Hernandez, Dexter Lee, Andrew Dudley, Kelton McCowan, Matthew Helwer, Jason Warwick, Gregory Rupnik, Paul Terriquez, Kevin Becker, Devon Williams, Shawn Switzer, Fidah Mustafa, Nathaniel Petersen, Sean Carleton, and Patrick Tivnan, by and through their attorney, Evan C. Goyke, City Attorney, by William K. Hotchkiss, Assistant City Attorney, hereby provide this brief in support of their motion for summary judgment on all claims and response to Plaintiffs' motion for partial summary judgment.

## INTRODUCTION

Plaintiffs have been the victims of a years-long swatting campaign from unknown actors. In responding to these 911 calls and dispatches, Defendant officers encountered a highly unusual situation. Unknown actors repeatedly and persistently reported dangerous situations. Situations which, evaluated purely from the contents of the calls, easily established exigent circumstances. While the calls were ultimately false, Defendant officers could not know for sure that these calls

were false without some additional steps. Plaintiffs point out and rely on the fact that many times, Defendant officers simply left a card with nothing more. While that may have been appropriate or the preferred course of action, the question before the court is whether Defendant officers' actions were reasonable. The Defendant officers responding to these calls could not rule out the possibility that the calls were true, or there was some other danger potentially facing the Plaintiffs or someone at the Plaintiffs' home. The officers here acted reasonably, based on the information they had. Many attempted to take limited investigative steps to ensure that the call was in fact false, but were rebuffed by Plaintiffs on multiple occasions.

## STANDARD OF REVIEW

"Summary judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.,* 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting 9 C. Wright & A. Miller, § 2529 Portion of Evidence Considered, 9B Fed. Prac. & Proc. Civ. § 2529 (3d ed.)). Generally, disputes of fact are viewed in the light most favorable to the nonmoving party, *E.E.O.C. v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000), but "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

## QUALIFIED IMMUNITY STANDARD

"Qualified immunity protects government officials from damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (citation omitted). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Day v. Wooten*, 947 F.3d 453, 460 (7th Cir. 2020) (emphasis in original) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)); *Thompson v. Cope*, 900 F.3d 414, 421 (7th Cir. 2018) ("[T]he issue is whether the state of the law at the time of a defendant's actions would have given the defendant 'fair warning' that h[is] conduct was unconstitutional." (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002))). In *Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991), the United States Supreme Court "stressed the importance of resolving immunity questions at the earliest possible stage of litigation." *Id.* at 227. The Supreme Court reversed the Ninth Circuit's denial of summary judgment, holding that: The court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed... *Id.* at 227–28 (citations omitted).

# ARGUMENT

## A. Count A

### 1. The limited seizure of Robinson was reasonable.

The Fourth Amendment protects an individual's right to be free from unreasonable seizures of their person. *Day v. Wooten,* 947 F.3d 453, 460 (7th Cir. 2020). To prevail, Plaintiffs must establish that the conduct constituted a seizure and that the seizure was unreasonable. *Bentz v. City of Kendallville,* 577 F.3d 776, 779 (7th Cir. 2009).

In certain circumstances, police may detain individuals with less than probable cause if the scope of the seizure is limited and the detention advances an interest in crime prevention or officer safety. *Bailey v. United States*, 568 U.S. 186, 193 (2013). Ordering someone to step outside their house does not implicate the same privacy concerns as physically entering a home and arresting someone. *Gut v. City of Wausau*, 592 F. Supp. 3d 777 (W.D. Wis. 2022) (citing *U.S. v. Berkowitz*, 927 F.2d 1376, 1386 (7th Cir. 1991). A seizure on a porch can be justified without a warrant and on less than probable cause. *U.S. v. Richmond*, 924 F.3d 404, 412 (7th Cir. 2019). The need to resolve ambiguous factual situations is a core reason the Constitution permits investigative stops. *Id* at 413.Restraining an individual may be appropriate in situations that are inherently dangerous, even if the officers do not suspect the individual of a crime. *Estate of Biegert v. Molitor*, 968 F.3d 693, 699 (7th Cir. 2020). That seizure can be justified if the additional intrusion on individual liberty is marginal and outweighed by the officer's interest in conducting police activities safely. *U.S. v. Howard*, 729 F.3d 665, 659 (7th Cir. 2013).

The Seventh Circuit presumes the reliability of an eyewitness 911 call reporting an emergency situation for purposes of establishing reasonable suspicion, especially where the caller identifies himself. *U.S. v. Drake,* 456 F.3d 771, 775 (7th Cir. 2006).

4

The limited seizure of Plaintiff Robinson was reasonable. In *Bruce*, the Seventh Circuit reviewed the district court's dismissal for failure to state a claim in a 1983 action against two officers, Guernsey and Harris. *Bruce v. Guernsey,* 777 F.3d 872 (7th Cir. 2015). The Court of Appeals reversed the District Court's 12(b)(6) dismissal as to Officer Guernsey. *Id*. Officer Guernsey, in response to a report from an ex-boyfriend that Bruce was suicidal, ordered Bruce into his squad car, and drove her to a hospital involuntarily and over the protests of her and her father. *Id*. at 877. However, the Seventh Circuit affirmed the district court's dismissal of Officer Harris, stating

> Even giving Bruce the benefit of the doubt, we agree with the district court that she has not described a situation in which Harris violated her constitutional rights. Knowing that Bruce was possibly suicidal, Harris merely ordered her out of the home in which she was staying and kept her within his custody for a relatively short time (less than 37 minutes). He did not remove Bruce from the general vicinity in which he found her; he kept an eye on her until Guernsey arrived. Harris was the first officer to arrive on the scene, but the little information he had been given about the possible fragility of Bruce's mental state supported his decision to maintain custody over Bruce for this brief time. Even if he acted in an overly brusque manner, as Bruce alleges, his seizure of her did not violate the Fourth Amendment.

*Bruce* at 876-877.

Here, Defendant officers were responding to two reports. One from an anonymous caller reporting gunshots and screaming. The other, a relay from the crisis line and where an individual claiming to be Tomlinson stated that he had beaten up his girlfriend and was going to shoot himself in the head. When responding to a call of this nature, there are obvious safety concerns for the occupants of the home and the officers' responding. Those concerns cannot fully dissipate because of knowledge of a prior history of false calls. As such, Defendant officers took the reasonable step of ordering Plaintiff Robinson out of the home. Plaintiff Robinson was not placed in handcuffs, Defendant officers were not pointing their guns at her, and she remained on

5

the front porch while she spoke with Defendant officers. This limited seizure is consistent with the holding in *Bruce*. As such, the seizure of Plaintiff Robinson was reasonable.

### 2. Defendants Plevak and Switzer had consent to enter the Plaintiffs' home.

Defendants Plevak and Switzer had Plaintiff Robinson's consent to enter her home and walk through it with her. When Robinson was asked to walk through her home, she responded "yeah, fine" twice. PSOF at 5. Plaintiff Robinson then opened the door, entered her home, and held the door open for the Defendant officers to follow. PSOF at 6. Any reasonable officer would interpret that interaction as permission to enter her home. Defendants Plevak and Switzer entered her home and accompanied Plaintiff Robinson while they walk through it. They talked for a few minutes and then left. Defendants Plevak and Switzer reasonably believed that Plaintiff Robinson had given them consent to enter the home.

### 3. Defendant Hernandez did not enter Plaintiffs' home and did not have a meaningful chance to intervene to any alleged constitutional violation.

"An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know . . . that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (citing *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994) and *Byrd v. Clark*, 783 F.2d 1002, 1006–07 (11th Cir. 1986)).

Defendant Hernandez should be dismissed because he had no opportunity to intervene and stop the alleged illegal search by Defendant Dudley. Mere presence at the scene of where a constitutional violation is occurring is not enough. There was no plan for Defendant Dudley to open the cellar door. There was no announcement by Defendant Dudley that he was going to open the cellar door prior to opening it. Hernandez was not a mind reader. The opening of the

door lasted for about a second. Defendant Hernandez could not have known that was going to happen and therefore, he had no meaningful opportunity to intervene. As such, Defendant Hernandez should be dismissed.

### 4. Defendants McCowan and Tivnan should be dismissed because they did not enter the Plaintiffs' home and did not have a meaningful chance to intervene to any alleged constitutional violation.

Even if the court finds a constitutional violation occurred, Defendants McCowan and Tivnan should be dismissed. Defendants McCowan and Tivnan did not have an opportunity to intervene to stop Defendants Plevak and Switzer entering the home. In order to be liable for failing to intervene to stop the entry into Robinson's home, Defendants McCowan and Tivnan would have to hear the full conversation on the porch between Plaintiff Robinson and the other Defendant officers and evaluate whether or not the answer "yeah, fine" is valid consent under the circumstances and in the moment. A reasonable officer cannot be expected to do that in the positions that Defendants McCowan and Tivnan were in. As such, Defendants McCowan and Tivnan should be dismissed.

### 5. Defendant Dudley is entitled to qualified immunity.

In *Jardines,* the Supreme Court held that using a drug-sniffing dog on a homeowner's porch to investigate the contents of the home is a search. *Florida v. Jardines*, 569 U.S. 1 (2013). The court reasoned that the objective reasonableness depended upon the purpose for which the officers entered. *Id.* at 10. The court found that the behavior of bringing a drug-sniffing dog, objectively revealed a purpose to conduct a search. *Id*. The Seventh Circuit has taken a limited view of *Jardines*. In analyzing whether a search occurred, the Court stated, "Under the property-based approach, a search occurs when an officer enters a constitutionally protected area, such as

7

the home, for the purpose of gathering evidence against the property owner." *U.S. v. Lewis*, 38 F.4th 527, 533 (citing *Florida v. Jardines*, 569 U.S. 1 (2013)).

Where a legitimate law enforcement objective exists, a warrantless entry into the curtilage is not unreasonable under the Fourth Amendment, provided that the intrusion upon one's privacy is limited. *U.S. v. Davies, 2007 U.S. Dist. LEXIS 57854, 22* citing *U.S. v. Weston*, 443 F.3d 661, 667 (8th Cir. 2006).

Additionally, an arrest is not required for a valid protective sweep. *U.S. v. Thompson,* 842 F.3d 1002 (7th Cir. 2016). "The less intrusive a search, the less justification is required." *Id.* at 109 citing *U.S. v. Brown,* 64 F.3d 1083, 1086 (7th Cir. 1995).

Here, it is not clearly established that when responding to a report of possible gunshots, even if where an officer had a basis to distrust the report, that officer in a backyard cannot open a cellar door and quickly close it to confirm that no one is lying in wait. This search was minimally intrusive and less intrusive than traditional searches within a home. Defendant Dudley, by opening a cellar door in the backyard, did not violate clearly established law. As such, Defendant Dudley is entitled to qualified immunity.

### 6. Defendants are entitled to qualified immunity for the seizure and failure to intervene claims related to the seizure.

Even if the court finds that a constitutional violation occurred, the unique circumstances and case law support a finding that qualified immunity applies to the Defendant officers.

As discussed above, the Seventh Circuit in *Bruce* affirmed the dismissal of an officer when the officer, responding to a 911 call ordered plaintiff out of her home and seized her in the driveway for 37 minutes. *Bruce* at 876-877.

Here, it is not clearly established that when responding to a report of possible gunshots, even where an officer has a basis to distrust the report, that officer cannot order an occupant of

8

Case 2:24-cv-00264-JPS     Filed 07/07/25     Page 8 of 17     Document 71

the home out of the home to the front porch, without handcuffing or arresting the occupant of the home. These reasonable and limited steps to investigate and verify whether the dispatch is accurate by ordering an occupant out of a home in response to a possibly false 911 call does not violate clearly established law.

### B. Count B – Defendants Helwer, Terriquez, Warwick, Rupnik, and Mustafa are entitled to qualified immunity.

Defendants Helwer, Terriquez, Warwick, Rupnik, and Mustafa are entitled to qualified immunity for the limited search and seizure of Plaintiff Robinson.

The emergency aid doctrine recognizes that a warrantless entry into the home may be appropriate when police enter for an urgent purpose other than to arrest a suspect or to look for evidence of a crime. *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 557 (7th Cir. 2014). The emergency aid doctrine is effectively a subset of the exigent circumstances exception. *Id*. at 558. "The need to assist a person who is seriously injured or who is threatened with such an injury is one type of exigency that obviates the need to obtain a warrant." *Id*. "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). The officers' subjective motive or rational for the entry is irrelevant. *Id.* at 404-405.

In *Sutterfield*, the Seventh Circuit found that the emergency aid exception applied when officers, responding to a report from Sutterfield's physician that she was suicidal, entered Sutterfield's home to take her into custody for a mental health evaluation. *Sutterfield* at 561. The court specifically rejected the plaintiff's assertion that her own assurances to the officers that she was fine and that there was no emergency should have negated any potential emergency, reasoning that analysis requires inappropriate second guessing by the courts. *Id* at 562.

9

In *Brigham City v. Stuart*, the Supreme Court found that the emergency aid exception applied when officers observed four adults attempting to restrain a juvenile when the juvenile then punched one of the adults. *Id.* The Court held that the officers had an objectively reasonable basis for believing the injured adult might need help or that the violence in the kitchen was just the beginning. *Id.* at 406.

In *Fitzgerald*, the Seventh Circuit found that the emergency aid exception applied when police entered the plaintiff's home after she spoke to an officer on the phone who became concerned that she was suicidal. *Fitzgerald v. Santoro*, 707 F.3d 725 (7th Cir. 2013). The court in *Fitzgerald* emphasized that a court must not indulge in unrealistic second-guessing. *Id.* at 732.

In *Hanson*, a 911 call with no information was found sufficient to provide probable cause to enter a home. *Hanson v. Dane County,* 608 F.3d 335, 337 (7th Cir. 2010). The court in *Hanson* reasoned that a call that was immediately disconnected and no answer on a call back could have meant that the caller was unable to answer due to possible injury, illness, or threat of violence. *Id.* Additionally, the court concluded that officers did not need to end their investigation when the victim asked them to leave or said that she was unharmed. *Id.* at 338.

On the other end of this analysis is *U.S. v. Richardson*, 208 F.3d 626 (7th Cir. 2000). In *Richardson*, officers searched a home after receiving a 911 call stating that a man had raped and murdered a woman and that the body could be found in the basement of the home. *Id.* at 627. Officers had received a 911 call one week prior that was a false alarm. *Id.* The Seventh Circuit, in denying the motion to suppress called this a "very close case." *Id.* at 629.

"A 911 system designed to provide an emergency response to telephonic tips could not operate if the police had to verify the identity of all callers and test their claim to have seen crimes in progress." *U.S. v. Wooden*, 551 F.3d 647, 650 (7th Cir. 2008).

10

Here, Defendant officers were responding to a report that a man's wife was shot with a shotgun. On the way, the radio noted that a history of calls for shooting at this residence. Consistent with *Hanson*, a statement that nothing is going on does not necessarily end the inquiry. While the radio called out that this was known swatting location and there had been prior false calls, the case law, and even *Richardson* has not clearly established that a prior history of false calls negate the emergency aid or exigent circumstances exceptions. As such, the Defendants should be dismissed.

**C.     Count C - Defendants Evans, Garrido, and Orlando are entitled to qualified immunity for their actions.**

In an effort to not simply repeat themselves, Defendants respectfully direct the court to the case law in Count B for citations of cases involving home searches.

Here, the Defendant officers responded to a dispatch stating Patrick Tomlinson called a suicide hotline through a VPN and reported that the caller had shot his mother, was demanding $50,000, and would shoot anyone who approached the home. PSOF at 9. The CAD flagged this address as a known swatting location. Sgt. Evans spoke with Plaintiffs Niki Robinson through the door and Tomlinson on the phone. PSOF at 10. Officers responding to a call such as this have to consider three possibilities: 1) the call is actually true this time; 2) the call is not true but there is some other emergency going on at the home; or 3) there was nothing going on at the Plaintiffs' home.

Similar to *Hansen,* the Defendant officers did not need to end their investigation when this time the possible subject and the victim, asked them to leave or assured them that she was unharmed. *Hansen* at 338.

Over all, the case law regarding whether a prior history of false calls can negate the probable cause and exigent circumstances established by the nature of the call itself is not

11

sufficiently clear to put the Defendant officers on notice. While the swatting call was a lie, the caller was not reporting to be anonymous. The caller described a gruesome and ongoing emergency, rather than a crime that had already been completed. Lastly, the Defendant officers could not rule out the possibility that the history of swatting calls increased the risk that someone could be harmed, but perhaps not in the manner described in the call. As such, the Defendant officers are entitled to qualified immunity.

### D. Count D – April 11, 2023.

#### 1. The limited seizure of Plaintiff Robinson was justified.

In an effort to not simply repeat themselves, Defendants respectfully direct the court to the case law in Count A for citations of cases involving seizures.

The limited seizure of Plaintiff Robinson was reasonable. Officers responded to a dispatch report that someone from the suicide hotline reported that a teenager stated they had killed their parents and were going to kill themselves. JSOF at 11. Plaintiffs take issue with the number of officers responding and the formation they took when they approached the house. However, when analyzing what actions were taken directly towards Plaintiff Robinson, the seizure was extremely limited in nature. Defendant Carleton first interacted with Plaintiff Robinson over the speaker from the porch camera. Rather than taking any steps to diffuse the situation or assist the officers in confirming that the report was false, Plaintiff Robinson proceeded to berate and insult the officers through the porch camera. Defendant Carleton requests that Plaintiff Robinson come down so they can confirm that she was okay. Defendant Carleton eventually stated that she needed to come down. Robinson was not put in handcuffs or removed from the scene. This seizure was extremely limited in scope and reasonable to confirm that the call was false.

### 2. Defendants Lee, Garrido, Becker, Williams, and Scheuring did not fail to intervene.

In order for there to be a failure to intervene, there must be an underlying constitutional violation. *Harper v. Albert*, 400 F.3d 1052 (7th Cir. 2005). Here, the limited seizure of Plaintiff Robinson's person was reasonable and so, no constitutional violation occurred. As such, Defendants cannot be liable for failing to intervene.

### 3. The Defendants are entitled to qualified immunity for their actions.

In an effort to not simply repeat themselves, Defendants respectfully direct the court to the case law discussion in the seizure and qualified immunity sections of Count A.

Even if the court finds that a constitutional violation occurred, the unique circumstances and case law support a finding that qualified immunity applies to the Defendant officers. The Defendant officers here acted similar to the dismissed officer in *Bruce*. The seizure was limited in scope and is justified in conducting police activities safely. Responding to a call where the caller states there was a violent crime is an inherently dangerous situation. Plaintiff Robinson was ordered out of the house, but was not placed in cuffs, and was not removed from the scene. Additionally, similar to *Hanson,* officers need not simply believe a statement over a porch camera that everything and everyone is fine. As such, Defendants did not violate clearly established law by ordering a person out of their home and seizing them for a limited purpose of confirming that a 911 call was unfounded.

## E.   Count E

### 1. The limited seizure of Plaintiffs was justified.

In an effort to not simply repeat themselves, Defendants respectfully direct the court to the case law in Count A for citations of cases involving seizures. The seizure of Plaintiffs was limited in scope. Defendants Evans and Petersen were responding to a caller who identified

13

Case 2:24-cv-00264-JPS | Filed 07/07/25 | Page 13 of 17 | Document 71

himself as Tomlinson and stated that he had shot a man. The entire interaction with Plaintiffs Robinson and Tomlinson lasted less than 7 minutes. Again, Defendant officers were attempting to take limited reasonable steps to verify that the occupants of the home were okay and everyone was uninjured.

**2. The Defendants are entitled to qualified immunity for their actions.**

In an effort to not simply repeat themselves, Defendants respectfully direct the court to the case law citations in the seizure and qualified immunity sections of Count A.

In *Jardines,* the Supreme Court held that using a drug-sniffing dog on a homeowner's porch to investigate the contents of the home is a search. *Florida v. Jardines*, 569 U.S. 1 (2013). The court reasoned that the objective reasonableness depended upon the purpose for which the officers entered. *Id.* at 10. The court found that the behavior of bringing a drug-sniffing dog, objectively revealed a purpose to conduct a search. *Id*. The Seventh Circuit has taken a limited view of *Jardines*. In analyzing whether a search occurred, the Court stated, "Under the property-based approach, a search occurs when an officer enters a constitutionally protected area, such as the home, for the purpose of gathering evidence against the property owner." *U.S. v. Lewis*, 38 F.4th 527, 533 (citing *Florida v. Jardines*, 569 U.S. 1 (2013)).

Here, Defendants Evans and Petersen did not approach the home for the purpose of gathering evidence against the property owner. Objectively speaking, Defendants Petersen and Evans approached for the limited purpose of assuring that the dispatch was false. Taking the limited step of ordering the occupant of the home to show themselves, even after being told to leave by one of the other occupants, does not violate clearly established case law.

14

**F. Count F**

    **1. No seizure of Niki Robinson or Patrick Tomlinson occurred.**

A seizure does not occur simply because a police officer approaches an individual and asks a few questions. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). When a person's freedom of movement is restricted by a factor independent of police conduct, the appropriate inquiry is whether a reasonable person would feel free to the decline the officers' request or otherwise terminate the encounter. *U.S. v. Jerez*, 108 F.3d 684 (7th Cir. 1997).

Here, no seizure of either Plaintiff Robinson or Tomlinson occurred. A seizure occurs when a person submits to an officer's show of authority and his freedom of movement is restrained. *California v. Hodari D.*, 499 U.S. 621, 626-27 (1991). Plaintiff Tomlinson, of his own free will, started and engaged in an argument with Defendant Sgt. Evans. At no point, did Defendant Sgt. Evans attempt to restrict his movements. To the contrary, Defendant Sgt. Evans just wanted to see that Plaintiff Robinson was okay. Plaintiff Robinson, in her deposition, conceded that that she was not even sure it was someone from the Milwaukee Police Department at the door and then she just assumed it was. Further, she just assumed she had to make an appearance. This admission shows that Plaintiff Robinson did not actually submit to any show of authority. At no point did Defendant Sgt. Evans enter their home or force either of them to exit their home.

    **2. Even if a limited seizure occurred, it was reasonable.**

In an effort to not simply repeat themselves, Defendants respectfully direct the court to the case law discussion in the seizure and qualified immunity sections of Count A.

On April 17, 2023, Defendant Sgt. Evans acted reasonably. Defendants Sgt. Evans and Officer Vento attempted to get a hold of Plaintiff Robinson by phone. Even if the court finds that

15

a seizure occurred, it was extremely limited in nature. Defendant Sgt. Evans simply requested that Plaintiff Robinson show herself within the home, so that he knew Plaintiff Robinson was okay and unharmed. This limited step is minimally intrusive.

### 3. Defendant Sgt. Evans is entitled to qualified immunity.

In an effort to not simply repeat themselves, Defendants respectfully direct the court to the case law citations in the seizure and qualified immunity sections of Count A and the case law citations of *Jardines* in Count E. In contrast to *Jardines*, the objectively reasonable purpose of Defendant Evans does not show the purpose of conducting a search. Instead, in responding to a call indicating that Plaintiff Robinson had been hurt, Defendant Evans' objective behavior was not to conduct a search, but to verify that Plaintiff Robinson was okay.

## G. Plaintiffs have not established a *Monell* violation.

To succeed on a *Monell* claim, Plaintiffs must prove a constitutional violation and prove that the constitutional violation was caused by the City's policy or custom. *See Matthews v. City of E. St. Louis*, 675 F.3d 703, 708-709 (7th Cir. 2012). If the court finds that no constitutional violation occurred, then Plaintiffs' *Monell* claim for that count must be dismissed.

## CONCLUSION

In light of the foregoing, Defendants request that the Court deny Plaintiffs' motion for partial summary judgment, grant Defendants' Motion for Summary Judgment on all claims and that the Court dismiss this action in its entirety.

Dated and signed at Milwaukee, Wisconsin this 7th day of July, 2025.

EVAN C. GOYKE
City Attorney

s/*William K. Hotchkiss*
WILLIAM K. HOTCHKISS
Assistant City Attorney
State Bar No. 1112878
*Attorneys for Defendants*

**P.O. ADDRESS**:
200 East Wells Street
City Hall 800
Milwaukee, WI 53202
414-286-2601 – Telephone
414-286-8550 – Facsimile
Email: whotch@milwaukee.gov

1032-2024-394:298592