NIKI ROBINSON AND
PATRICK TOMLINSON,

    Plaintiffs,

vs.           Case No. 2:24-cv-264

CITY OF MILWAUKEE, *et al.*,

    Defendants.

---

**CITY OF MILWAUKEE'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR RECONSIDERATION**

---

The City of Milwaukee, through its attorney, Evan Goyke, City Attorney, by William

Hotchkiss, Joshua Cronin and Matteo Reginato, Assistant City Attorneys, respectfully submits this

Reply Brief in Support of its Motion for Reconsideration.

## ARGUMENT

**I. THE COURT SHOULD DISMISS THE *MONELL* CLAIMS BECAUSE A VERDICT FINDING THE CITY CONSITUTIONALLY LIABLE WOULD BE INCONSISTENT WITH ITS RECENT LEGAL DETERMINATIONS.**

Plaintiffs argue that the City of Milwaukee's "approach attempts an impermissible

backdoor to qualified immunity," that "qualified immunity does not apply to municipalities," and

that the "Seventh Circuit … has considered *Monell* claims even where qualified immunity applied

to individual government officers." Dkt. 87, p. 2. Plaintiffs misinterpret the City's position. The

City does not contend that municipal liability claims are subject to qualified immunity, or that a

finding of qualified immunity, standing alone, requires dismissal of any/all remaining *Monell*

1

claims. Rather, it argues that the *Monell* claims here must be dismissed to avoid an inconsistent verdict at trial.

As further detailed below, a finding of municipal liability would be inconsistent with the Court's prior determination that law enforcement could not have known the searches and/or seizures conducted between August 11, 2022 and April 17, 2023 were unlawful or unconstitutional. Plaintiffs' municipal liability claims require proof that the City had actual or constructive notice that its purported lack of policies, procedures, and/or training prohibiting such searches and/or seizures would result in constitutional violations. *See e.g., Milbeck v. George*, 2026 WL 861008, *4 (7th Cir. 2026) ("[M]unicipalities might be at fault for such inadequate training when … it would have been *obvious that it could lead to violations of constitutional rights* (namely unlawful entries into suspects' homes.")). In other words, for the jury to hold the City liable under *Monell*, it *must* find that the City had notice. Any such finding would be inconsistent with the Court's legal determination that, at the time of the events at issue, "there was no 'reasonable notice' [] a seizure of this sort was illegal" and "officers could not have known that the search incident to it was illegal." Because any jury verdict in Plaintiffs' favor would be inconsistent with the Court's legal determination, the *Monell* claims cannot proceed.

Plaintiffs' reliance on *Thomas v. Cook County Sherriff's Dept.*, 604 F.3d 293 (7th Cir. 2010) is misplaced because the court there held that a "municipality can be [] liable under *Monell*, even when its officers are not, **unless such a finding would create an inconsistent verdict**." *Id.* at 305 (emphasis added). The Seventh Circuit explained that, "to determine whether the [municipality's] liability is dependent on its officers, we look to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id.*

2

Plaintiff in *Thomas* brought Eighth Amendment deliberate indifference claims against (among others) Certified Medical Technicians (CMTs) and Cook County after her son died from pneumococcal meningitis while detained at Cook County Jail. *Id.* at 299. Plaintiff alleged that Cook County (through Cermak Health Services of Cook County (CCDOC)) was constitutionally liable because it had notice of the following deficiencies, and because it turned a blind eye to the same:

> First, the Supervisor for [the CMTs] acknowledged that [CCDOC] had experienced problems with CMTs not picking up medical request forms every day. Some CMTs did not have the keys to access the lockbox where inmates deposited their completed medical request forms. Others simply failed to fill out or turn in their daily contact sheets. Further, a member of correctional officers reported that [the jail] was severely understaffed. The officers … kept daily logs in which they often made references to the dangers associated with cross-watching—a practice that required one officer to watch two tiers at the same time…. As a result of the understaffing and cross-watching in [the Jail], officers could not perform physical security checks with the frequency required by Sheriff department policy. Also, with fewer officers on duty, CMTs were, at times, unable to gain access to the tiers to complete the rounds.

*Id.* at 299. Plaintiff argued that Cook County violated her son's constitutional rights by "fail[ing] to have a system in place to allow for prompt review of inmates' medical requests," by engaging in "the practice of severely understaffing correctional officers," and by "fail[ing] to fix the broken video monitors in Cook County Jail." *Id.* at 302. None of the CMTs were found constitutionally liable at trial; however, the jury nevertheless returned a verdict against Cook County. *Id.* at 300.

On appeal, Cook County argued the *Monell* claims should have been dismissed because none of the CMTs were found constitutionally liable. *Id.* at 304. The court rejected that argument for the following reasons:

> The jury instructions on the claim listed three elements, each of which the jury had to find by a preponderance of the evidence: 1. [plaintiff's son] had a serios medical need; 2. [t]he [d]efendant was deliberately indifferent to [the] serious medical need; and 3. [t]he defendant's conduct caused harm to [plaintiff's son].

3

> Based on these instructions, the jury could have found that the CMTs were not *deliberately indifferent* to [plaintiff's son's] medical needs, but simply could not respond adequately because of the well-documented breakdowns in the County's policies for retrieving medical request forms.

*Id.* at 305. The Seventh Circuit held that a "municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Id.* at 305. And, that "it is not difficult to reconcile the verdicts in this instance, and we see nothing amiss in holding the County liable even though none of the CMTs were individually responsible." *Id.*

The verdict in *Thomas* was not inconsistent or irreconcilable because: (1) a jury could find that the CMTs *were not* deliberately indifferent to any medical needs, and that they were simply unable to adequately respond to the medical grievances because of the well-documented breakdowns in Cook County's policies governing medical request forms; and (2) the jury could simultaneously find that Cook County *was* deliberately indifferent because it was on notice that CMTs were not picking up medical request forms, did not have the keys to access the lockbox where medical request forms were deposited, and were not submitting their daily contact sheets, and because Cook County disregarded such notice.

By contrast, Plaintiffs in this case allege the City violated the Constitution by failing to implement policies, procedures, and/or training prohibiting officers from executing warrantless searches and/or seizures when responding to repeated swatting calls. As explained in *Orozco v. Dart*, 64 F.4th 806, 824 (7th Cir. 2023), which is further discussed below, such *Monell* claims "entail[] unique concerns and stringent [notice] requirements." Because of these stringent notice requirements, the jury in this case would need to find that the City had notice that its purported lack of polices, procedures, and/or training barring such seizures and/or searches would cause constitutional violations. Yet, this Court has already determined, as a matter of law, that no such notice existed. Accordingly, the *Monell* claims should be dismissed because Plaintiffs cannot

4

establish the requisite notice, and because any verdict finding the City liable under *Monell* would be inconsistent with this Court's prior legal determination.

The Seventh Circuit has imposed a rigorous notice requirement for *Monell* claims such as those alleged by Plaintiffs. In *Orozco*, the Seventh Circuit held that "a gap in policy amounts to municipal action for *Monell* purposes *only if* the [municipality] has notice that its program will cause constitutional violations. Demonstrating notice *is essential to an ultimate finding* and requires a known or obvious risk that constitutional violations will occur." *Id.* at 825 (emphasis added). It explained that "notice" can be established in either of two ways: (1) a plaintiff "can show a pattern of constitutional violations such that the County was put on notice of the constitutional harm its gap in policy was causing….," or (2) a plaintiff "can show that *the risk of a constitutional violation ... was so high as to be obvious*." *Id.* (emphasis added). The court reiterated that "[q]ualifying circumstances under this doctrine are rare" and "it is not sufficient for [a plaintiff] to show that a policy could conceivably or potentially lead to a constitutional violation." *Id.* Rather, a "constitutional violation must be a *'blatantly obvious'* consequence of inaction for single-incident liability." *Id.* (emphasis added).

Here, a verdict finding that the City had such notice would be entirely inconsistent with this Court's prior legal determination. As explained in the Initial Brief, the Court recently made the following legal determinations regarding the six swatting call responses at issue for trial:

Count A (August 11, 2022 Response):

- There "is a real dearth of cases addressing how officers are meant to handle repeated swatting instances to avoid affronts to Fourth Amendment rights;"

- "[A]nalogous cases do not 'confirm' a right against an intrusion of this sort;"

- "[T]he cases provide a somewhat confusing morass of contradictory statements about whether and to what extent 911 calls can be relied upon to generate probable cause, reasonable suspicion, or exigent circumstances,

5

and how doubt-inducing information should be weighed against the presence of a 911 call," and

- "[S]ince there was no 'reasonable notice' that a seizure of this sort was illegal, officers could not have known that the search incident to it was illegal." Dkt. 74, pp. 26-27, 38-39; 53.

Count B (October 1, 2022 Response):

- The "Supreme Court and Seventh Circuit had not, at the time of this incident, provided clear guidance on exactly when 911 calls would *not* be enough to establish probable cause of exigent circumstances. Certainly, cases identified factors tending to make a 911 call alone sufficient … but none of those cases grappled with when competing information would make an otherwise 'identifiable' 911 call … insufficient." *Id.*, p. 57.

Count C (March 20, 2023 Response):

- The "Supreme Court and Seventh Circuit simply have not provided confirmation of precisely how 911 calls are meant to be weighed against other factors tending to disprove the reliability of the call;"

- The current law "does not make an affirmative statement confirming the illegality of the current situation," and

- "[A]n official could not … be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.*, pp. 41-42.

Count D (April 11, 2023 Response):

- "As discussed in depth [above], the law surrounding responding to emergency reports was not clearly established at the time of the incident. So even if Carleton knew about the history of swatting, it would not have been clearly established that his seizure of Robinson was illegal." *Id.*, p. 59.

Count E (April 12, 2023 Response):

- The "case law … includes no statement from either the Supreme Court or the Seventh Circuit on how this type of case was meant to be handled;" and

- "Insofar as the officers could not have been expected to know that they lacked probable cause, exigent circumstances, or even reasonable suspicion, they cannot be expected to know that they should have left the curtilage when consent was revoked, nor can they be expected to know that their brief seizure was unlawful." *Id.*, p. 45.

6

<u>Count F (April 17, 2023 Response)</u>:

- "Given the confusing morass of law regarding the capacity for 911 calls to generate probable cause, exigent circumstances, or reasonable suspicion on its own, it simply was not clear that a 911 call could not be enough." *Id.*, p. 49.

To hold the City liable at trial, the jury would be required to find it had actual or constructive notice that its purported failure to implement policies, procedures, and/or training prohibiting officers from executing warrantless searches and/or seizures when responding to repeated swatting calls would cause constitutional violations. In fact, because there were no substantiated Fourth Amendment violations that provided the City with such notice on/before April 17, 2023 (indeed, a judicial determination finding those responses unconstitutional was not made until March 26, 2026), the jury would be required to determine that "the risk of a constitutional violation [stemming from the City's purported failure to implement policies, procedures, and/or training prohibiting such warrantless searches and/or seizures] was so high as to be obvious" on/before the events at issue.

This would be entirely inconsistent with the following legal determinations the Court made on summary judgment: (1) "there was no 'reasonable notice' that a seizure of this sort was illegal;" (2) "officers could not have known that the search incident to it was illegal;" (3) officers could not "reasonably … anticipate [the] conduct may give rise to liability for damages;" (4) "an official could not … be said to 'know' that the law forbade conduct not previously identified as unlawful;" (5) "it would not have been clearly established that [the] seizure of Robinson was illegal;" (6) "[i]nsofar as the officers could not have been expected to know that they lacked probable cause, exigent circumstances, or even reasonable suspicion, they cannot be expected to know that they should have left the curtilage when consent was revoked, nor can they be expected to know that their brief seizure was unlawful;" and (7) "[g]iven the confusing morass of law regarding the

7

capacity for 911 calls to generate probable cause, exigent circumstances, or reasonable suspicion on its own, it simply was not clear that a 911 call could not be enough." Because "such a finding [at trial] would create an inconsistent verdict" that cannot be reconciled with the Court's recent legal determinations, the *Monell* claims cannot proceed to trial and should be dismissed as a matter of law.

Finally, reconsideration is appropriate in this case. As an initial matter, the Court's summary judgment ruling is interlocutory and can be revisited at any time prior to a final judgment. *See Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) (court has inherent power to revisit an interlocutory order); Fed. R. Civ. P. 54(b) (interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). In addition, the City could not develop any such argument during summary judgment because the legal determinations noted above did not exist until the Court issued the summary judgment decision. *See Bank of Waunakee v. Rochester Cheese Sales, Inc*., 906 F.2d 1185, 1191 (7th Cir. 1990) ("A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court").

Declining to reconsider this issue would also be contrary to principles of judicial economy and result in unnecessary proceedings (a lengthy trial and potentially an appeal) regarding *Monell* claims that cannot, as a matter of law, satisfy the governing legal standard. *See e.g., Bedford v. DeWitt*, 695 F. Supp. 3d 998, 1002 (N.D. Ill. 2023) (considering and granting motion for reconsideration even though defendant filed motion five months after summary judgment decision and presented arguments and case law that were not included in the dispositive motion briefing in the interest of judicial economy and based on Seventh Circuit law); *Charles v. Daley*, 799 F.2d 343, 348 (7th Cir. 1986) ("Yet the purpose of Rule 59 is to allow the district court to correct its

8

own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings.").

It should also be noted that the Court raised this issue in its summary judgment decision, and that the City is now addressing the Court's application of the legal authority cited therein, i.e., *Thomas v. Cook County Sherriff's Dept.*, 604 F.3d 293 (7th Cir. 2010). *See* Dkt. 74, p. 62, Fn. 13; *Texas Ujoints, LLC v. Dana Holding Corp.*, 2015 WL 9295394, at *3 (E.D. Wis. Dec. 21, 2015) (Recognizing that "district courts have inherent authority to correct themselves any time before final judgment has been entered," and considering arguments raised for the first time in reconsideration motion, in part, because "the court's summary judgment decision involved an issue of first impression … , which means it is conceivable that the decision could have an effect on the dealings of dealers and suppliers in Texas," and because "[i]n truth, Dana makes new arguments only because the court raised the statutory construction issue *sua sponte*. For that reason, Dana argues persuasively that it must be provided an opportunity to be heard.).

The Court is not required to allow *Monell* claims to proceed to trial when it has already made a legal determination that forecloses Plaintiffs' ability to establish the elements (notice) of those claims. And, where allowing such claims to proceed would invite a verdict that is legally inconsistent and irreconcilable with its prior ruling. *United Air Lines, Inc. v. ALG, Inc.*, 916 F. Supp. 793, 795 (N.D. Ill. 1996) ("[I]t lies within our discretion to consider new arguments on a motion for reconsideration of an interlocutory order. *Ruehman v. Village of Palos Park*, 842 F.Supp. 1043, 1065, 1067 (N.D. Ill. 1993), *aff'd*, 34 F.3d 525 (7th Cir.1994) ("Based on the critical role the above quoted provision plays in the interpretation of the Guarantee, we believe that our discretion should be exercised in this instance to permit consideration of UAL's argument.").

9

## **CONCLUSION**

For these reasons, the City of Milwaukee respectfully asks the Court to grant its Motion

for Reconsideration and dismiss the *Monell* claims as a matter of law.

Dated at Milwaukee, Wisconsin this 30th day of April, 2026.

<div style="margin-left: 40%;">

**EVAN C. GOYKE**
City Attorney, City of Milwaukee
Attorneys for Defendants

*/s/ Matteo Reginato*
WILLIAM HOTCHKISS
Assistant City Attorney
State Bar No. 1112878
MATTEO REGINATO
Assistant City Attorney
State Bar No. 1089724
JOSHUA B. CRONIN
Assistant City Attorney
State Bar No. 1064324
800 City Hall
200 E. Wells St.
Milwaukee, WI 53202
Phone: (414) 286-2601
Fax: (414) 286-8014
whotch@milwaukee.gov
mreginato@milwaukee.gov
jbcronin@milwaukee.gov

</div>