## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

NIKI ROBINSON AND
PATRICK TOMLINSON,

    Plaintiffs,

vs.              Case No. 2:24-cv-264

CITY OF MILWAUKEE, *et al.*,

    Defendants.

---

## JOINT MOTIONS IN LIMINE

---

Pursuant to this Court's Trial Scheduling Order (ECF. No. 75 at 6), counsel for Niki Robinson and Patrick Tomlinson ("Plaintiffs") and counsel for the City of Milwaukee ("City") (the Plaintiffs and the City are collectively referred to as "Parties") hereby submit these Joint Motions in Limine:

### ISSUES PRESENTED

On April 17, 2026, the Parties exchanged proposed Motions in Limine, and between April 17, 2026 and April 30, 2026, the Parties met and conferred in an effort to determine if any agreements could be reached on their respective Motions in Limine. As detailed below, the Parties agreed on some Motions in Limine and disagreed on others:

### AGREED-UPON MOTIONS IN LIMINE

The Parties have agreed upon the following Motions in Limine, and request that the Court enter an Order in conformity with their agreement:

1

1. To preclude Plaintiffs from offering any evidence and argument regarding the numerous high-profile and heavily publicized cases, protests, movements, and organizations relating to law enforcement matters.

2. To preclude Plaintiffs from offering any evidence relating to other police departments—including any swatting policies, procedures, and/or training implemented by other departments.

3. To preclude Plaintiffs from offering evidence of any subsequent remedial measures, particularly the MPD's internal memorandum on swatting that post-dates the subject incidents (the "March 22, 2024" Memorandum).

4. To admonish the gallery each day of trial that recording proceedings or contacting witnesses, jurors, or courthouse staff is not allowed.

5. To preclude Defendant from referring to the jury as taxpayers.

6. To prohibit the parties from offering expert testimony under FED. R. EVID. 702 that was not disclosed in discovery.

7. To order that witnesses be sequestered pursuant to FED. R. EVID. 615.

## CITY'S MOTIONS IN LIMINE

## 1. EXCLUDE GOLDEN RULE EVIDENCE AND ARGUMENT.

I. STATEMENT OF THE ISSUE PRESENTED.

The City requests to preclude Plaintiffs, counsel, and all witnesses from presenting Golden Rule arguments (described below) at trial, including during voir dire, opening arguments, examination of witnesses, and closing arguments.

II. RECITATION OF THE RELEVANT FACTS.

2

This Court's summary judgment decision narrowed the issues for trial. In particular, given the Court's summary judgment decision (ECF. 74), only six of the many swatting incidents are relevant, and the only claims related to these six incidents are the Plaintiffs' *Monell* claims. Those claims essentially will ask the jury to decide whether the City was deliberately indifferent to the risk that officers would violate the Plaintiffs' constitutional rights when responding to these six swatting calls and whether said deliberate indifference caused the six constitutional violations. Through this Motion in Limine (and others), the City is seeking to restrict the evidence and argument only to those issues that are relevant given the claims this Court did, and did not, dismiss at summary judgment.

III. CITY'S ARGUMENTS IN FAVOR.

The parties agree that "Golden Rule" evidence and arguments must be excluded. "Golden Rule appeal [is one] in which the jury is asked to put itself in [someone else's] position," and "is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *U.S. v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007); *Spray-Rite Service Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982). They improperly "encourage[] the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Id.*

However, the parties disagree on what particular evidence and/or argument qualifies as a "Golden Rule" argument. The City requested to exclude the following arguments, but the Plaintiffs disputed the requests highlighted below:

- asking the jury to place itself in Plaintiffs' shoes, or in the shoes of someone who has experienced swatting and/or other forms of harassment;
- asking jurors how they would like officers to respond to calls for service at their homes, or in their community;

3

- arguing or suggesting that the actions at issue here create a public safety risk, create a threat to victims of swatting and/or other forms of harassment, or are unfair to victims of swatting or other forms of harassment;

- arguing or suggesting that the actions at issue here should be prohibited or modified to protect victims of swatting and/or other forms of harassment;

- arguing or suggesting that the jury should render a verdict that protects victims of swatting and/or other forms of harassment;

- arguing or suggesting that the jury should render a verdict that "sends a message" to officers or law enforcement agencies; and

- arguing or suggesting that MPD officers needlessly placed Plaintiffs in danger, including potentially subjecting them to the use of deadly force.

This Court should conclude that the highlighted arguments are "Golden Rule" arguments that must be excluded. These highlighted arguments are "Golden Rule" arguments because, in each case, these arguments focus on generalized "threats" and "dangers." Stated differently, these arguments are not particularized to whether the City's specific conduct in this case caused these Plaintiffs the specific damages they claim. Indeed, courts have repeatedly emphasized that Golden Rule arguments include arguments focused on generalized dangers:

> [Such strategies] [] are in violation of well-settled [law] and are a transparent attempt to introduce prohibited "Golden Rule" evidence…. By painting Defendant … as a public threat that the jurors are uniquely positioned to prevent, Plaintiff[] … would impermissibly ask the jurors to place themselves in Plaintiff's shoes, to depart from neutrality and decide the case on the basis of personal interest, emotion, and bias rather than on the evidence, and to deter the alleged threat Defendant poses to the community before it can harm them, their loved ones, or the community at large. Such argument or implication is legally inappropriate and unduly prejudicial….
>
> Moreover, it shifts the focus from the evidence in the case …, and impermissibly broadens the case by replacing specific evidence of conduct with considerations of potential future threats to the community. The true charge of the jury is to resolve the specific claim between the litigants before it, not to attempt to enhance society-wide safety with each verdict.

*Haste v. SCL Health Front Range, Inc.*, 2017 WL 4857748, *3 (Colo. Dist. April 19, 2017); *see*

*Regalado v. Callaghan*, 3 Cal. App. 5th 582, 597 (2016) ("[I]n our view the remarks from counsel

telling the jury that its verdict had an impact on the community and that it was acting to keep the

community safe were improper."); *Doe v. City of San Diego*, 2014 WL 11997809, *4 (S.D. Cal.

4

2014) (barring Golden Rule arguments framed as references to "community safety" because the issue of community safety was irrelevant to the issues to be determined by the jury); *Brooks v. Caterpillar Global Mining America, LLC*, 2017 WL 3401476, *9 (W.D. Ky. 2017) (barring argument that defendant's conduct needlessly endangered the community because it mirrors "send a message" arguments and emphasizing that arguments urging jury to render a verdict on basis of fear or safety of community are prohibited).

The Golden Rule arguments noted above should be excluded under Fed. R. Evid. 401 and 403 because these arguments are not relevant to the specific issues presented by this action, and because any probative value associated with such arguments is significantly outweighed by the danger of unfair prejudice to the City. Any testimony or argument inviting the jury to base its verdict on generalized feelings regarding law enforcement, or on how it believes victims of swatting and/or other forms of harassment should be treated, should also be excluded. They improperly shift the jury's focus from the evidence and governing law to emotion and public policy considerations, and risk encouraging a verdict against the City—or an inflated damages award—designed to "send a message" to law enforcement or to vindicate broader societal concerns.

This case is not about some kind of community reconciliation regarding swatting. Nor is it about how to protect victims of swatting and/or other forms of harassment. The issues here are limited to whether MPD officials knew that a failure to implement procedures regarding the handling of repeated swatting calls would likely result in constitutional violations, and whether they consciously decided not to implement any procedures despite having such knowledge.

IV. PLAINTIFFS' ARGUMENTS IN OPPOSITION.

Plaintiffs agree that "[a]n appeal to the jury to imagine itself in the plaintiff's position is impermissible ..." *Joan W. v. City of Chicago*, 771 F.2d 1020, 1022 (7th Cir. 1985). Plaintiffs

therefore agree not to make such "golden rule" arguments. But the above-highlighted examples given by Defendant are not "golden rule" arguments because they don't ask jurors to imagine themselves in Plaintiffs' shoes. Plaintiffs object to the extent these are deemed "golden rule" arguments. Out-of-circuit unpublished district court cases and state court cases are not controlling here. Plaintiffs admit that naked appeals to fear are not proper, but factual arguments tethered to the law on which the jury has been instructed are different. Here, that could include "arguing or suggesting that MPD officers needlessly placed Plaintiffs in danger, including potentially subjecting them to the use of deadly force." Defendant's failure to have a policy or to train, supervise, and discipline its officers did exactly that.  In essence, because Plaintiffs must prove deliberate indifference, knowledge of danger is an element of the *Monell* claim. Plaintiffs will prove policy-making officials knew of the high probability Plaintiffs' constitutional rights would be violated, and one way they knew it was the immense danger of swatting. The needless danger Plaintiffs were placed in is also central to their damages. Simply put, the highlighted examples are not golden rule arguments and therefore shouldn't be excluded as golden rule arguments.

**2. THE COURT SHOULD LIMIT WHAT EVIDENCE THE PARTIES CAN PRESENT AT TRIAL REGARDING THE 20 OTHER SWATTING CALL RESPONSES WHICH ARE NOT AT ISSUE IN THIS LAWSUIT.**

I. STATEMENT OF THE ISSUE PRESENTED.

The City requests to limit what evidence the parties can admit into evidence regarding the 20 other swatting call responses, which are no longer at issue in this action.

II. RECITATION OF THE RELEVANT FACTS.

As noted above, given the Court's summary judgment decision (ECF. 74), only six of the police responses to the many swatting incidents are relevant, and the only claims related to these six incidents are the Plaintiffs' *Monell* claims.  Stated differently, per the Court's summary

6

judgment decision, the other 20 police responses to swatting calls at the Plaintiffs' house are no longer at issue in this action. (*Id.*)

III. CITY'S ARGUMENTS IN FAVOR.

MPD officers responded to 26 swatting calls at Plaintiffs' house between July 2022 and April 2023. Though the Court determined that MPD officers violated the Fourth Amendment violation during 6 responses, the other 20 responses did not give rise to any Fourth Amendment violations.[1] The City recognizes that some information regarding the other 20 responses may be necessary to provide context at trial. The City proposed a straightforward stipulation to address these other 20 incidents, which is detailed in Footnote 1 herein, as well as in the City's Brief in Opposition to the Plaintiffs' Expedited Discovery Motion (ECF. 85). A draft of the stipulation is attached hereto as Exhibit A. The Plaintiffs will not agree to limit evidence of these other 20 incidents to the stipulation, primarily on the basis that the Plaintiffs want to admit body camera video of these other 20 incidents.

Because the parties have been unable to reach a stipulation, for the reasons explained below, the Court should limit the scope of any evidence of the other 20 incidents to the following:

- Indicating there were 20 other swatting calls and responses;
- Indicating the dates of the 20 other swatting calls and responses;
- Providing a brief description of the 20 other swatting calls and responses, including the reported threat; and
- Indicating that MPD officers did not violate the Constitution during the 20 other swatting calls and responses.

---

[1] The City has attempted to resolve this Motion in Limine by proposing to the Plaintiffs that the parties enter into a stipulation regarding: (1) how the jury will be advised about the "confusing morass of law regarding the capacity of 911 calls to generate probable cause, exigent circumstances, or reasonable suspicion on their own;" and (2) what evidence can be introduced regarding the numerous swatting call responses that resulted in no constitutional violation. Unfortunately, the City has been unable to obtain the Plaintiffs' agreement to a stipulation because the Plaintiffs want to admit body camera footage of the other 20 incidents that this Court found not to be unconstitutional. This disagreement is detailed in the City's Brief in Opposition to the Plaintiffs' Expedited Discovery Motion (ECF. 85).

7

*First*, any additional testimony, exhibits, or evidence regarding the 20 other swatting calls and responses is irrelevant, and thus inadmissible, under Fed. R. Evid. 401 and 402. The granular details surrounding the 20 other swatting calls and responses do not make it more or less probable that MPD officials had notice that a failure to implement swatting procedures would likely result in constitutional violations, or that MPD officials made a conscious decision not to implement any swatting procedures despite having such notice. Instead, evidence of these other 20 incidents would only invite the jury to find liability against the City for incidents that this Court did **not** find to be unconstitutional, and would otherwise serve as a distraction from the limited *Monell*-related issues for trial. Similarly, as to damages, evidence related to these other 20 incidents would only invite the jury to impermissibly award damages for incidents that were **not** unconstitutional. In short, these incidents were not found to be unconstitutional, and as such, evidence of these incidents has no tendency to establish any material fact; rather, evidence of these other 20 incidents could only lead to the jury make impermissible findings.

*Second*, allowing any additional testimony, exhibits, or evidence regarding the 20 other swatting calls and responses would violate Fed. R. Evid. 403. For example, allowing evidence of these other 20 incidents would cause significant delay. In particular, if the Plaintiffs are permitted to admit body camera video of the other 20 incidents, the City will need to have the officers involved in those responses explain the video, their actions, and how the video reflects his or her training on how to respond to these types of incidents. Stated differently, the Plaintiffs cannot simply play video at trial without the officers being provided with an opportunity to explain their actions. The video will need to be chaperoned into evidence by a witness, and both parties will elicit testimony from this witness.

Relatedly, if evidence of these other 20 incidents is permitted, in addition to examining the officers, both parties will ultimately examine other witnesses with regard to the body camera footage and other evidence related to these other 20 incidents. As the result, there would be a substantial waste of time—13 additional witnesses, (*see* ECF. 82, setting forth Plaintiffs' request for 13 additional depositions), many additional body camera videos, longer direct and cross-examinations, etc.—which cannot be justified when the claims at issue cannot be proven or disproven with evidence related to these other 20 incidents.

*Third*, allowing any additional testimony, exhibits, or evidence regarding the 20 other swatting calls and responses would violate Fed. R. Evid. 404(b). Those calls and responses did not give rise to a Fourth Amendment violation, fall outside the scope of the *Monell* claim at issue for trial, and serve only to invite improper character or propensity inferences.

Ultimately, the City's proposed stipulation is the best approach because it provides the parties, the Court, and the jury with the essential context, without allowing these other 20 incidents to become a distraction or a focal point of the trial. The trial should be focused on the six unconstitutional incidents and on the conduct of the City of Milwaukee, not on the conduct of officers involved the other 20 incidents.

IV. PLAINTIFFS' ARGUMENTS IN OPPOSITION.

Previous calls for service to Plaintiffs' home are relevant to a central issue in this case: Milwaukee Police Department policy-making officials' knowledge of the probability of constitutional violations. Numerous calls for service to Plaintiffs' home—all related to the events of this case—make it more likely that those officials were aware of the probability of constitutional violations. Previous Milwaukee Police Department interactions with Plaintiffs are also relevant to damages, namely Plaintiffs' mental and emotional pain and suffering. Plaintiffs are open to

stipulating to evidence in order to make the trial more efficient, but a fuller picture of the evidence is crucial to their claims and is not unduly prejudicial. The stipulation presented is not merely efficient, it robs the evidence of its meaning. Plaintiffs are free to make their case with evidence of their choosing. *Blue v. Int'l Bhd. Of Elec. Workers Loc. Union 159*, 519 U.S. 172, 186–89, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (citing *Old Chief v. United States*, 519 U.S. 172, 189, 117 S. Ct. 644, 654, 136 L. Ed. 2d 574 (1997)).

To prove their *Monell* claims, Plaintiffs must prove that City of Milwaukee policy-making officials were deliberately indifferent to Plaintiffs' constitutional rights. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Where a municipality's policy-making officials are "faced with actual or constructive knowledge that its agents will probably violate constitutional rights, [they] may not adopt a policy of inaction." *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) (internal quotation omitted).

Liability arises in this case not simply because officers violated Plaintiffs' constitutional rights on six days in 2022 and 2023, but because the City had ample notice that those violations were probable. That means previous calls for service to Plaintiffs' address are relevant and admissible here. Fed. R. Evid. 401 and 402. It is also admissible under Fed. R. Evid. 404(b)(2) because other acts "may be admissible for another purpose, such as proving . . . knowledge." Fed. R. Evid. 404(b)(2). Plaintiffs seek to admit evidence regarding each time police interacted with them—not just the other swattings, but also when Plaintiffs explained they were being stalked as far back as 2019 and when they complained about their treatment during the swattings. The Milwaukee Police Department had at least 19 contacts with Plaintiffs prior to the August 11, 2022, events of Count A, which makes it more likely that policy-making officials at the City were aware that officers would probably violate Plaintiffs' constitutional rights. This is especially true given

that the Fire and Police Commission—a policy-making body—was aware of Plaintiffs' having reported their being stalked as early as May 21, 2020, when it responded to Plaintiff Tomlinson's August 1, 2022, complaint. By April 17, 2023, the date of Count F, police had contact with Plaintiffs over 50 times, and over 100 officers had responded to their home. That the Milwaukee Police Department had such protracted dealings with Plaintiffs before and between the incidents in which its officers violated Plaintiffs' constitutional rights makes it more likely that the policy-making officials knew there was a high probability Plaintiffs' constitutional rights would be violated. This is especially true given that the contacts at Plaintiffs' home consisted of officers from the same district of the Milwaukee Police Department—the videos of these incidents make clear that over time it became common knowledge in the department that calls to Plaintiffs' home were false.

As importantly, each of Plaintiffs' interactions with police are relevant to the mental and emotional pain and suffering caused by the constitutional violations that occurred. The police seized them and entered their home on multiple occasions. While each was not a constitutional violation, they did happen. Plaintiffs begged the Milwaukee Police Department for help for years and explained what was happening and what might happen again, only to have their constitutional rights violated on August 11, 2022, the date of Count A. That is the definition of humiliating— Plaintiffs' dignity was destroyed by the very City it begged for help. Worse, the mental and emotional pain and suffering experienced due to the constitutional violations of Count A was amplified every time police responded to their home. Every knock at the door by officers forced Plaintiffs to relive the indignity of the first constitutional violations. Would officers respect their rights, or would they search the home again for no good reason? After Count A but before Count F, there were over 20 swattings separate from the allegations in Counts B-E. Each response to their

home exacerbated the mental anguish from each earlier constitutional violation. It is considerably more painful to have one's constitutional rights violated repeatedly when unrequested police contact is a regular occurrence between the violations.

The relevance of other calls to Plaintiffs' home outweighs any prejudice to Defendant under Fed. R. Evid. 403. Probative value and prejudice must be considered in context. *United States v. Boros,* 668 F.3d 901, 909 (7th Cir. 2012). The Seventh Circuit has emphasized that "most relevant evidence is, by its very nature, prejudicial, [so] . . . evidence must be *unfairly* prejudicial to require exclusion." *Id.* (cleaned up, emphasis in original). Here, presenting evidence of the previous calls—including videos of interactions between officers and Plaintiffs, but also of officers interacting with other officers—is necessary both so the jury will understand the high likelihood that policy-making officials knew of the probability that constitutional rights would be violated and so that the jury will understand the context of the mental anguish experienced by Plaintiffs when their rights were later violated. Jury instructions will be clear that damages should only be awarded for the constitutional violations in Counts A-F, and the jury should be instructed that Plaintiffs' rights were not violated on the other occasions. These instructions will sufficiently reduce any potential prejudice or confusion that may result from evidence of previous contacts in which no constitutional violations occurred.

As for delay, Plaintiffs don't seek to belabor the point. The jury needs to hear the following:

1. How many times police came to the house;

2. A brief description of the reason police made contact with Plaintiffs' home on each occasion;

3. A description of what police learned on each occasion (early on, that Plaintiffs were being stalked. Later, that the reports of death and ongoing harm were in fact false), and;

12

4. Video of each interaction. In order to avoid delay, Plaintiff agrees to publish to the jury a maximum of 45 minutes of video regarding calls for service not directly part of the allegations in Counts A-F.

As mentioned above, "[w] thin the limits of Federal Rule of Evidence 403, [Plaintiffs' are] entitled to make [their] case with the evidence of her own choosing." *Blue*, 676 F.3d at 585 (citing *Old Chief*, 519 U.S. at 189). Plaintiffs are not willing to stipulate away robust evidence needed to put on their case. The Supreme Court said it best in *Old Chief:*

> A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best.

*Old Chief*, 519 U.S. at 189.

3. **THE COURT SHOULD BAR ANY TESTIMONY, REFERENCE, AND/OR SUGGESTION THAT MPD OFFICERS WERE DISMISSED ON QUALIFIED IMMUNITY GROUNDS.**

I. STATEMENT OF THE ISSUE PRESENTED.

The City requests to exclude any evidence of this Court's determination that the police officers were found to have qualified immunity and were dismissed from this lawsuit on that basis.

II. RECITATION OF THE RELEVANT FACTS.

The Court's summary judgment decision found that the officers whose conduct was found to be unconstitutional were nonetheless acting without knowledge of any clearly established law prohibiting their conduct, and thus, the Court found the officers to be entitled to qualified immunity. (ECF. 74.)

III. PARTIES' AGREEMENT WITH CAVEAT.

13

This Motion in Limine is unopposed by the Plaintiffs, so long as the City does not open the door to it.  For example, if the City elicits testimony that Plaintiffs brought claims against Evans, the Plaintiffs should be able to respond that they did, the Court found Evans violated their rights, but Evans was dismissed because of qualified immunity.

**4.     THE COURT SHOULD BAR PLAINTIFFS FROM OFFERING ANY TESTIMONY, SUGGESTIONS, AND/OR OPINIONS REGARDING THE CONSTITUTIONALITY OR LEGALITY OF ANY ENTRIES OR SEIZURES.**

I.   STATEMENT OF THE ISSUE PRESENTED.

The City requests to preclude the Plaintiffs from offering any testimony (lay and lay-expert) regarding the constitutionality or legality of any of the searches or seizures at issue.

II.   RECITATION OF THE RELEVANT FACTS.

The Plaintiffs plan to offer testimony that, at the time the police were engaging in the searches and seizures this Court found to be unconstitutional, they personally believed or "felt" that the police conduct violated their rights.  The Plaintiffs also plan to offer similar testimony with respect to the other 20 incidents that this Court did **not** find to be unconstitutional.

III. CITY'S ARGUMENTS IN FAVOR.

For the following reasons, Plaintiffs should be precluded from offering any testimony, suggestions, and/or opinions regarding whether they knew or believed—**at the time of the 6 swatting incidents**—that the MPD officers were violating the Constitution by entering their residence or by detaining them.

*First*, any such testimony and/or opinions are irrelevant, and thus inadmissible, under Fed. R. Evid. 401 and 402.  Although the Court ultimately ruled (on March 26, 2026) that MPD officers violated the Fourth Amendment by entering the residence and/or by seizing Plaintiffs during the 6 swatting call responses, no such determination had been made, or existed, during or before the

14

events at issue.  To the contrary, in its Summary Judgment Decision, the Court held that "the cases provide a somewhat confusing morass of contradictory statements about whether and to what extent 911 calls can be relied upon to generate probable cause, reasonable suspicion, or exigent circumstances," that police officers could not have been expected "to know or even have reason to know that the [seizure or] ensuing search was illegal," and that "there was no 'reasonable notice' that a seizure of this sort [or subsequent search] was illegal" during the events at issue.  *See* ECF. 74.

Courts have held that information and/or knowledge that police officers obtain after-the-fact is irrelevant to the Fourth Amendment analysis.  *See Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988) ("Knowledge of facts and circumstances gained after the fact (that the suspect was unarmed) has no place in the trial court's or jury's proper post-hoc analysis of the reasonableness of the actor's judgment.  Were the rule otherwise … the jury would possess more information than the officer possessed when he made the crucial decision.")

*Second*, the Seventh Circuit has repeatedly held that lay testimony and opinions regarding the legality of certain conduct is inadmissible at trial.  *See United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009) ("We have held repeatedly that lay testimony offering a legal conclusion is inadmissible because it is not helpful to the jury").  Likewise, numerous courts have excluded both lay and expert testimony regarding the ultimate question of whether an officer's conduct was constitutional.  *See Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (holding, in a § 1983 action, that plaintiff's expert witness was improperly allowed to testify that the police officer's conduct was not "justified under the circumstances," not "warranted under the circumstances," and was "totally improper"); *United States v. Sutton*, 642 F. Supp. 3d 57, 73 (D.D.C. 2022) ("In the context of expert testimony, not only does an opinion about whether Mr. Sutton had sufficient grounds to

15

conduct a *Terry* stop risk misleading the jury under Rule 403, it is also inadmissible under Rule 702(a) as a legal opinion").

*Third*, any such opinions and testimony from Plaintiffs is also barred under Fed. R. Evid. 403 because it would cause significant, unfair, and irreparable prejudice to the City. It would improperly and incorrectly suggest to the jury that, because Plaintiffs (who have no law enforcement training) purportedly believed that the entries and seizures violated the Fourth Amendment in 2022/23, the MPD officers and officials were also somehow aware of the same in 2022/23.

### IV. PLAINTIFFS' ARGUMENTS IN OPPOSITION.

Plaintiffs must be allowed to testify regarding what happened to them, and how it made them feel at that time. Such testimony is plainly relevant to both liability (what happened to them) and damages (how it made them feel). Fed. R. Evid. 401 and 402. Plaintiffs also must be able to explain the many times they expressed their frustration to Milwaukee Police Department and others. Doing so requires them to explain the reasons for their frustration: among others, they felt their rights were being violated.

It is true that lay witnesses cannot generally testify to legal conclusions. *Noel*, 581 F.3d at 496 (citing Fed. R. Evid. 701(b)). This is because lay opinion testimony is only admissible when it is "helpful to clearly understand the witness's testimony or to determine a fact in issue," and usually lay opinions regarding legal conclusions are not helpful to the jury. Fed. R. Evid. 701(b). Here, Plaintiffs' opinions regarding the constitutionality of their treatment will be helpful to explain each of their actions notifying the City of their frustration, and it will also help the jury understand what happened to Plaintiffs and how it harmed them.

16

Simply because an opinion touches the ultimate issue does not make that opinion inadmissible. Fed. R. Evid. 704; *United States v. Allen*, 10 F.3d 405, 414 (7th Cir. 1993) (That an opinion touches on the ultimate issue is "no longer a valid objection.") More importantly here, whether Plaintiffs' rights were violated is not the ultimate issue for the jury—the Court has already determined that their rights were violated. There would be minimal prejudice to Defendant for the Plaintiffs to simply repeat what the Court has already said, and any prejudice would be outweighed by the relevance of Plaintiffs' perceptions.

**5. THE COURT SHOULD BAR PLAINTIFFS FROM OFFERING ANY TESTIMONY AND/OR OPINIONS REGARDING MPD POLICIES, PROCEDURES, OR TRAINING.**

I. STATEMENT OF THE ISSUE PRESENTED.

The City requests to preclude the Plaintiffs from offering any testimony (lay and lay-expert) regarding the MPD policies, procedures or training.

II. RECITATION OF THE RELEVANT FACTS.

The Plaintiffs did not name any expert witness, including with respect to their *Monell* claims. Instead, the Plaintiffs named only lay witnesses.

III. CITY'S ARGUMENTS IN FAVOR.

Plaintiffs should be barred from offering any testimony or opinions regarding MPD's policies, procedures, or training because it is inadmissible under Fed. R. Evid. 701, 702, and 602.

Rule 701 governs the admissibility of lay witness opinions and provides as follows:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Plaintiffs here have no knowledge, background, or experience in law enforcement practices, procedures, policies, or training. Nor did they disclose any expert witnesses in police practices, procedures, or training. Consequently, Plaintiffs cannot offer any testimony or opinions regarding, among other things:

- Whether MPD's practices, policies, procedures, or training were consistent with generally accepted law enforcement standards or practices;
- Whether any alleged deficiency in MPD's policies, procedures, or training amounted to deliberate indifference;
- Whether different policies, procedures, or training would have altered the officers' response to the swatting calls at issue; or
- Whether MPD's conduct complied with—or deviated from—constitutional requirements or professional norms.

Any such testimony would constitute improper lay opinion on specialized matters requiring expert knowledge and should therefore be excluded.

IV. PLAINTIFFS' ARGUMENTS IN OPPOSITION.

Plaintiffs agree that they cannot testify as to "[w]hether MPD's practices, policies, procedures, or training were consistent with generally accepted law enforcement standards or practices [and w]hether any alleged deficiency in MPD's policies, procedures, or training amounted to deliberate indifference." But, they must be able to testify about the things they asked the Milwaukee Police Department to do. For instance, Plaintiff Robinson asked the Fire and Police Commission to create an explicit swatting policy. ECF. 65, at 8. It was Plaintiff Tomlinson who originally proposed a system by which officers would call a telephone number upon arriving at the house to obviate the need to seize Plaintiffs. In testifying to these facts, Plaintiffs will rely on their personal knowledge to provide evidence that makes it more likely that policy-making officials knew of the probability that Plaintiffs' rights would be violated. Fed. R. Evid. 602, 401, and 402. Testimony about what Plaintiffs asked Defendant to do and why will be based in their perceptions,

helpful to the jury to understand their actions and Defendant's knowledge, and will not based in specialized knowledge. *See* Fed. R. Evid. 701.

Plaintiffs agree they will not opine as to professional norms or explicit legal principles, as they do not have sufficient personal knowledge to do so.

**6. THE COURT SHOULD EXCLUDE ANY EVIDENCE AND/OR ARGUMENT THAT THE LACK OF A FORMAL SWATTING POLICY CONSTITUTES, IN AND OF ITSELF, A CONSTITUTIONAL VIOLATION.**

I. STATEMENT OF THE ISSUE PRESENTED.

The City requests to preclude Plaintiffs, counsel, and all witnesses from admitting evidence or argument that the lack of a specific, swatting policy constitutes, per se, a constitutional violation.

II. RECITATION OF THE RELEVANT FACTS.

The City does not dispute the fact that it did not have a written policy in effect at the time of the six incidents that specifically addressed how officers should respond to swatting calls. The Plaintiffs plan to argue that the lack of a policy, per se, constitutes a constitutional violation.

III. CITY'S ARGUMENTS IN FAVOR.

The Court should preclude Plaintiffs from arguing, suggesting, or eliciting testimony that the mere absence of a formal written "swatting policy" constitutes, in and of itself, a violation of the United States Constitution.

It is anticipated that Plaintiffs will argue the City's alleged failure to adopt a formal written policy governing "swatting" calls was itself unconstitutional. This is incorrect, and any such argument risks misleading the jury into imposing liability based on negligence or policy preferences, rather than the demanding deliberate indifference standard under *Monell*. *See Bhandari v. Outagamie Cnty.*, 2025 WL 1807054, at *11 (E.D. Wis. July 1, 2025) ("But where a plaintiff points to inaction or gaps in policy, as opposed to overt municipal action, the road to

19

establishing liability is even more demanding…. [A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.").

Nor does the Constitution require municipalities to adopt written policies governing every specific factual scenario, or on every emerging law enforcement issue. *Hoeft v. Straub*, 2011 WL 839521, at *5 (E.D. Wis. Mar. 7, 2011), *aff'd*, 497 F. App'x 615, 2012 WL 5970909 (7th Cir. 2012) ("The plaintiff maintains that Ozaukee County (and the other defendants in their official capacities) violated her constitutional rights by not having a MRSA policy. However, the lack of a specific MRSA policy does not automatically mean deliberate indifference."). Indeed, law enforcement agencies routinely operate through a combination of written directives, training, experience, and general constitutional principles, rather than through a formal written policy.

Allowing Plaintiffs to argue that the absence of a written swatting policy is itself unconstitutional would cause confusion and mislead the jury into believing that the City can be held constitutionally liable simply because MPD did not have a specific swatting policy—an incorrect and prejudicial standard. It would also be unfairly prejudicial to the City because it would invite the jury to impose liability based on "best practices," rather than a finding of deliberate indifference.

IV. P<span>LAINTIFFS</span>' A<span>RGUMENTS IN</span> O<span>PPOSITION.</span>

The City's lack of policy—formal or otherwise—regarding swattings is central to this case. Plaintiffs, in the operative complaint, alleged that the City's lack of policies caused their Fourth Amendment rights to be violated. ECF. 34, ¶¶239, 251, 263, 276, 288, 299. That is one of the major remaining issues in this case. Plaintiffs don't plan to argue that the lack of policy is a

violation, but that the lack of policy *combined with knowledge* shows deliberate indifference to Plaintiffs' constitutional rights.

Plaintiffs intend to prove that they made policy-making officials aware of the high probability that Plaintiffs' rights would be violated, and their complaints fell on deaf ears. In other words, Plaintiffs will prove Defendant was deliberately indifferent. They also intend to prove that after numerous swattings, policy-making officials knew of the immense risk to Plaintiffs and their constitutional rights, but did not provide any training, supervision, or discipline to stop the violations. This motion should not be granted because it may hamper Plaintiffs' ability to fairly put on their case. Jury instructions will sufficiently tailor the law to the facts of this case and provide structure for proper arguments.

**7. THE COURT SHOULD EXCLUDE ANY EVIDENCE AND/OR ARGUMENT IS RELEVANT ONLY TO UNPLED *MONELL* CLAIMS.**

I. STATEMENT OF THE ISSUE PRESENTED.

The City requests to exclude any evidence or argument that is relevant only to unpled *Monell* claims.

II. RECITATION OF THE RELEVANT FACTS.

The City and the Plaintiffs are attempting to resolve this issue through agreed-upon jury instructions. However, in an abundance of caution, and because these Motions in Limine are due before the jury instructions are due, the City makes this Motion in Limine. In short, the City contends that the Plaintiffs did not allege a *Monell* "widespread customs and practices" claim, or a *Monell* "failure to discipline" claim. The Plaintiffs instead specifically alleged only the following *Monell* claims: (1) failure of the City to implement a policy or procedure on swatting, and (2) failure of the City to properly train or supervise officers regarding their response to swatting calls.

Plaintiffs' Complaint alleges as follows:

21

59. Despite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting an illegal search of Plaintiffs' home and seizure of their persons.

60. The City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick Tomlinson.

61. The City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to prevent Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment rights.

The Complaint does not allege any facts whatsoever to support (or state) a *Monell* "widespread customs and practices" claim, or a *Monell* "failure to discipline" claim. Defendants therefore did not, and could not have, interpreted Plaintiffs' Complaint to include a *Monell* "widespread customs and practices" claim, or a *Monell* "failure to discipline" claim.

Indeed, even the Court determined (in its Summary Judgment Decision) that Plaintiffs' *Monell* claims are based on an alleged gap in the City's policies and procedures, and on an alleged failure to train or supervise officers: "Plaintiffs assert, with respect to each count in the operative complaint, that the alleged constitutional violations occurred as a result of the City's failure to adequately train or supervise its officers and/or its failure to implement any policy or procedure to protect Plaintiffs from the alleged violations." (ECF. 74 at 60.)

III. CITY'S ARGUMENTS IN FAVOR.

Plaintiffs are not just "clarifying" their *Monell* claims—they are improperly alleging new *Monell* "widespread customs and practices" and "failure to discipline" claims at the eve of trial. Tellingly, Plaintiffs never amended the Complaint, or even requested leave to amend the Complaint, to allege these new *Monell* claims during the course of this litigation. Nor did Defendants have any notice of these new *Monell* claims, or an opportunity to properly defend against these new *Monell* claims during the litigation. Defendants did not conduct discovery on

22

pattern evidence (other incidents, comparators, internal investigations, etc.), did not disclose any Rule 30(b)(6) witnesses to address whether any widespread customs or practices existed, were known, or were considered, and did not retain any expert witnesses to address any statistical or pattern-based evidence. *Saad v. City of Dearborn Heights*, 876 F.Supp.2d 925, 941–42 (E.D. Mich. 2012) ("Second, Plaintiffs argue that the City has an unconstitutional policy or custom of creating exigent circumstances in order to allow a warrantless entry into a citizen's home. This claim was not raised in the Complaint. A party may not expand its claims to assert new theories in response to motion for summary judgment.").

For these reasons, the Court should deny the Plaintiffs' attempt to allege new *Monell* on "widespread custom and practice" and "failure to discipline" claims at the eve of trial. It should also preclude any argument, evidence, or jury instruction premised on these new *Monell* claims. *See* Fed. R. Civ. Pro. 15(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave"); *Burdett v. Miller*, 957 F.2d 1375, 1380 (7th Cir. 1992) ("Miller had no warning that evidence manifestly admissible because relevant to the conspiracy charge would also be used to establish the existence of an enterprise to which no one in the course of this litigation had alluded").

IV. PLAINTIFFS' ARGUMENTS IN OPPOSITION.

This motion *in limine* is, at best, a disguised request for particular jury instructions—it requests that this Court shut the door on a legal theory that could be applied to the facts that have been sufficiently alleged. It should be denied.

As an initial matter, Defendant is not surprised by any *Monell* theory here. The parties previously agreed to jury instructions as part of the summary judgment briefing. ECF. 68. Those instructions include: "[t]he term policy means a custom . . ." and "[a] persistent and widespread

pattern may be a custom even if the City of Milwaukee has not formally approved it, so long as Plaintiff proves that a policy-making official knew of the pattern and allowed it to continue." Id., at 9. Additionally, those instructions include "[t]o succeed on their claim against the City of Milwaukee for a policy of failure to train, supervise, and/or discipline its officers . . ." Id., at 10. Defendant has known the facts alleged all along, and has apparently known of the different possible *Monell* theories.

Plaintiffs' complaint clearly alleges the facts of this case, which are well known to the Court and parties by now. ECF. 42, ¶¶86-233. The complaint also alleges constitutional violations on six dates, and alleges *Monell* liability for each of them. Id., ¶¶239-241, 251-253, 263,265, 276-278, 288-290, 299-301. As part of each count, the complaint alleges that "[d]espite being aware that Niki and Patrick were the victims of a vicious and dangerous swatting campaign, the City of Milwaukee failed to implement any policy, practice, or procedure to stop officers from conducting an illegal search of Plaintiffs' home and seizure of their persons," that "[t]he City of Milwaukee failed to adequately train or supervise its officers on swatting and on the swatting campaign against Niki and Patrick Tomlinson," and that "[t]he City of Milwaukee's failure to adequately train or supervise its officers and its failure to implement any policy or procedure to prevent Plaintiffs from being swatted by the police was a direct cause or moving force behind the violation of Plaintiffs' Fourth Amendment rights. Id. The facts alleged in the complaint are substantially similar to the evidence that emerged from discovery. Defendant has been on sufficient notice all along.

Plaintiffs are not required to plead legal theories. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017). Here, Plaintiffs used the term *Monell* in the heading for each count, and arguably pleaded every possible *Monell* theory. But even if Plaintiffs pleaded a particular *Monell* theory and not another, "when a plaintiff does plead legal theories, it can later

24

alter those theories." *Id.* "[T]here is no burden on the plaintiff to justify altering its original theory." *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996).

Though in rare circumstances courts can "hold plaintiffs to their earlier legal theories," doing so is only appropriate when failing to do so unfairly harms the defendant. *Chessie Logistics*, 867 F.3d at 859 (citing *Vidimos, Inc.*, 99 F.3d at 222). That is not the case here, as evidenced by jury instructions previously agreed to by Defendant. ECF. 68, at 9-10. Limiting Plaintiffs to particular *Monell* theories would be improper.

<u>**PLAINTIFFS' MOTIONS IN LIMINE**</u>

**1. THE COURT SHOULD REVIEW EVIDENCE UNDER FED. R. EVID. 404(B) PRIOR TO TRIAL**

I. <u>STATEMENT OF THE ISSUE PRESENTED.</u>

Plaintiffs move the Court for an order precluding Defendant from offering any other character evidence, evidence of crimes, wrongs, or other acts without a prior ruling from the Court allowing such evidence under Fed. R. Evid. 404.

II. <u>RECITATION OF THE RELEVANT FACTS.</u>

Plaintiffs Niki Robinson and Patrick Tomlinson will each testify at trial. Their testimony is necessary to prove both liability and damages. Plaintiffs are aware of no evidence of crimes, wrongs, and other acts committed that would be admissible for any other purpose.

III. <u>PLAINTIFFS' ARGUMENTS IN FAVOR.</u>

This case is about the City of Milwaukee's failure to prevent constitutional violations that were highly probable given policy-making officials' knowledge, not Niki Robinson and Patrick Tomlinson's character. Generally, character evidence is not admissible in civil rights cases. *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993). FED. R. EVID. 404 governs the limited exceptions where character evidence is permissible. One of those arises in FED. R. EVID. 404(b)(1) and (2).

25

Such evidence is potentially wide-ranging so, for efficiency's sake, Plaintiffs request that all evidence admitted under FED. R. EVID. 404(b)(2) be presented to the Court prior to trial. "Motions *in limine* are designed to avoid the delay and occasional prejudice caused by objections and offers of proof at trial . . ." *Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999). District courts have authority to make *in limine* rulings pursuant to their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S. Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984).

IV. CITY'S ARGUMENTS IN OPPOSITION.

In conformity with this Court's Trial Scheduling Order, the Plaintiffs presented this Motion in Limine to the City for the City's consideration. In response, the City agreed not to seek to admit evidence of the Plaintiffs' crimes at trial without a pre-trial ruling from this Court allowing such evidence. However, with respect to the portion of this Motion in Limine that seeks to exclude evidence of "wrongs or other acts" and "other character evidence," the City provided the following response:

> The phrase "other character evidence" is vague, and without further explanation and specificity, we cannot agree. Likewise, the phrase "wrongs, or other acts" is vague, and without further explanation and specificity, we cannot agree.

Given this Court's Trial Scheduling Order, the City anticipated that the Plaintiffs would supplement this Motion in Limine by clarifying and supplementing. Unfortunately, the Plaintiffs elected not to do so, and thus, the City continues to dispute the appropriateness of this Motion in Limine.

Further, the Plaintiffs have provided no legal authority in support of this Motion in Limine's unusual request. This Motion in Limine is unusual because it does not request that this Court exclude or admit any particular evidence. Rather, it requests that the Court order the City to somehow identify all evidence that the Plaintiffs might construe as "character evidence" or evidence of "other wrongs or other acts"; and once the City has performed this mind-reading

26

exercise, the City must file with the Court a Motion in Limine to admit all this evidence. There is no legal authority for such a request.

To the contrary, numerous courts have held that terse and/or vague motions in limine must be denied, including when they are made under Fed. R. Evid. 404. *See*, *e.g.*, *United States v. Gulley*, 722 F.3d 901, 906 (7th Cir. 2013) (finding party's motion in limine to exclude evidence of "bad conduct" under Fed. R. Evid. 404 to be improper under Fed. R. Evid. 103 because it was too vague and stating as follows: "Gulley contends this was sufficient to preserve the issue, but the motion was devoid of the specifics necessary to satisfy the requirements of Rule 103. The district court had no way of identifying exactly what type of 'bad conduct' Gulley was referring to, when and where it occurred, or on what grounds the motion relied"); *United States v. Marr*, 760 F.3d 733, 740 (7th Cir. 2014) ("A terse motion in limine is not specific enough to meet the requirements of Fed. R. Evid 103(a)[,]" which governs how to make evidentiary objections). Courts have reached this conclusion because the Rules clearly require that evidentiary objections be "specific." Fed. R. Evid. 103(a)(1)(B) (requiring parties to state the "specific grounds" for their objections).

Here, given the Plaintiffs' unwillingness to specifically-identify the evidence they want excluded, the City requests that the Court deny this Motion in Limine.

**2. THE COURT SHOULD EXCLUDE REFERENCES TO THE DIFFICULTY AND DANGEROUSNESS OF BEING A POLICE OFFICER**

I. STATEMENT OF THE ISSUE PRESENTED.

Plaintiffs move the Court for an order precluding any reference to a police officer being a dangerous or difficult job.

II. RECITATION OF THE RELEVANT FACTS.

27

Plaintiffs seek to avoid an appeal to the jury based in fear for police officers' lives or sympathy for them generally.

III. PLAINTIFFS' ARGUMENTS IN FAVOR.

No fact in issue here requires the jury to consider the subjective intent or knowledge of on scene police officers or 911 operators. This case is about whether City policy-makers knew of a pattern under which officers were either not given information that would have led them to realize 911 calls were false (and danger was not present) or whether City policy-makers knew that it was highly predictable that searches and seizures in violation of the Fourth Amendment would occur without more or different training or adequate supervision or discipline. It was known that there was no danger at all—at least for the officers—during each of the incidents when Plaintiffs' rights were violated. That police work may be dangerous or difficult in general is not at issue here. Worse, referencing the danger or difficulty of policing has the potential to confuse the issues. *See* FED. R. EVID. 403. This case is not about police weighing relative dangers—Plaintiffs' rights were violated, the remaining question is whether the City itself is liable. ECF. 74, at 60-67.

IV. CITY'S ARGUMENTS IN OPPOSITION.

The City agreed **not** to seek to admit evidence of dangers or difficulties that police officers face that are **not** implicated by the facts of this case. This concession was insufficient for the Plaintiffs. Because certain dangers and difficulties are implicated by the facts of this case, this Motion in Limine should be denied. For example, and without limitation, the following dangers and difficulties are relevant for the reasons stated:

- Procedures and Training: The Plaintiffs are correct that the upcoming trial pertains to the City's procedures and training related to swatting. In order to address those issues, the jury needs to receive testimony from the officers on how they were

28

trained and what procedures they followed. Among other things, the officers will generally testify that they were trained to identify certain dangers to themselves, to the Plaintiffs, and to the public in general; and they will testify on how accurately they followed their training and procedures on those specific occasions where the Court found their conduct unconstitutional. Presumably, some of those officers will testify that they were acting in one way or another because of particular dangers they perceived. This testimony is relevant because it goes to (1) the type of training and procedures the officers received, and (2) whether they followed their training and procedures during these particular incidents the Court found to be unconstitutional

- Emergency Calls: In this case, the police officers were responding to emergency calls, and those types of calls generally involve certain dangers, namely physical and safety dangers to the police officers, the residents of the home to which the officers are responding, and the public in general. The City intends to admit evidence that, in creating procedures to address the many swatting calls at the Plaintiffs' home, the City needed to balance these potential dangers against the potential that the emergency call might be a fake call. Stated differently, the City determined that it could not, invariably and without investigation, disregard the potential dangers associated with emergency calls. While the Plaintiffs may think this explanation lacks merit, such an argument goes to the weight of the evidence, not its admissibility

- Swatting Calls & Predictable Pattern: In this case, the City was concerned about the danger to the Plaintiffs associated with the MPD falling into a predictable

pattern of responses to the many swatting calls. This concern existed because the perpetrators of these swatting calls had engaged in unpredictable and threatening conduct to the Plaintiffs via (1) the swatting calls involving violence, shootings, injuries, and suicides at the Plaintiffs' home, (2) the swatting calls involving threats of violence and/or bomb threats outside Plaintiffs' home (e.g., at the Riverside Theatre (which required a total evacuation of the theater per theater policies),at a local bar/tavern, at a Milwaukee Bucks game, etc.), (3) the swatting incident where the perpetrators ordered a large quantity of woodchips delivered to Plaintiffs' home in order to block their driveway; (4) the swatting incident where the perpetrators physically went to Plaintiffs' home, took photographs of Plaintiffs' backyard/outdoor furniture, and posted those photographs online asking local residents to take the furniture for free (which they did); and (4) the perpetrators rental of the Plaintiffs' home, from which they took pictures of the Plaintiffs and posted them online. The City knew (or had sufficient reason to believe) that the perpetrators were physically present at Plaintiffs' home on (at least) multiple occasions, and were concerned that these perpetrators were waiting for the MPD to fall into a predictable pattern of non-responsiveness such that the perpetrators would have an opportunity to perpetrate more serious crimes against the Plaintiffs.

It must be noted that the Plaintiffs have not offered any legal authority in support of their position. No such legal authority exists because it is apparent that the dangers associated with swatting calls, emergency calls, and the like are clearly at issue in this case because those dangers are what informed the police officers' training and procedures.

3.      **THE COURT SHOULD EXLUDE CONTRIBUTORY FAULT EVIDENCE AND ARGUMENT**

30

## I.  STATEMENT OF THE ISSUE PRESENTED.

Plaintiffs move the Court for an order precluding Defendant from offering evidence or arguing that Plaintiffs caused the police officers' constitutional violations or caused themselves to be swatted.

## II.  RECITATION OF THE RELEVANT FACTS.

This case revolves around police responses to false calls to Plaintiffs' home. Those false calls were initiated by individuals who did not like things Plaintiff Tomlinson said on social media. During Plaintiff Tomlinson's deposition, he was questioned by counsel for Defendant regarding his role in creating the situation that led to the swattings.

## III.  PLAINTIFFS' ARGUMENTS IN FAVOR.

Contributory negligence is not a defense to a constitutional tort. *Santiago v. Lane*, 894 F.2d 218, 224 (7th Cir. 1990), quoting *DeShaney by First v. Winnebago Cnty. Dep't of Soc. Servs.*, 812 F.2d 298, 304 (7th Cir. 1987), *aff'd sub nom. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989). The question for trial is two-fold. First, whether City policy-makers knew of a pattern under which officers were either not given information that would have led them to realize 911 calls were false or whether City policy-makers knew that it was highly predictable that searches and seizures in violation of the Fourth Amendment would occur without more or different training or adequate supervision or discipline. Second, did those same policy-makers' failure to act cause the constitutional violations that did occur. Any suggestion that Plaintiffs are to blame for the violation of their rights amounts to improperly alleging contributory negligence. Any evidence that could support such a contention is not relevant, will unfairly prejudice Plaintiffs, and will confuse the issues. FED. R. EVID. 403.

31

Plaintiffs expect Defendant to argue that the swattings, not the City's constitutional violations, are the primary source of any emotional distress Plaintiffs experienced. That is different than producing evidence or arguing that Plaintiffs deserved the swattings or invited the constitutional violations, and Defendant should be precluded from doing so.

IV. City's Arguments in Opposition.

At the outset, it is important to clarify that, through the process of exchanging Motions in Limine, as well as meeting and conferring on the same; the Plaintiffs ultimately withdrew a separate Motion in Limine, which sought to limit the City's ability to admit evidence regarding the Plaintiffs' online/social media activity. Though Plaintiffs maintain they may object at trial if the evidence sought is, in their view, irrelevant, unduly prejudicial, or a waste of time, the parties generally agree that evidence regarding Plaintiffs' online/social media activity is admissible. Given this agreement, in general, the City is not disputing that it cannot argue that the Plaintiffs were "contributorily negligent" or that the "Plaintiffs deserved the swattings or invited the constitutional violations." The City does not intend to make any such arguments.

However, as acknowledged by the Plaintiffs, the City can and will argue that the Plaintiffs' online/social media activity caused them emotional distress. Relatedly, the City can and will argue that the swattings, including those noted above and others (i.e., at the Riverside Theatre, at Fiserv Forum, the incident involving the woodchips, the incident involving the stolen furniture, the incident involving the photographs depicting Plaintiffs at their home, etc.), caused the Plaintiffs' emotional distress. This evidence is clearly relevant to the Plaintiffs' damages (emotional distress) because this evidence has a tendency to establish that the cause of the Plaintiffs' emotional distress was not the police responses to the swatting calls; rather, the cause of their emotional distress was their excessive online/social media activity and the swattings that resulted from those online/social

32

media activities.

Dated at Milwaukee, Wisconsin this 1st day of May, 2026.

**EVAN C. GOYKE**
City Attorney, City of Milwaukee
Attorneys for Defendants

*/s/ Joshua Cronin*
JOSHUA B. CRONIN
Assistant City Attorney
State Bar No. 1064324
WILLIAM HOTCHKISS
Assistant City Attorney
State Bar No. 1112878
MATTEO REGINATO
Assistant City Attorney
State Bar No. 1089724
800 City Hall
200 E. Wells St.
Milwaukee, WI 53202
Phone: (414) 286-2601
Fax: (414) 286-8014
whotch@milwaukee.gov
mreginato@milwaukee.gov
jbcronin@milwaukee.gov

**STRANG BRADLEY, LLC**,
Attorneys for Plaintiffs

*/s/ Jacob A. Idlas*
John H. Bradley
Wisconsin Bar No. 1053124
R. Rick Resch
Wisconsin Bar No. 1117722
Jacob A. Idlas
Wisconsin Bar No. 1078457
613 Williamson St., Suite 204
Madison, Wisconsin 53703
(608) 535-1550
John@StrangBradley.com
Rick@StrangBradley.com
Jack@StrangBradley.com

33